FILED
Wednesday, 28 July, 2004  02:13:58 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| THE CITY OF CHAMPAIGN, an Illinois municipal corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) 02-2252 ) ) |
| MCLEODUSA, INC., a Delaware corporation, and MCLEODUSA TELECOMMUNICATION SERVICES, INC., an Iowa corporation, | ) ) ) ) ) ) |
| Defendants. | ) |

ORDER

On December 5, 2002, plaintiff City of Champaign, Illinois ("Champaign") filed a class action complaint[1] against defendants McLeodUSA, Inc. and McLeodUSA Telecommunication Services, Inc. (collectively, "McLeod"). The five-count complaint asserts three claims for breach of contract. It also seeks a declaration of the defendant's obligations pursuant to the three contracts at issue, and relief based on quantum meruit.

On April 30, 2003, Champaign filed a motion for class certification. McLeod filed its opposition to the motion on August 26, 2003. The motion was denied on December 23, 2003.

Several months before the close of discovery, Champaign filed a motion for partial summary judgment [#24], and McLeod responded with a motion for summary judgment on Counts I, III, and IV and partial summary judgment on Count V of the complaint [#27]. In April 2004, the City of Urbana ("Urbana") filed a motion for leave to intervene, and to amend the complaint, *instanter*, to add the City of Urbana, Illinois, as a party plaintiff [#39].

BACKGROUND

In 1994, Champaign entered into a 25-year right-of-way ("ROW") license with Consolidated Network, Inc. ("CNI"), granting CNI the right to install, maintain and use buried

---

[1] The class action was brought on behalf of Champaign "and a proposed class that consists of units of local government with right-of-way agreements with McLeodUSA . . . for collection of amounts due and owing . . .[to] Champaign and the proposed Class pursuant to . . . right-of-way agreements." Compl. ¶ 1.

1

and/or aerial cable and conduit within the public ROW. CNI was to compensate Champaign at the specified rate per lineal foot of wire, cable, etc. for each of the first five years, with scheduled rate increases every five years thereafter.

CNI later merged with or was acquired by Consolidated Communications Telecom Services, Inc. ("CCTSI"). In 1996, Champaign entered into a 10-year ROW license with CCTSI, which granted similar, though not identical, rights to CCTSI for the conduct of a general telephone business. CCTSI was to compensate Champaign on an "access line" basis – a flat monthly fee for each telephone line connected to the system – rather than a lineal-foot basis. Section 12 of the license agreement stated, "Whenever the word 'Company' or the words 'Consolidated Communications Telecom Services, Inc.' are used in this Agreement, they shall be construed to mean the Consolidated Network, Inc., its lessees, successors and assigns, and this Agreement shall be binding upon and inure to the benefit of the Company, its lessees, successors and assigns."

Then, in 1997, Champaign entered into a ROW agreement with McLeod. The agreement specified that compensation was to be paid per lineal foot. In 1998, CCTSI merged with McLeod, with McLeod as the surviving company.

In 1999, McLeod's counsel contacted Champaign and stated that as a result of the mergers and acquisitions, McLeod "now finds itself in the position of being a party to two separate license agreements with . . . Champaign[.]" McLeod further stated it wished to cancel the McLeod license and proceed under the CCTSI agreement, and that if Champaign wished, the CCTSI agreement could be restated to "make it clear that [McLeod] is now the name of the grantee of the license (using a provision similar to that of Section 12 of the [CCTSI] License to trace the history from [CNI] to [CCTSI] to [McLeod]). Alternatively, if . . . Champaign would prefer to keep both agreements in effect, we could amend the [CCTSI] License to provide that any fees paid under the [McLeod] License would be credited against fees that would otherwise be due under the [CCTSI] License." Apparently, Champaign did not agree to either option; it insisted that McLeod was bound by all three agreements.

Champaign contends that McLeod is in breach of (1) the 1994 agreement with CNI; (2) the 1996 agreement with CCTSI; and (3) the 1997 McLeod agreement. Champaign states that it has not been compensated under any of the agreements since 1998, and McLeod now owes over $600,000 pursuant to the three agreements. It seeks a declaration that the mergers and/or acquisitions did not erase McLeod's obligations under the CNI and CCTSI agreements. It further asserts that Champaign has not gratuitously allowed McLeod to use its ROW, and McLeod's continued use of the ROW and its failure to pay under these agreements gives rise to a claim in quantum meruit.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c). Summary judgment is proper when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir. 1988). Once the movant has done so, the party opposing the motion bears the burden to respond. *Celotex*, 477 U.S. at 322-23.

I.

A. Champaign's Motion for Partial Summary Judgment

Champaign has filed a motion for partial summary judgment, seeking a determination that McLeod is obligated under all three of the ROW agreements, and that liability for construction prior to each of the mergers and/or acquisitions is governed by the terms of the contract existing prior to the respective merger. To support its motion, it has attached close to 75 pages of documentation on the merger/acquisitions involving CNI, CCTSI, and McLeod; transcripts of the relevant hearings before the Illinois Commerce Commission; a letter from McLeod's counsel to Champaign's attorney; articles of merger; and other related material.

Champaign contends that the pre-merger contractual obligations of each of the entities survived and became binding upon the new entity after the merger. Champaign argues that when CCTSI contracted with Champaign on essentially the same subject matter covered by the contract with CNI, CCTSI was obligated to pay Champaign pursuant to both the CNI and the CCTSI contracts. In 1997, before CCTSI merged with McLeod, Champaign entered into a ROW contract with McLeod. Then, in 1998, CCTSI merged with McLeod, and McLeod assumed the duties and liabilities of CCTSI. Thus, according to Champaign, McLeod is obligated under the CNI contract, the CCTSI contract, and the McLeod contract.

The authority cited by Champaign is unpersuasive.[2] The cited cases merely support the proposition that a merged entity assumes the duties and liabilities of the former entity. Champaign has not cited a single case in which a party contracts with an entity, then contracts on essentially the same subject matter with the entity's successor, then contracts, again on essentially the same subject matter, with the successor's successor entity, and then attempts to collect on all three contracts. Without more, summary judgment on this issue is unwarranted.

---

[2] *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1423-25 (7th Cir. 1993); *Roels v. Drew Indus., Inc.*, 608 N.E.2d 411, 413 (Ill. App. Ct. 1992); *Robinson v. KFC Nat'l Mfg. Co.*, 525 N.E.2d 1028, 1029 (Ill. App. Ct. 1988).

Champaign also asks the court to determine which of the contracts governs payments due for ROW construction conducted at various points in time. Champaign's statement of undisputed facts contains insufficient detail for the court to rule on this matter.³ The court is under no obligation to scour the record to see whether it can find any relevant detail to flesh out Champaign's meager assertions of undisputed fact.

Champaign has not adequately supported its motion for summary judgment; therefore, the motion is denied.

### B. McLeod's Motion for Summary Judgment

McLeod has filed a motion for summary judgment on two of the three claims for breach of contract, the declaratory judgment claim, and the claim for quantum meruit compensation to the extent that it seeks compensation that is discriminatory, in violation of the Telecommunications Act of 1996, 47 U.S.C. § 253(c) ("the Act"). McLeod contends it is obligated to Champaign only under the 1996 CCTSI agreement, and that Champaign's ability to recover in quantum meruit or otherwise is limited by the Act.

McLeod argues that when CCTSI merged with McLeod, the CCTSI agreement supplanted the existing agreement between Champaign and McLeod. As a result, McLeod is obligated under one ROW agreement – the CCTSI agreement. Accordingly, McLeod does not seek summary judgment on Count II of the complaint, which relates to a breach of the CCTSI agreement.

McLeod contends that Champaign violates the provisions of the Act by pursuing compensation under all three contracts. Section 253(c) of the Act forbids cities from imposing fees that are not "competitively neutral and nondiscriminatory[.]" 47 U.S.C. § 253(c). McLeod maintains that during the relevant time period, Champaign charged Ameritech a single monthly "access line" rate, while seeking to assess against McLeod that same rate plus two extra charges. McLeod further states that AT&T is permitted to access Champaign's ROW in return for a fee of $1.00 per year for each lineal foot of conduit. According to McLeod, Champaign requires no other carrier to pay multiple ROW fees; thus, the fees it seeks to impose on McLeod are neither competitively neutral nor nondiscriminatory.

---

³ Champaign's undisputed facts contain a section entitled ROW Construction in the City of Champaign. Seven allegedly undisputed facts are shown; each is supported by citation to a paragraph of the complaint and a paragraph of the answer. McLeod does not dispute most of these allegations; however, McLeod does dispute the only paragraph that ties ROW construction to a particular time period. *See* McLeod's Material Facts Alleged in Champaign's Motion That McLeodUSA Disputes, ¶ C29.

The evidence supporting McLeod's motion for summary judgment is hardly unequivocal. McLeod relies on a Declaration by its Vice President and Deputy General Counsel, Victor A. Lazzaretti, who states that, to his knowledge, Champaign does not charge Ameritech or AT&T more than one ROW fee, and that McLeod is the only carrier from which Champaign seeks payment of more than one ROW fee.[4]

The burden of establishing that no genuine issue of material fact exists rests with the movant. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir. 1988). While Lazzaretti describes in some detail the basis of his knowledge, the facts suggest a gap may exist in his knowledge about Champaign's ROW agreements. Lazzaretti is employed by McLeod; his knowledge of Champaign's other ROW agreements and his access to information about those agreements may very well be incomplete. Lazzaretti cannot state with absolute certainty that Champaign does not hold any other carrier to multiple ROW contracts.[5] At best, Lazzaretti can and does state that, *to his knowledge*, Champaign's insistence on enforcing the terms of all three agreements is discriminatory. This falls short of the summary judgment standard.

McLeod also seeks partial summary judgment as to Count V of Champaign's complaint. Specifically, McLeod seeks a declaration that Champaign may not seek quantum meruit compensation in excess of the nondiscriminatory maximum pursuant to Section 253(c) of the Act. As is sometimes the case when the parties file dispositive motions prior to the close of discovery, McLeod has presented the court with scant evidence to support its motion. Without a clear indication that Champaign actually does seek to impose a discriminatory ROW fee (an assertion best judged in comparison to all other ROW agreements and not just those within McLeod's knowledge or belief), such a declaration would be premature.

Consequently, the court denies McLeod's motion for summary judgment.

## II.  Motion by the City of Urbana for leave to intervene

Also pending is a motion for leave to intervene and to amend the complaint, *instanter*, to add the City of Urbana, Illinois as a party plaintiff.[6] Urbana seeks permissive intervention

---

[4] Lazzaretti Decl., ¶¶ 11, 14, 15; McLeod's Statement of Undisputed Material Facts, ¶¶ C.12, C.13, C.16, C.17, C.19 (*citing* Lazzaretti Decl.).

[5] The court would be presented with an entirely different picture had Champaign's city attorney made this assertion.

[6] Counsel for Champaign filed the motion on Urbana's behalf. McLeod's memorandum in opposition to the motion to intervene states, "On October 30, 2003, the City of Urbana sent McLeodUSA a letter claiming that McLeodUSA had failed to pay Urbana's ROW charges. Urbana's letter was authored by Thomas W. Kelty, the same counsel that represents Champaign in

5

pursuant to Fed. R. Civ. P. 24(b). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Security Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995) (*quoting* Fed. R. Civ. P. 24(b)). According to the discovery plan submitted by the parties and adopted by this court on April 9, 2003, fact discovery was to be "completed by January 15, 2004 or 90 days after the Court's order regarding class certification, whichever is later." This court denied the motion for class certification on December 23, 2003. Urbana did not file its motion to intervene until April 21, 2004 – a month after the end of fact discovery.[7] In its motion, Urbana states that the depositions of the McLeod representatives "are in progress during the month of April, 2004." Urbana further states that "Counsel for Champaign reasonably believes that the McLeodUSA deponents would be the same persons who would be called for discovery depositions with regard to the Urbana claim."[8] Urbana's motion, filed so late in the game, would certainly delay the litigation. Accordingly, the motion for leave to intervene, and to amend the complaint, *instanter*, to add the City of Urbana, Illinois as a party plaintiff [#39] is denied.

## CONCLUSION

The court:

(1) denies Champaign's motion for partial summary judgment [#24];

(2) denies McLeod's motion for summary judgment on Counts I, II and IV and partial summary judgment on Count V [#27];

(3) denies Urbana's motion for leave to intervene, and to amend the complaint, *instanter*, to add the City of Urbana, Illinois, as a party plaintiff [#39];

(4) strikes the Revised Report of Parties' Planning Meeting [#36];

(5) strikes the Second Revised Report of Parties' Planning Meeting [#42].

---

this case." McLeod then asked for more information, which Urbana provided in March 2004. The tardiness of Urbana's motion can hardly be excused by its lack of awareness of this case.

[7] The parties have attempted to alter the discovery plan by filing, on March 12, 2004, a Revised Report of Parties' Planning Meeting [#36], and, on May 25, 2004, a Second Revised Report of Parties' Planning Meeting [#42]. Neither document was filed as a motion, and with good reason: a motion would have been denied. This court makes quite clear that, absent exceptional circumstances, it will not grant an extension of the discovery deadlines. Accordingly, the court, acting *sua sponte*, strikes the Revised Report of Parties' Planning Meeting [#36] and the Second Revised Report of Parties' Planning Meeting [#42]. All discovery deadlines in the original Report of the Parties' Planning Meeting remain unchanged.

[8] McLeod had fourteen days in which to file a response to the motion. *See* CDIL-LR 7.1(B)(1). Urbana could not have reasonably expected a ruling on the motion in time to participate in depositions conducted "during the month of April."

6

A final pretrial conference will be held on October 12, 2004 at 1:30 p.m. by personal appearance. Jury selection and jury trial will begin on October 18, 2004 at 9:00 a.m.

A status conference is scheduled for August 11, 2004 at 9:15 a.m. by telephone conference call. The court will initiate the call.

Entered this 28th day of July, 2004.

                                                 s/Harold A. Baker

                              _____

                                         HAROLD A. BAKER
                              UNITED STATES DISTRICT JUDGE