**E-FILED**
Monday, 27 September, 2004  03:52:53 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

| | | |
|---|---|---|
| THE CITY OF CHAMPAIGN, an Illinois municipal corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02-2252 |
| MCLEODUSA, INC., a Delaware corporation, and MCLEODUSA TELECOMMUNICATION SERVICES, INC., an Iowa corporation, | ) ) ) ) ) ) | Hon. Harold Baker |
| Defendants. | ) ) | |

**MCLEODUSA'S RESPONSE IN OPPOSITION TO
CHAMPAIGN'S MOTION TO COMPEL AND REQUEST FOR COSTS**

Defendants McLeodUSA Incorporated and McLeodUSA Telecommunications Services, Inc. (collectively, "McLeodUSA"), by their attorneys, respectfully submit this response in opposition to the motion to compel filed by plaintiff Champaign on September 13, 2004.

**Introduction**

Champaign's motion should be denied. Champaign asks the Court to order McLeodUSA to "identify with particularity which of the 1157 [pages of] documents produced by [McLeodUSA] are in response to which of Plaintiff's Request[s] to Produce." (Mot. at 3.) There is no basis for this request in the law. Federal Rule of Civil Procedure 34(b) expressly permits a party to produce documents "as they are kept in the usual course of business," exactly as McLeodUSA has done here. Champaign does not contend otherwise, nor does Champaign claim that it is unable to interpret any document in McLeodUSA's production. Champaign has failed to suggest any reason why McLeodUSA should be saddled with a discovery burden that is

contrary to the Federal Rules and unsupported by any claim of special circumstance. For those reasons, and as further described below, Champaign's motion fails.

Indeed, Champaign's motion is so without justification that Champaign should be required to pay McLeodUSA's costs in responding. McLeodUSA has offered repeatedly to assist Champaign with any specific documents for which Champaign could not discern the responsiveness to its requests. (*See* Exs. A, B, attached hereto.) Champaign choose not to take McLeodUSA up on those offers until <u>after</u> it filed its motion, when it sent McLeodUSA's counsel "sample" documents that it claims it cannot interpret. Counsel for the parties have not had an opportunity to discuss those documents in part because counsel for Champaign is out of the country and is not due back until after McLeodUSA's response is due. In these circumstances, Rule 37(a)(4)(B) requires that Champaign pay McLeodUSA's costs in opposing Champaign's motion.

**Background**

Since June 2003, Champaign has served upon McLeodUSA multiple, often overlapping document requests. In its first set of requests, for example, Champaign included requests such as "any and all documents that tend to demonstrate, support, relate, or refer in any way to allegations of the City of Champaign in the complaint," and "any and all documents which Defendants reasonably believe may tend to contradict or refute the allegations by the City of Champaign in the complaint." (Ex. B to Mot. at 4.) Compounding the overlapping nature of the requests, Champaign served multiple requests that merely reiterated its prior requests. (*See* Ex. D to Mot. at 2, Req. No. 3, restating requests; Ex. F to Mot. at 2-5, restating all initial requests.)

In response, McLeodUSA produced to Champaign approximately 1,200 pages of documents. McLeodUSA's production primarily consisted of the corporate files containing

2

documents regarding the contracts that underlie Champaign's claims. Pursuant to Rule 34(b), McLeodUSA produced those files "as they are kept in the usual course of business" at McLeodUSA's corporate offices. Fed. R. Civ. P. 34(b).

Since McLeodUSA tendered its production, Champaign has requested that McLeodUSA specifically identify each document in its production, and explain the responsiveness of each document to Champaign's overlapping document requests. In an August 30 letter, for example, Champaign's counsel wrote: "my effort has been to essentially ask that McLeod interpret the documents [McLeodUSA produced] by identifying their relevance to each of the particular requests." (Ex. A to Mot. at 8.)

In response, McLeodUSA has offered repeatedly to explain any document for which Champaign is unable to understand the responsiveness or relevance. In an August 24 letter, McLeodUSA's counsel wrote: "[a]s I have previously suggested, if there are particular documents that you are unable to interpret because of the manner in which they have been produced, I would be happy to discuss those individual documents with you." (Ex. A, attached hereto.) Counsel repeated that offer again on September 17, writing: "I renew my repeated offers to answer any questions you may have about McLeod's production. If you do not wish to have such discussions and instead pursue your motion to compel, we will seek McLeod's costs for responding to your motion." (Ex. B, attached hereto.) Champaign did not respond to these offers, except to continue its demand that McLeodUSA "interpret" its production for Champaign, until after it filed it motion.

**Argument**

There is no legal basis for Champaign's motion. Rule 34(b) governs document production, and provides:

> A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

Fed. R. Civ. P. 34(b) (emphasis added). The plain text of the rule thus authorizes the responding party to produce documents organized as the party ordinarily keeps them or organized to correspond with the document requests. McLeodUSA chose the first option, and produced its relevant files as they are kept in its corporate offices. By its terms, that is all Rule 34 required.

Indeed, federal courts routinely reject claims that Rule 34 imposes a greater burden than its text suggests. As one district court recently held: "[t]he plain phrasing of Rule 34(b) reveals that the producing party has the option of presenting information in one of two ways. If the producing party produces documents in the order in which they were kept in the usual course of business, the Rule imposes no duty to organize and label the documents." *In re G-I Holdings Inc.*, 218 F.R.D. 428, 439 (D.N.J. 2003) (emphasis added); *see also Wrenn v. Board of Directors, Whitney M. Young, Jr. Health Ctr.*, 1989 WL 23135, at *2 (N.D.N.Y. Feb. 21, 1989) ("Rule 34(b) does not require that the documents be produced in correspondence with the categories contained in the request . . . [t]hey may also be produced as 'kept in the usual course of business'"); *Jobe v. ATR Marketing, Inc.*, 1998 WL 252382, at *2 (E.D. La. May 15, 1998) (same); *Dangler v. New York City Off Track Betting Corp.*, 2000 WL 1510090, at *1 (S.D.N.Y. Oct. 11, 2000) (same). The same rule applies here.

Even setting aside the plain terms of Rule 34(b), Champaign offers no reason why McLeodUSA should be saddled with the substantial burden of "interpreting" its document

production according to Champaign's overlapping document requests. As one commentator has noted, requiring that documents be "segregated according to the requests would impose a difficult and usually unnecessary additional burden on the producing party" because "the categories are devised by the propounding party and often overlap or are elastic, so that the producing party might be compelled to decide which best suits each item in order to consign it to the proper batch." 8A Wright & Miller, Federal Practice & Procedure § 2213 at 431 (2d ed. 1994). In those circumstance, segregating the documents "would usually not serve any substantial purpose, and it could become quite burdensome." *Id.*

Those principles apply here. Requiring McLeodUSA to designate for every particular document which of Champaign's multiple overlapping requests might potentially apply would impose a substantial burden upon McLeodUSA. Champaign does not even attempt to show any special need justifying the imposition of that burden or a departure from the plain terms of Rule 34(b). Champaign nowhere contends that it cannot understand any part of McLeodUSA's production, and declined (until after it filed its motion) McLeodUSA's repeated offers to assist Champaign with any specific questions. Champaign's motion is thus unjustified by the Federal Rules and the circumstances of this case, and should be denied.

### Request for Costs

The Court should also require Champaign to pay McLeodUSA's costs in responding to its groundless motion. Rule 37(a)(4)(B) requires:

> if the motion [to compel] is denied, the court may enter any protective order authorized by Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(B) (emphasis added).

Far from "substantially justified," Champaign's motion is all but frivolous. The motion is directly contrary to the only authority Champaign cites — Rule 34(b). Contrary to Local Rule 7.1(B)(1), Champaign's motion lacks citation to <u>any</u> "supporting authorities." Champaign also declined McLeodUSA's repeated offers of assistance until after it filed its motion, instead unnecessarily burdening this Court and McLeodUSA. Under the Federal Rules, "expenses should <u>ordinarily</u> be awarded unless a court finds that the losing party acted justifiably in carrying his point to court." Fed. R. Civ. P. 37 (1970 advisory committee notes, emphasis added). Champaign has not acted justifiably and should bear the costs for this unnecessary round of briefing. Upon the Court's order, McLeod will submit a particularized bill of fees and costs it incurred as a result of Champaign's motion.

## Conclusion

For the reasons set out above, the Court should (1) deny Champaign's motion to compel; and (2) pursuant to Rule 37(a)(4)(B), require Champaign to pay McLeodUSA's reasonable fees and costs incurred as a result of Champaign's motion.

        Respectfully submitted,
        McLeodUSA Incorporated and
        McLeod Telecommunications Services, Inc.

By:    s/ Edward F. Malone_____
        One of their attorneys

        Edward F. Malone
        Daniel J. Weiss
        JENNER & BLOCK LLP
        One IBM Plaza
        Chicago, Illinois  60611
        (312) 222-9350
        (312) 840-7517 (fax)

September 27, 2004

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 27, 2004, I electronically filed the foregoing MCLEODUSA'S RESPONSE IN OPPOSITION TO CHAMPAIGN'S MOTION TO COMPEL AND REQUEST FOR COSTS with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

      Thomas W. Kelty
      tkelty@keltylaw.com

      s/ Daniel J. Weiss
      _____

      Edward F. Malone
      Daniel J. Weiss
      Attorneys for Defendants
      Jenner & Block LLP
      One IBM Plaza
      Chicago, Illinois  60611
      (312) 222-9350
      (312) 840-7517 (fax)
      emalone@jenner.com
      dweiss@jenner.com