**E-FILED**
Monday, 04 October, 2004  03:20:49 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

| | |
|---|---|
| THE CITY OF CHAMPAIGN, an<br>Illinois municipal corporation,<br>on its own behalf and on behalf<br>of the Class of all other units<br>of local government similarly<br>situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>MCLEODUSA, INC., a Delaware<br>corporation, and MCLEODUSA<br>TELECOMMUNICATION SERVICES, INC.,<br>an Iowa corporation,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  NO. 02-2252<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COPY

### CHAMPAIGN'S RESPONSES TO
### MCLEOD'S FIRST SET OF REQUESTS FOR ADMISSION

NOW COMES Plaintiff, THE CITY OF CHAMPAIGN, an Illinois municipal corporation, by and through its attorneys, Kelty Law Offices, P.C., pursuant to Rule 36 of the Federal Rules of Civil Procedure to respond to McLeodUSA Inc.'s *First Set of Requests for Admission*.

### RESTATED DEFINITIONS

In construing these requests for admission, the following restated definitions shall apply:

1.  "1994 Agreement" means the purported ROW agreement attached to Champaign's complaint in this matter as Exhibit A.

**RESPONSE:** The City of Champaign (hereinafter "Champaign") **denies** the definition in paragraph 1 as stated. Champaign **admits** that the "<u>1994 Agreement</u>" means the ROW agreement attached to Champaign's Complaint in this matter as Exhibit A.

  2.    "<u>1996 Agreement</u>" means the purported ROW agreement attached to Champaign's complaint in this matter as Exhibit B.

**RESPONSE:** Champaign **denies** the definition in paragraph 2 as stated. Champaign **admits** that the "<u>1996 Agreement</u>" means the ROW agreement attached to Champaign's Complaint in this matter as Exhibit B.

  3.    "<u>1997 Agreement</u>" means the purported ROW agreement attached to Champaign's complaint in this matter as Exhibit D.

**RESPONSE:** Champaign **denies** the definition in paragraph 3 as stated. Champaign **admits** that the "<u>1997 Agreement</u>" means the ROW agreement attached to Champaign's Complaint in this matter as Exhibit D.

  4.    "<u>Ameritech Agreement</u>" means the document entitled "Agreement For Use of the Public Way" executed by Champaign and Ameritech Illinois in 1994 and approved by Champaign in City Council Bill No. 94-99.

**RESPONSE:** Champaign **denies** the definition in paragraph 4 as stated. Champaign **admits** that the "<u>Ameritech Agreement</u>" is, collectively, (i) an agreement entitled *Agreement for Use of the Public Way* by and between Ameritech Illinois and the City of Champaign with an effective date, pursuant to Section 15 on Page 9,

of April 19, 1994, (ii) a *Letter of Understanding By and Between The City of Champaign, Illinois and Ameritech Illinois*, dated April 19, 1994, and (iii) Council Bill No. 94-99 and a Resolution to approve same.  Champaign **admits** that the Ameritech Agreement was approved by Council Bill No. 94-99, dated April 19, 1994. Champaign further **admits** that the Ameritech Agreement was attached as Exhibit A to *Defendant's Local Rule 7.1(D) Statement in Support of its Motion for Summary Judgment and in Response to Champaign's Motion for Summary Judgment* (hereinafter "7.1(D) Stmt").

     5.    <u>"AT&T Agreement"</u> means the document entitled "A License Agreement to use Real Property between AT&T Communications of Illinois, Inc. and the City of Champaign, Illinois" executed by Champaign and AT&T Communications of Illinois in 1987 and approved by Champaign in City Council Bill No. 87-48.

**RESPONSE:** Champaign **denies** the definition in paragraph 5 as stated.  Champaign **admits** that the <u>"AT&T Agreement"</u> is collectively (i) an agreement entitled *A License Agreement to use Real Property between AT&T Communications of Illinois, Inc. and the City of Champaign, Illinois* by and between AT&T Communications of Illinois, Inc. and the City of Champaign, executed by Champaign on March 5, 1987 and by AT&T on February 26, 1987, pursuant to Section 15 on page 9, (ii) Council Bill No. 87-48 and a Resolution to approve same, and (iii) Council Bill No. 87-187 and a Resolution to approve same.  Champaign **admits** that the AT&T Agreement was approved by Council Bill No. 87-48, dated March 9, 1987.  Champaign **admits** that

Council Bill 87-187 approved an amendment to the AT&T Agreement. Champaign further **admits** the AT&T Agreement was attached as Exhibit B to 7.1(D) Stmt.

6.    "CCI" means Consolidated Communications, Inc.

**RESPONSE:** Champaign **denies** the definition in paragraph 6 as stated.    Champaign is not privilege to the corporate structure of McLeod Holdings, Inc. and its subsidiaries.    In its Responses to Request for Admissions herein, Champaign **admits** that the Organizational Chart attached hereto and numbered **Response to Admissions 1** was filed with the Illinois Commerce Commission, Docket No. 00-641, on Dec. 20, 2000, and made an exhibit to Champaign's *Motion for Partial Summary Judgment*.    Reference made herein to CCI will indicate Consolidated Communications Inc. and not Consolidated Communication Inc.

7.    "CNI" means Consolidated Networks Inc.

**RESPONSE:** Champaign **denies** the definition in paragraph 7 as stated.    Champaign is not privilege to the corporate structure of McLeod Holdings, Inc. and its subsidiaries.    In its Responses to Request for Admissions herein, Champaign **admits** that the Organizational Chart attached hereto and numbered **Response to Admissions 1** was filed with the Illinois Commerce Commission, Docket No. 00-641, on Dec. 20, 2000, and made an exhibit to Champaign's *Motion for Partial Summary Judgment*.    Reference made herein to CNI will indicate Consolidated Networks Inc. only.

8.    "<u>CCTS</u>" means Consolidated Communications Telecom Services Inc.

**RESPONSE:** Champaign **denies** the definition in paragraph 8 as stated.   Champaign is not privilege to the corporate structure of McLeod Holdings, Inc. and its subsidiaries.   In its Responses to Request for Admissions herein, Champaign **admits** that the Organizational Chart attached hereto and numbered **Response to Admissions 1** was filed with the Illinois Commerce Commission, Docket No. 00-641, on Dec. 20, 2000, and made an exhibit to Champaign's *Motion for Partial Summary Judgment*.   Reference made herein to CCTS will indicate Consolidated Communications Telecom Services Inc. only.

9.    "<u>McLeodUSA</u>" means McLeodUSA Incorporated.

**RESPONSE:** Champaign **denies** the definition in paragraph 9 as stated.   Champaign is not privilege to the corporate structure of McLeod Holdings, Inc. and its subsidiaries.   In its Responses to Request for Admissions herein, Champaign **admits** that the Organizational Chart attached hereto and numbered **Response to Admissions 1** was filed with the Illinois Commerce Commission, Docket No. 00-641, on Dec. 20, 2000, and made an exhibit to Champaign's *Motion for Partial Summary Judgment*.   Reference made herein to McLeodUSA will indicate McLeodUSA Incorporated only.

10.  "<u>MTSI</u>" means McLeodUSA Telecommunications Services, Inc.

**RESPONSE:** Champaign **denies** the definition in paragraph 10 as stated.  Champaign is not privilege to the corporate structure of McLeod Holdings, Inc. and its subsidiaries.  In its Responses to Request for Admissions herein, Champaign **admits** that the Organizational Chart attached hereto and numbered **Response to Admissions 1** was filed with the Illinois Commerce Commission, Docket No. 00-641, on Dec. 20, 2000, and made an exhibit to Champaign's *Motion for Partial Summary Judgment*.  Reference made herein to MTSI will indicate McLeodUSA Telecommunications Services, Inc. only.

11.  "<u>ROW</u>" means rights-of-way, and has the same meaning as where that term is used in Champaign's complaint.

**RESPONSE:** Champaign **admits** that "ROW" as referred to herein means rights-of-way, and has the same meaning as where that term is used in Champaign's complaint.

## REQUESTS FOR ADMISSION

1.  Admit that Champaign seeks to assess ROW charges against McLeodUSA and/or MTSI under the 1994 Agreement.

**RESPONSE:** Champaign **denies** Request for Admissions No. 1 as stated.  Champaign **admits** that it seeks to assess ROW charges against the successor or assignee to the 1994 Agreement.  Champaign

**admits** that Consolidated Network, Inc. is a named party in the 1994 Agreement.

    2.    Admit that the parties to the 1994 Agreement were Champaign and CNI.

**RESPONSE:** Champaign **denies** Request for Admissions No. 2 as stated. McLeod has created a virtual morass of companies which it appears they have bought, sold, merged, repurchased and restructured so many times that it is virtually impossible to get a clear understanding of who they are and what they do. Attached hereto and numbered as **Response to Admissions 1** is an organizational chart furnished to the Illinois Commerce Commission by McLeod. In its responses to these Requests for Admissions, Champaign relies upon the information provided by McLeod. It is Champaign's position that the companies with which it contracted in the 1994 Agreement, the 1996 Agreement and the 1997 Agreement, are separate and distinct operating companies which appear to be operating subsidiaries of McLeod Holding Company. Also, upon information and belief, Champaign believes that the operating carrier for local service within the City of Champaign, Consolidated Communications, Inc., has recently been sold by McLeod to an outside group of owners. Champaign has received no response to its initial discovery herein and has not deposed officers of McLeod who could provide the requested information.

Notwithstanding the above, Champaign **admits** the parties to the 1994 Agreement are (rather than were) Consolidated Network, Inc.,

H:\3789\90001\Admit Response 01\3-2-2004          7

an Illinois corporation, and the City of Champaign, Illinois, a
municipal corporation and the Plaintiff herein.

    3.    Admit that, at the time Champaign and CNI executed
        the 1994 Agreement, CNI was a subsidiary of CCI.

**RESPONSE:** Champaign is **without sufficient knowledge to admit
or deny** Request for Admissions No. 3.  Champaign restates its
Response to Request for Admissions No. 2 as if stated in full
herein.  Champaign has therefore made reasonable inquiry, however
the information known, or readily obtainable, is insufficient to
enable it to admit or deny the Request for Admission.

    4.    Admit that, at the time Champaign and CNI executed
        the 1994 Agreement, neither CNI nor CCI was owned
        or controlled by McLeodUSA or MTSI or any company
        affiliated with McLeodUSA or MTSI.

**RESPONSE:** Champaign is **without sufficient knowledge to admit
or deny** Request for Admissions No. 4.  Champaign restates its
Response to Request for Admissions No. 2 as if stated in full
herein.  Champaign has therefore made reasonable inquiry, however
the information known, or readily obtainable, is insufficient to
enable it to admit or deny the Request for Admission.

    5.    Admit that Champaign required CNI to execute the
        1994 Agreement as a condition to using Champaign's
        ROW.

**RESPONSE:** Champaign **denies** Request for Admissions No. 5 as
stated.  Champaign **admits** that in order to use Champaign's ROW, a
provider may choose either to: (i) negotiate an agreement, the
terms of which must then be approved by the City Council before the

City Manager may sign it; (ii) use the form agreement provided by Champaign, the terms of which are pre-approved by the City Council, so it may be signed by the City Manager without delay; or (iii) apply with plans to the City Engineer for a permit, and proceed without an agreement paying a premium price.    Champaign further **admits** that Consolidated Network, Inc. chose the second option above.

  6.    Admit that, on May 1, 1996, CNI merged with several other companies, with CNI surviving as the new merged entity.

**RESPONSE:** Champaign **is without sufficient knowledge to admit or deny** Request for Admissions No. 6.    Champaign restates its Response to Request for Admissions No. 2 as if stated in full herein.    Champaign has therefore made reasonable inquiry, however the information known, or readily obtainable, is insufficient to enable it to admit or deny the Request for Admission.

  7.    Admit that, at the close of the May 1, 1996 merger, CNI changed its name to Consolidated Communications Telecom Services, Inc. ("CCTS").

**RESPONSE:** Champaign **is without sufficient knowledge to admit or deny** Request for Admissions No. 7.    Champaign restates its Response to Request for Admissions No. 2 as if stated in full herein.    Champaign has therefore made reasonable inquiry, however the information known, or readily obtainable, is insufficient to enable it to admit or deny the Request for Admission.

> 8.    Admit that Champaign seeks to assess ROW charges
>       against McLeodUSA and/or MTSI under the 1996
>       Agreement.

**RESPONSE:** Champaign **admits** that it seeks to assess ROW charges

against the successor or assignee to the 1996 Agreement.  Champaign

**admits** that Consolidated Communications Telecom Services, Inc. is

a named party in the 1996 Agreement.

> 9.    Admit that the parties to the 1996 Agreement were
>       Champaign and CCTS.

**RESPONSE:** Champaign **denies** Request for Admissions No. 9 as

stated.  Champaign restates its Response to Request for Admissions

No. 2 as if stated in full herein.

Notwithstanding the above, Champaign **admits** the parties to the

1996 Agreement are (rather than were) Consolidated Communications

Telecom Services, Inc., (state of organization not given), and the

City of Champaign, Illinois, a municipal corporation and the

Plaintiff herein.

> 10.   Admit that CCTS executed the 1996 Agreement on or
>       about June 3, 1996.

**RESPONSE:** Champaign **admits** that Page 10 of the 1996 Agreement

contains a section entitled *Acceptance by Company* which is

purportedly signed by the President of Consolidated Communications

Telecom Services, Inc. and is dated June 3, 1996.  Champaign

restates its Response to Request for Admissions No. 9 as if stated

in full herein.

11.  Admit that, at the time Champaign and CCTS executed the 1996 Agreement, CCTS was a subsidiary of CCI.

**RESPONSE:** Champaign is **without sufficient knowledge to admit or deny** Request for Admissions No. 11.  Champaign restates its Response to Request for Admissions No. 9 as if stated in full herein.  Champaign has therefore made reasonable inquiry, however the information known, or readily obtainable, is insufficient to enable it to admit or deny the Request for Admission.

12.  Admit that, at the time Champaign and CCTS executed the 1996 Agreement, neither CCTS nor CCI was owned or controlled by McLeodUSA or MTSI or any company affiliated with McLeodUSA or MTSI.

**RESPONSE:** Champaign is **without sufficient knowledge to admit or deny** Request for Admissions No. 12.  Champaign restates its Response to Request for Admissions No. 9 as if stated in full herein.  Champaign has therefore made reasonable inquiry, however the information known, or readily obtainable, is insufficient to enable it to admit or deny the Request for Admission.

13.  Admit that Champaign required CCTS to execute the 1996 Agreement as a condition to using Champaign's ROW.

**RESPONSE:** Champaign **denies** Request for Admissions No. 13 as stated.  Champaign **admits** that in order to use Champaign's ROW, a provider may choose either to: (i) negotiate an agreement, the terms of which must then be approved by the City Council before the City Manager may sign it; (ii) use the form agreement provided by Champaign, the terms of which are pre-approved by the City Council,

so it may be signed by the City Manager without delay; or (iii) apply with plans to the City Engineer for a permit, and proceed without an agreement paying a premium price. Champaign further **admits** that Consolidated Communications Telecom Services, Inc. chose the second option above.

> 14.  Admit that the 1996 Agreement contains no limitation on the type of telecommunications service that CCTS was permitted to offer customers in Champaign.

**RESPONSE:** Champaign **denies** Request for Admissions No. 14 as stated.  Champaign **admits** that there are inherent limitations to the 1996 Agreement in that Consolidated Communications Telecom Services, Inc. was a local telephone service provider, and did not offer long distance service.  By law, the Illinois Public Utilities Act, it was limited to the type of use it could make of the ROW.

> 15.  Admit that Champaign seeks to assess ROW charges against McLeodUSA and/or MTSI under the 1997 Agreement.

**RESPONSE:** Champaign **denies** Request for Admissions No. 15 as stated.  Champaign **admits** that it seeks to assess ROW charges against the successor or assignee to the 1997 Agreement.  Champaign **admits** that McLeod USA Telecommunications Services, Inc. is a named party in the 1997 Agreement.

> 16.  Admit that the parties to the 1997 Agreement were Champaign and MTSI.

**RESPONSE:** Champaign **denies** Request for Admissions No. 16 as stated.  Champaign restates its Response to Request for Admissions

No. 9 as if stated in full herein.   Notwithstanding the above, Champaign **admits** the parties to the 1997 Agreement are (rather than were) McLeod USA Telecommunications Services, Inc., an Iowa corporation, and the City of Champaign, Illinois, a municipal corporation and the Plaintiff herein.

17. Admit that Champaign required MTSI to execute the 1997 Agreement as a condition to using Champaign's ROW.

**RESPONSE:** Champaign **denies** Request for Admissions No. 17 as stated.   Champaign **admits** that in order to use Champaign's ROW, a provider may choose either to: (i) negotiate an agreement, the terms of which must then be approved by the City Council before the City Manager may sign it; (ii) use the form agreement provided by Champaign, the terms of which are pre-approved by the City Council, so it may be signed by the City Manager without delay; or (iii) apply with plans to the City Engineer for a permit, and proceed without an agreement paying a premium price.   Champaign further **admits** that McLeod USA Telecommunications Services, Inc. chose the second option above.

18. Admit that Champaign has never conducted a study or calculation of the costs incurred by Champaign due to the use of Champaign's ROW by CNI, CCTS, MTSI, or McLeodUSA.

**RESPONSE:** Champaign **objects** to Request for Admissions No. 18 as being irrelevant and dispositive of no issues which have been raised on the pleadings before the Court.   Champaign further

**objects** to the term "costs" as being vague, uncertain, overly broad and undefined.    Notwithstanding said objections, Champaign **admits** it has not conducted a study or calculations with regard to a telecommunications company, whatsoever.    Champaign further **admits** that it has reviewed the cost, generally, of pavement maintenance, concerning the degradation to the pavement caused by the type of uses made by utility companies.

19.    Admit that Champaign has never conducted a study or calculation of the costs incurred by Champaign due to the use of Champaign's ROW by any telecomm-unications carriers.

**RESPONSE:** Champaign restates its Response to Request for Admissions No. 18 as if stated in full herein.

20.    Admit that Champaign has never conducted a study or calculation of whether long-distance telecommuni-cations carriers cause Champaign to incur greater or lesser costs due to their use of Champaign's ROW than local telecommunications earners.

**RESPONSE:** Champaign restates its Response to Request for Admissions No. 18 as if stated in full herein.

21.    Admit that the only ROW charge that Champaign applied against Ameritech during the years 1997 through 2002, inclusive, was the monthly access line fee set out in the Ameritech Agreement.

**RESPONSE:** Champaign **admits** that it has applied charges against Ameritech during the years 1997 through 2002, inclusive, pursuant to the Ameritech Agreement.

22. Admit that the Ameritech Agreement permitted Ameritech to construct telecommunications wires, cables, conduits, and fiber optics in and along Champaign's ROW without incurring any ROW charge except the monthly access line fee set out in the Ameritech Agreement.

**RESPONSE:** Champaign **denies** Request for Admissions No. 22 as stated. Champaign **admits** the Ameritech Agreement permits Ameritech to construct telecommunications wires, cables, conduits, and fiber optics in and along Champaign's ROW, for local telecommunications service only, without incurring any ROW charge except the monthly access line fee set out in the Ameritech Agreement.

23. Admit that the Ameritech Agreement contains no limitation on the type of telecommunications service that Ameritech was permitted to offer customers in Champaign.

**RESPONSE:** Champaign **denies** Request for Admissions No. 23 as stated. Champaign **admits** that Ameritech Agreement is limited by the local service Ameritech is authorized to offer.

24. Admit that the only ROW charge that Champaign applied against AT&T during the years 1997 through 2002, inclusive, was the charge set out in the AT&T Agreement, or $1 per foot of conduit that AT&T maintained in Champaign.

**RESPONSE:** Champaign **denies** Request for Admissions No. 24 as stated. Champaign **admits** that AT&T has been charged pursuant to the AT&T Agreement. Champaign further **admits** that Section 5 of the AT&T Agreement, on page 2, entitled *Adjustment of Payment* contains an escalator clause conforming with the Consumer Price Index.

25. Admit that the AT&T Agreement contains no limitation on the type of telecommunications service that AT&T was permitted to offer customers in Champaign.

**RESPONSE:** Champaign **denies** Request for Admissions No. 25 as stated.  Champaign **admits** that there are inherent limitations in the AT&T Agreement as AT&T was and is not a local provider.

26. Admit that, as of January 1, 2003, Champaign no longer requires telecommunications carriers to pay ROW charges under ROW agreements.

**RESPONSE:** Champaign **admits** that as of January 1, 2003 it no longer requires telecommunications carriers to pay ROW charges under ROW agreements.

Respectfully submitted,

**THE CITY OF CHAMPAIGN, an Illinois municipal corporation, Plaintiff**

By: _____
         One of its Attorneys

Thomas W. Kelty, No. 1441337
**KELTY LAW OFFICES, P.C.**
Attorneys for Plaintiff
3201 Pleasant Run, Suite A
P.O. Box 13317
Springfield, IL 62791-3317
Telephone: 217/726-8200
Facsimile: 217/726-8300