IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

| | |
|---|---|
| THE CITY OF CHAMPAIGN, an Illinois municipal corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 02-2252 ) |
| MCLEODUSA, INC., a Delaware corporation, and MCLEODUSA TELECOMMUNICATION SERVICES, INC., an Iowa corporation, | ) ) ) Hon. Harold Baker ) ) ) |
| Defendants. | ) ) |

**MCLEODUSA'S MEMORANDUM IN SUPPORT OF PRE-TRIAL MOTION
REGARDING NON-APPLICATION OF 1994 AGREEMENT**

Defendants McLeodUSA Incorporated and McLeodUSA Telecommunications Services, Inc. (collectively, "McLeodUSA"), by their attorneys, and pursuant to Fed. R. Civ. P. 16 and Local Rule 16.1(E), respectfully submit the following memorandum in support of their pre-trial motion for a ruling that, as a matter of law, McLeodUSA does not owe any fees to Champaign under the 1994 agreement between Consolidated Network, Inc. ("CNI") and Champaign. This motion is submitted pursuant to Local Rule 16.1(E) for the purpose of the "[s]implification of the issues for trial."

**Introduction**

A portion of Champaign's claim to right-of-way ("ROW") fees in this case depends on the application of a 1994 contract between CNI and Champaign that was expressly superseded by a subsequent contract between the same parties. The unambiguous terms of a 1996 agreement between Champaign and CNI—operating under the new name Consolidated Communications Telecom Services ("CCTS")—expressly replaced fees under the 1994 contract.

As Champaign seeks fees for the period 1998 through 2002, and the 1994 agreement was replaced with the 1996 agreement before that period commenced, McLeodUSA owes no fees to Champaign under the 1994 agreement. The application of the express, unambiguous terms of the 1996 contract is a matter for the Court, not the jury, and a pretrial ruling on this issue will substantially simplify the issues for trial.

## Undisputed Facts

Each one of the following undisputed facts is established by Champaign's own allegations in its complaint ("Compl."), the unambiguous terms of the ROW contracts,[1] which were attached to Champaign's complaint, and public records on file with the Illinois Secretary of State.

**CNI Enters the 1994 Agreement**

1. One of the ROW fee contracts that Champaign seeks to apply against McLeodUSA in this case is a 1994 agreement between CNI and Champaign (the "1994 Agreement"). (Compl. ¶¶ 34-44.) A true and correct copy of the 1994 Agreement is attached hereto as Exhibit A.

2. Champaign and CNI executed the 1994 agreement in July 1994. (Ex. A at 9; Compl. ¶ 35.) The 1994 Agreement provided that CNI would pay Champaign a ROW fee in exchange for a license to maintain a telecommunications conduit in Champaign's ROW. (Ex. A §§ 1,4; Compl. ¶ 35.)

---

[1] McLeodUSA has concurrently with this motion filed its Motion *in Limine* No. 3 to bar Champaign from attempting to introduce parol evidence purporting to contradict the plain terms of the 1996 Agreement.

2

**CNI Becomes CCTS**

3. On May 1, 1996, CNI changed its name to CCTS after a corporate merger with three other pre-existing companies. (Ex. B at 1, 4.)

4. Specifically, CNI merged with Midwest Fibernet Inc., Central Communications Company, and Consolidated Communications Telecom Services Inc., with CNI surviving as the merged corporation. (Ex. B at 1.) Immediately thereafter, CNI changed its name to CCTS. (Ex. B at 4.) In particular, CNI's plan of merger provided that "Article One of the Articles of Incorporation of CNI is hereby amended to read as follows: The name of the corporation is Consolidated Communications Telecom Services Inc." (Ex. B at 4.)[2]

**CCTS Enters the 1996 Agreement**

5. On June 3, 1996, after CNI changed its name to CCTS, Champaign entered into a new ROW agreement with CCTS (the "1996 Agreement"). (Ex. C; Compl. ¶¶ 45-54.)

6. The 1996 Agreement provided CCTS with the right to:

> construct, erect, renew, maintain and operate in, upon, along, across, under and over the streets, alleys, and public ways to the City of Champaign . . . line of poles, anchors, wires, cables, conduits, vaults, laterals and fiber optics and other fixtures and equipment (hereinafter referred to as "facilities") and to use the same from the transmission of sounds and signals by means of electricity or light, and especially for the conduct of a general telephone business.

(Ex. C § 1.) In other words, the 1996 Agreement allowed CCTS to build and maintain conduit and equipment generally throughout Champaign's ROW for the purpose of transmitting telephone signals.

---

[2] The Court may take judicial notice of publicly filed documents such as the Illinois Secretary of State merger forms. *E.g., United States v. Wood*, 923 F.2d 1580, 1582 (7th Cir. 1991).

7. In exchange for those rights, the 1996 Agreement required CCTS to pay a monthly fee to Champaign in the amount of 38 cents per "access line" — *i.e.*, for each telephone line running to a customer's home or business. (Ex. C § 6.)

8. The rights granted under the 1996 Agreement, and the fee mechanism imposed in the contract expressly superseded the 1994 Agreement between Champaign and the old CCTS, CNI. (Ex. C §§ 2(a), 6, 12.)

9. In particular, the 1996 Agreement expressly applied to "existing facilities" maintained by CCTS, providing:

> The location and height above or depth below the public thoroughfares of the existing facilities of the Company [CCTS] within the Municipality are hereby approved, and the same shall be maintained and operated under and subject to the provisions of this Agreement[.]

(Ex. C § 2(a), emphasis added.)

10. Further, the parties provided that fees under the 1996 Agreement would supersede any other fees charged by Champaign:

> The payments due hereunder shall be in lieu of any permit, license, inspection or other similar fees or charges customarily assessed by the Municipality to business operating in the public way or operating in a similar business as that conducted by the Company[.]

(Ex. C § 6.)

11. The parties also made clear that they understood that CCTS was the corporate successor of CNI, the party to the 1994 contract, providing that:

> Whenever the word "Company" or the words "Consolidated Communications Telecom Services Inc." [CCTS] are used in this Agreement, they shall be constructed to mean the Consolidated Network Inc. [CNI], its lessees, successors and assigns.

(Ex. C § 12.)

4

12. Despite these multiple provisions expressly providing that the 1996 Agreement superseded the prior arrangement between Champaign and CCTS's predecessor CNI (which no longer existed at the time of the 1996 Agreement), Champaign nevertheless seeks to enforce simultaneously both the 1994 *and* 1996 Agreements against McLeodUSA for fees during the period 1998 through 2002. (Compl. ¶¶ 44, 54.) In a draft pretrial order tendered to McLeodUSA, Champaign claims that McLeodUSA owes approximately $86,000 under the 1994 Agreement.

### **Argument**

The undisputed facts and the unambiguous terms of the ROW agreements permit only one conclusion: the 1994 agreement was expressly superseded by the 1996 Agreement. For that reason, the 1994 Agreement does not belong in this case at trial, as there is no matter for the jury to decide regarding the contract. Excluding the contract from trial and entering judgment for McLeodUSA on this issue would greatly simplify the issues at trial, focusing matters on the disputed 1996 and 1997 ROW agreements, and prevent the presentation of purposeless evidence and argument.

It is well-settled in Illinois that unambiguous contract terms must be enforced according to their terms. "Under Illinois law, resolution of issues of contract dispute starts with an analysis of the terms of the contract," and "if the language of the contract unambiguously answers the question at issue, the inquiry is over." *Kallman v. Radioshack Corp.*, 315 F.3d 731, 735 (7th 2002) (internal quotations and brackets omitted). If a contract is "clear and unambiguous, the parties' intent must be ascertained <u>exclusively</u> from the plain language of the contract as a matter of law." *Kaplan v. Sure Bros.*, 266 F.3d 598, 604 (7th Cir. 2001) (applying Illinois law, emphasis added). Extrinsic evidence is thus inadmissible where a contract is plain.

*Young v. Allstate Ins. Co.*, 351 Ill. App. 3d 151, 157, 159, 812 N.E.2d 741, 748, 479 (1st Dist. 2004). Whether contractual terms are unambiguous is a question of law for the Court. *Kaplan*, 266 F.3d at 604.

Here, the terms of the 1996 Agreement between Champaign and CCTS are plain in superseding any fees due under the 1994 Agreement between Champaign and CCTS's predecessor, CNI. At least three separate unambiguous provisions of the 1996 Agreement require that result:

*First,* section 2(a) expressly states that the 1996 Agreement covers CCTS's "existing facilities," providing that "the existing facilities of the Company within the Municipality are hereby approved, and the <u>same shall be maintained and operated under and subject to the provisions of this Agreement</u>." (Ex. C § 2(a), emphasis added.) On its face, this provision makes clear that CCTS's "existing facilities," including the telecommunications conduit covered by the prior 1994 Agreement, were now covered under the new 1996 Agreement between the same parties.

*Second*, section 6 expressly provides that CCTS shall pay Champaign only the monthly access line charge under the 1996 Agreement, and that this charge "shall be lieu of <u>any</u> permit, license, inspection or other similar fees or charges customarily assessed by the Municipality to business operating in the public way or operating in a similar business as that conducted by the Company." (Ex. C § 6, emphasis added.) There is no other way to read those plain terms than to provide that the 1996 Agreement's fee is exclusive, and that CCTS can be charged no other ROW fees by Champaign. On its face, this provision expressly supersedes fees charged to CCTS's predecessor CNI under the 1994 Agreement.

*Third*, and finally, the parties expressly acknowledged in section 12 that the terms of the 1996 Agreement would be applied to CCTS as the successor to CNI, providing that "[w]henever the word "Company" or the words "Consolidated Communications Telecom Services Inc." [CCTS] are used in this Agreement, they shall be constructed to mean the Consolidated Network Inc. [CNI], its lessees, <u>successors and assigns</u>. (Ex. C § 12, emphasis added.) The parties thus entered into the contract—including the "existing facilities" clause (section 2) and the exclusive fee arrangement (section 6)—expressly acknowledging the identity of CCTS and CNI. The plain terms of the agreement thus show that the parties expressly contemplated CCTS's successor relationship to CNI at the time of the 1996 Agreement, confirming that they intended to supersede the 1994 Agreement between CNI and Champaign.

Unambiguous terms such as those above "must be enforced according to their terms." *Young*, 351 Ill. App. 3d 157, 812 N.E.2d 748. Enforcing the unambiguous 1996 Agreement requires the conclusion as a matter of law that the parties expressly replaced the fee arrangement under the 1994 Agreement with the fees under the 1996 Agreement. That conclusion, which is based on undisputed facts and plan contractual language, is for the Court—not the jury. A ruling enforcing the 1996 Agreement according to its terms will greatly simplify the matters to be presented at trial, serving judicial economy and avoiding the presentation of needless evidence and argument.

## Conclusion

For the reasons set out above, the Court should enter a pre-trial order pursuant to holding as a matter of law that the 1996 Agreement expressly superseded the 1994 Agreement. As that conclusion is based on undisputed facts and matters admitted in the parties' pleadings, the Court may enter such an order pursuant to Fed. R. Civ. P. 56(c), 12(c) or 50(a).

          Respectfully submitted,
          McLeodUSA Incorporated and
          McLeod Telecommunications Services, Inc.


By:    s/ Edward F. Malone
         One of their attorneys
         Edward F. Malone
         Daniel J. Weiss
         JENNER & BLOCK LLP
         One IBM Plaza
         Chicago, Illinois  60611
         (312) 222-9350
         (312) 840-7517 (fax)

October 4, 2004

**CERTIFICATE OF SERVICE**

       I hereby certify that on October 4, 2004, I electronically filed the foregoing MCLEODUSA'S MOTION AND MEMORANDUM IN SUPPORT OF PRE-TRIAL MOTION REGARDING NON-APPLICATION OF 1994 AGREEMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Thomas W. Kelty
    tkelty@keltylaw.com

    s/ Daniel J. Weiss
    Edward F. Malone
    Daniel J. Weiss
    Attorneys for Defendants
    Jenner & Block LLP
    One IBM Plaza
    Chicago, Illinois   60611
    (312) 222-9350
    (312) 840-7517 (fax)
    emalone@jenner.com
    dweiss@jenner.com