E-FILED
Monday, 04 October, 2004 03:34:15 PM
Clerk, U.S. District Court, ILCD

# AGREEMENT FOR USE OF THE PUBLIC WAY

**SECTION 1.**   **DURATION**

Consolidated Communications Telecom Services Inc., (hereinafter referred to as "the Company"), its lessees, successors and assigns, are hereby granted the right to construct, erect, renew, maintain and operate in, upon, along, across, under and over the streets, alleys and public ways of the City of Champaign (hereinafter referred to as "the Municipality"), lines of poles, anchors, wires, cables, conduits, vaults, laterals and fiber optics and other fixtures and equipment (hereinafter referred to as "facilities"), and to use the same for the transmission of sounds and signals by means of electricity or light, and especially for the conduct of a general telephone business for the period of ten (10) years from and after the effective date of this Agreement and thereafter until terminated by sixty (60) days written notice either by the Municipality to the Company, or by the Company to the Municipality. The provisions of this Agreement shall be renegotiated upon written notice from one party to the other at any time after July 1, 2000. Any new terms and conditions agreed to as a result of such renegotiation shall be effective upon the expiration of this Agreement in accordance with the terms contained herein unless the parties agree otherwise.

**SECTION 2.**   **EXISTING FACILITIES; PERMIT REQUIREMENTS**

**(a) Existing Facilities**

The location and height above or depth below the public thoroughfares of the existing facilities of the Company within the Municipality are hereby approved, and the same shall be maintained and operated under and subject to the provisions of this Agreement. Any change in or extension of any of said facilities or the construction of any additional facilities, in, upon, along, across, under or over the streets, alleys and public ways of the Municipality shall be made pursuant to permit, as discussed in the next subsection, as issued by the Public Works Director or such officer as may be designated from time-to-time by the City Manager (or the City Manager's successor in function) of the Municipality for that purpose, (hereinafter referred to as a Municipal Telecommunications Representative or MTR). The height above public thoroughfares of all aerial wires and cables hereafter constructed shall conform to the requirements of the Illinois Commerce Commission or other regulatory body having jurisdiction thereof. All facilities hereafter installed shall be so placed, and all work in connection with such installation shall be so performed, as not to interfere unreasonably with ordinary travel on the public ways of the Municipality or with any municipal water or sewer pipes then in place, and in case of bringing to grade or change of grade, or change of width of any street or alley, the Company, provided it is notified thereof in writing at least thirty (30) days prior to the commencement thereof, shall change its facilities so as to conform thereto. The tops of all vaults constructed by the Company within the Municipality shall present an even surface with the grade at the point where laid, and shall be lowered or raised by the Company to conform to the top of paving or grade as required by the City Engineer of the Municipality whenever the grade of the street or alley in which any such vault is located may be at any time hereafter lowered or raised.

Champaign
Doc. No.   1549

**(b) Permit Required**

The construction and installation of said facilities or any change thereof including extension, reduction or removal of the facilities shall be subject to the issuance of a permit therefore by the MTR. No facility shall be laid or installed in or under any streets, alleys or other public way until a permit therefore is issued by the MTR. Said permit shall indicate the time, manner and place of laying or installing each facility. Permit approval shall be granted if the proposed work is consistent with the use of the public way granted by this Agreement. Each application for a permit shall be accompanied by prints, plans and maps showing the proposed location of each facility to be laid or installed, the location of each conduit to be entered, and the number of manholes or other openings to gain access to said conduit. In the event of an emergency which the Company believes poses a threat of immediate harm to the public or to any of the Company's facilities, the Company shall be permitted access to the public way to ameliorate the threatened harm without the benefit of a permit, provided however, the Company shall advise the Municipality of the emergency at its earliest opportunity and seek a proper permit within a reasonable period of time thereafter.

**(c) Noncompliance of Facilities**

The Municipality reserves the right to make physical on-site inspections of the facilities at its discretion. The Company shall correct or substantially correct any default or nonconformance with the Municipality's written, publicly available installation standards, weather or conditions beyond the reasonable control of the Company permitting, within thirty (30) days of receipt of written notification (hereinafter "the 30 day correction period") from the MTR. If the MTR determines that the Company has not corrected or substantially corrected the default or nonconformance and has so advised the Company in writing, the Company must submit a time table within five (5) days of the lapse of the thirty (30) day correction period to the Municipality specifying the anticipated date of completion. In an emergency, affecting the public health, safety and welfare in the public way as determined by the MTR, the Company shall immediately correct the default or nonconformance. If the Municipality, in the exercise of its reasonable discretion, determines that the Company has not substantially corrected the emergency within five (5) days of such an order, the Company shall be in default and shall pay the Municipality liquidated damages of Five Hundred Dollars ($500.00) per day, each day after the five (5) day period that the Company fails to substantially correct the default or noncompliance.

**(d) Maps**

Upon request by the Municipality, the Company shall file with the MTR a map which details existing and new facilities. Subject to the provisions of the Illinois Freedom of Information Act, 5 ILCS 140/1 et seq., any maps, plans or drawings depicting Company facilities that have been properly designated "Confidential" shall be regarded by the Municipality as proprietary and confidential as to third parties. The foregoing shall not apply to any information which the Municipality can demonstrate is in the public domain through no breach of this Agreement by the Municipality. The Company and Municipality agree, to the extent practicable, to exercise their best efforts to coordinate the timing of the construction activities of each, so as to minimize any public inconvenience. On or about January 1 of each year, or as otherwise

agreed to by the parties, the Company shall meet with the Municipality to detail, to the extent possible, its currently planned construction activities within the Municipality.

## SECTION 3. REPAIR OF COMPANY WORK SITES

The Company, after doing any excavating or construction work shall, at its sole cost and expense, promptly repair and restore the site including all sidewalks, parkways or pavements disturbed by the Company to the condition in which it existed prior to the performance of the work, or nearly as practicable as determined by the MTR in the exercise of its reasonable discretion. In the event that any such sidewalk, parkway or pavement shall become uneven, unsettled, or otherwise requires repairing, because of such disturbance by the Company, then the Company, as soon as climatic conditions will permit, shall promptly, upon receipt of notice from the MTR so to do, cause such sidewalk, parkway or pavement to be repaired or restored to the condition in which it existed before said sidewalk, parkway or pavement was disturbed by the Company. Such restoration shall be completed within ten (10) days after the date of commencement of such restoration work. In the event that the Company fails to commence and complete the restoration work in the manner and within the time periods prescribed herein, the Municipality may, but shall have no obligation to, perform such work and recover from the Company any costs and expenses the Municipality incurs. In the event that such public way or improvement cannot be so repaired, replaced or restored, the Company shall justly compensate the Municipality. All excavations in lawns or grassy parkways shall be immediately backfilled, tamped and then restored within a reasonable time thereafter to the original condition with sod or hydroseed in accordance with the applicable provisions of this Agreement. The Company shall keep all facilities which it shall construct or repair by virtue of this Agreement, in a reasonably safe condition at all times, and shall maintain such barriers and danger signals during the construction, repair or renewal work performed hereunder as will reasonably avoid danger to life, limb and property.

## SECTION 4. DEFENSE, INDEMNIFICATION OF MUNICIPALITY

The Company shall, at its own expense, defend all suits that may be brought against the Municipality on account of or in connection with the violation by the Company of any of the obligations hereby imposed upon or assumed by it, or by reason of or in connection with any damage to life, limb or property connected with its failure to meet its obligation hereunder or any of the structures constructed or maintained by it under or by virtue of this Agreement, and hold and save the Municipality harmless from any and all liability and expense as herein defined. As used in this Section. liability and expenses shall include judgments, costs and damage for or associated with removal, relocation, alteration, repair maintenance and restoration of the structures or appliances herein authorized, and for any and all damages hereto and on account of the location, construction, alteration, repair or maintenance of any public ways, including bridges, tunnels, vaults, sewers, water mains, conduits, pipes, poles and other public utilities.

The Municipality may, under the direction of the Company or its attorneys, assist in defending any such claim or suit. The Company shall not be required to reimburse the Municipality for expenses incurred by it in case of the election so to assist.

The Company shall, at its own expense, indemnify and hold harmless the Municipality and its officers, agents and employees, from liability, arising out of all judgments or settlements, including reasonable attorney fees, whether for personal injury, bodily injury, property damage or loss or interruption of utility service arising out of the reconstruction, installation, maintenance or other operations of the Company.

## SECTION 5. USE OF POLES BY MUNICIPALITY

During the term of this Agreement and while the Company is using any pole or poles or conduit erected or maintained hereunder, it will permit the Municipality the use of space, if such space is not required for Company needs, for attaching the Municipality's police and fire alarm signal wires or other publicly, provided that the police and fire alarm system is provided to the public without charge. Any such attachments or use are to be in accordance with specifications designated by the Company and all work will be performed by the Municipality at its expense at the top of the space available for the use of the Company on any of said poles or conduit, it being understood that the poles upon which space is permitted for use by the Municipality shall be considered, for the purpose of this agreement, as personal property; provided that such wires shall be so placed and maintained by the Municipality that the use of the same will not interfere with the operation and maintenance of the Company's equipment or its use of said poles, and provided further that a thirty (30) inch climbing space shall be maintained between the pole pins on poles jointly used with another public utility. All such wires shall be attached and maintained under the direction and supervision of the Company's authorized representatives and only in compliance with any rules for construction and maintenance of electric power and communication lines as may be ordered by the Illinois Commerce Commission. The Municipality shall, at its own expense, defend all claims, demands, or suits on account of any injury to life, limb or property that may result by reason of or in connection with the presence, use, maintenance, erection or removal of the Municipality's wires that their appurtenances pursuant hereto, and hereby agrees to save and keep harmless the Company from any and all damages, judgments, costs and expenses of any kind which may arise by reason thereof.

## SECTION 6. COMPENSATION FOR USE OF RIGHT OF WAY

So long as the Company exercises and enjoys the rights granted to it hereunder, it shall pay to the Municipality for each Access Line that the Company maintains and operates within the Municipality: Thirty-eight Cents ($0.38) per Access Line per month. The Company shall make said payments on a monthly basis, due the last day of the succeeding calendar month. "Access Line" as used in this Section shall mean "the connecting facility between a customer's premise and the Company's serving central office that provides customer access to the dial network for placing and receiving calls." "Within the Municipality" means within the corporate boundaries of the city named in Section 1 of this Ordinance as recorded with the appropriate county recorder and as provided to the Company. The Municipality agrees to notify the Company of any ordinances annexing to or disconnecting from such corporate boundaries and agrees to provide to the Company an accurate map of such changes showing, if available, street name and number detail.

The Company agrees to provide annually, within a reasonable time from Municipality's request, the names, addresses and number of Access Lines for each of its customers within

Champaign
Doc. No. 1552

the Municipality, subject to the Municipality's agreement not to disclose said information, which Municipality agrees shall be used solely for the purposes of verifying the number of the Company's Access Lines within the Municipality. The Company further agrees to substantiate, upon request the contents of such report and all records and other documents required for such verification shall, upon reasonable advance notice, be subject to inspection by the Municipality. In compiling such report, the Company shall be permitted to delete the names of those customers subscribing to the Company's non-published listing service.

The payments due hereunder shall be in lieu of any permit, license, inspection or other similar fees or charges customarily assessed by the Municipality to businesses operating in the public way or operating in a similar business as that conducted by the Company including, but not limited to, all general business license fees.

The Company shall, without charge and when directed by the City Manager of the Municipality, move within the same premises the customer premise wire associated with each Access Line provided to the Municipality by the Company, provided that not more than one such change of location in any one year per Access Line shall be made by the Company without expense to the Municipality. "Customer premise wire" is defined as any wire beginning on the customer's side of the network interface or equivalent and ending at the registration jack or connecting block, exclusive of wiring associated with key or PBX systems and their serving terminals or main distribution frames.

### SECTION 7. UNDERGROUND INSTALLATION

Newly constructed distribution lines shall be placed underground to the extent required by the Illinois Commerce Commission. The Company shall not be required to bury any existing aerial facilities. However, if a municipal construction project to the public way, such as a road widening or other improvement, would require that existing aerial facilities be relocated, the Company agrees that if requested by the Municipality, such facilities will be buried, provided the cost to the Company of burial does not exceed the cost of an aerial relocation.

If during the term of this Ordinance, the Company shall receive authority from the ICC to undertake a systemwide program or programs of undergrounding its existing transmission facilities, the Company will budget and allocate to the program of undergrounding in the Municipality such amount as may be determined and approved by the ICC.

### SECTION 8. MAINTENANCE OF TREES

The Company is authorized and directed to trim trees upon and overhanging the streets, avenues, alleys, highways and other public places or grounds of the Municipality, so as to prevent the branches of such trees from coming into contact with the wires and cables of the Company. All such trimming shall be in accordance with standard local arboricultural practices, if established. All trimming debris shall be removed from the work area on a daily basis. The Municipality may, if it so elects, specify times, methods and standards for the Company's tree trimming operations.

Champaign
Doc. No.    1553

## SECTION 9. MOVING OF BUILDINGS

The Company after five (5) days written notice from the governing body of the Municipality to do so, shall remove, raise, or lower its structures temporarily to permit the moving of a building, or any other object, along a highway, provided the benefited party or parties shall agree to pay the Company an amount equal to the actual cost of effecting such temporary changes in its structures; and provided further that, pending the determination of such actual cost, the benefited party or parties shall have deposited with the Company an amount equal to the cost as estimated by the Company. Should any amount of such deposit remain unexpended, after deducting the actual cost involved, said amount shall be returned to the party making the deposit.

## SECTION 10. RIGHT TO REPEAL ORDINANCE; VALIDATION

In case the Company shall fail or neglect to comply with any or all of the provisions of this Agreement (unless by order of the Illinois Commerce Commission or of any other body, board, commission or court of competent jurisdiction, the Company is otherwise directed, or unless compliance by the Company with such provision is prohibited or adjudged unlawful by an order of the Illinois Commerce Commission or by an order of any other body, board, commission or court of competent jurisdiction), the Municipality reserves the right to terminate this Agreement and forfeit the rights hereby created or sought to be created, provided that no such repeal, rescission or forfeiture shall exist or be claimed because of such failure or neglect, until written notice of such failure or neglect so claimed shall have been given to the Company, and a reasonable opportunity afforded it to comply with the provisions hereof or to prove that such compliance already exists. In the event that the Illinois Commerce Commission or any other body, board, commission or court of competent jurisdiction shall adjudge any provision or provisions hereof invalid or illegal, or direct a change by the Company in any matter or thing herein contained, such invalidity or illegality or change shall in no way affect the remaining provisions of this Agreement, or their validity or legality and this Agreement in all other respects shall continue in full force and effect, as if said provision or provisions had not been so adjudged invalid or illegal or such change directed.

## SECTION 11. AGREEMENT NONEXCLUSIVE

Nothing contained in this Agreement shall prohibit the Municipality from entering into an agreement with any other entity similar to the one granted herein to construct, install, maintain and operate in the public way. The Municipality agrees that it will use its best efforts to obtain appropriate compensation from any and all entities that seek to use the public way to provide telecommunication services similar to the telecommunication services provided by the Company, it being the intent of the parties that all entities using the public way to provide competing services be treated fairly.

The permission and authority herein granted are not intended to limit or modify any agreement, franchise, license or permit previously granted by the Municipality to any other occupant of the public way. Therefore, the Company, recognizing the prior rights of other contractors, franchisees, licensees and permittees in the public way, shall exercise the rights granted herein in such a manner as not unreasonably to interfere with the prior or future rights of other such contractors, franchisees, licensees or permittees in the public and so as not to

endanger or impair the facilities of any other such contractor, franchise, licensee or permittee. The Municipality covenants that it shall require prior contractors, franchisees, licensees or permittees, in like manner, to respect the rights and not interfere with the rights of the Company granted herein.

## SECTION 12. COMPANY DEFINED

Whenever the word "Company" or the words "Consolidated Communications Telecom Services Inc." are used in this Agreement, they shall be construed to mean the Consolidated Network Inc., its lessees, successors and assigns, and this Agreement shall be binding upon and inure to the benefit of the Company, its lessees, successors and assigns.

## SECTION 13. SEVERABILITY

If any provision of this Agreement, or any covenant, stipulation, obligation, agreement, act or action, or part thereof made, assumed, entered into or taken thereunder, or any application of such provision, is for any reason held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Agreement or any other covenant, stipulation, obligation, agreement, act or action, or part thereof, made, assumed, entered into, or taken, each of which shall be construed and enforced as if such illegal or invalid portion were not contained herein. Such illegality or invalidity of any application thereof shall not affect any legal and valid application thereof, and each such provision, covenant, stipulation, obligation, agreement, act or action, or part thereof, shall be deemed to be effective, operative, made, assumed entered into or taken in the manner and to the full extent permitted by law.

## SECTION 14. NOTICE AND MAILING OF ADDRESSES

Unless otherwise specified herein, all notices, requests, designations, deliveries, approvals, consents, demands and waivers required or provided hereunder or desired by the parties hereto shall be in writing and shall be deemed properly served if hand-delivered to the parties at the following addresses (effective on delivery) or if sent by registered or certified mail, postage prepaid, return receipt requested, addressed to the parties at the following addresses (effective on mailing):

(i) IF TO COMPANY:  President
Consolidated Communications Telecom Services Inc.
121 South 17th Street
Mattoon, IL  61938

and

Ellyn Elise Crutcher
Attorney at Law
121 South 17th Street
Mattoon, IL  61938

Champaign
Doc. No.   1555

(ii) IF TO THE MUNICIPALITY:    City Manager
102 North Neil Street
Champaign, IL 61820

and

City Attorney
102 North Neil Street
Champaign, IL 61820

or to such other parties at other addresses as either party may designate by notice to the other.

**SECTION 15. EFFECTIVE DATE**

This Agreement shall be in full force upon receipt by the Clerk of the Municipality of the Company's written and unconditional acceptance of all the provisions of this Agreement executed by its proper officers thereunto duly authorized, under the corporate seal of the Company, and attested to by its Secretary or Assistant Secretary.

PASSED this __21st__ day of __MAY__, A.D. 19__96__

_____
City Manager

APPROVED this __21st__ day of __MAY__, A.D. 19__96__

_Deborah Flick_____
Deputy City Clerk

STATE OF ILLINOIS        )
                         ) SS
COUNTY OF CHAMPAIGN      )

I, __DEBORAH FLICK__, __DEPUTY CITY__ Clerk of the __CITY__ of __CHAMPAIGN__ of County, Illinois, do hereby certify that I am the keeper of the agreements of said Municipality; and that the above and foregoing is a true, correct and complete copy of Council Bill No. __96-125__ passed by the __CITY COUNCIL__ of said Municipality on the __21st__ day of __MAY__ A.D.19__96__, and approved by the __CITY COUNCIL__ thereof on the __21st__ day of __MAY__, A.D.19, as appears from the records of said Municipality.

IN WITNESS WHEREOF, I have hereunto set my hand as __DEPUTY CITY__ Clerk of said Municipality and have hereunto affixed the seal thereof this __10th__ day of __JUNE__ A.D.19__96__.

_Deborah Flick_____
_Deputy City_____CLERK

Approved as to form
_____

## ACCEPTANCE BY COMPANY

Consolidated Communications Telecom Services Inc., by and through its __President__ and __Asst. Secretary__, by authority vested in them by __CCTS__, do hereby unconditionally accept the foregoing agreement for the purposes contained therein.

Accepted this __3RD__ day of __June__, A.D. 19__96__

Consolidated Communications Telecom Services Inc.

By: _____

Its: __President__

ATTEST: _____

Its ~~Assistant~~ Secretary and Assistant Treasurer

STATE OF ILLINOIS     )
                      ) SS
COUNTY __Coles__      )

I, __Kay A. Noeth__, a notary public hereby certify that __D.L. Erickson__ personally known by me to be the __President__ of Consolidated Communications Telecom Services Inc., and __K.R. Ferguson__, personally known by me to be the __Asst. Sec. & Tres.__ of said company, appeared before me this __3rd__ day of __June__, 1996 and acknowledge that they executed the foregoing Acceptance on behalf of Consolidated Communications Telecom Services Inc., as their free and voluntary act and that of the Company.

OFFICIAL SEAL
KAY A. NOETH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3-5-2000

_____
Notary Public

10

Champaign
Doc. No.   1558