1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE CENTRAL DISTRICT OF ILLINOIS
2                  URBANA/DANVILLE DIVISION

3
   THE CITY OF CHAMPAIGN, an Illinois )
4  municipal corporation,             )
                   Plaintiff,         )
5                                     )
        vs.                           ) NO 02-2252
6                                     )
   MCLEODUSA, INC., a Delaware        )
7  corporation, and MCLEODUSA         ) Hon. Harold Baker
   TELECOMMUNICATION SERVICES,        )
8  INC., an Iowa corporation,         )
                                      )
9                  Defendants.        )

10

11               RULE 30(b)(6) DEPOSITION

12  Deposition of 30(b)(6) Deponent FREDERICK STAVINS,

13  taken at the instance of the Defendants on the 14th

14  day of April, 2004, commencing at 1:34 p.m. at Kelty

15  Law Offices, P.C., 3201 Pleasant Run, Suite A,

16  Springfield, Illinois, before Cheryl A. Davis,

17  Certified Shorthand Reporter and Notary Public,

18  pursuant to Notice of Rule 30(b)(6) Deposition and the

19  stipulation attached hereto.

20

21            DAVIS REPORTING SERVICE
               3 Hickory Hills Drive
22           Springfield, Illinois  62707
                  (217) 546-6868
23
       Reported by: Cheryl A. Davis, CSR #084-001662
24

168

1    Q.    So you don't no one way or another.

2    A.    You're asking me to make maybe a judgment

3  about that that I'm not completely comfortable making.

4    Q.    Okay. So you don't know one way or the

5  other whether the type of traffic that's run over a

6  certain cable could cause the City more costs. Is

7  that fair to say?

8    A.    I think that's fair to say I'm not sure as

9  I sit here, yes.

10   Q.    Okay. Okay.

11         What is the City seeking of McLeod in this

12 case?

13   A.    Payment of money.

14   Q.    Okay. How much money?

15   A.    I think that there is an amount -- there's

16 an amount specified in our complaint. Well, maybe

17 there's not an amount specified in our complaint.

18 Maybe it's amounts due under all three agreements.

19 The last I recall it was somewhat over $650,000 plus

20 interest plus penalties.

21   Q.    Okay. What's the interest the City is

22 seeking?

23   A.    Well, you know, our ordinances provide for

24 an interest rate which is -- is it 2 percent a month?

1  A percent a month?  That's what our ordinances provide
2  for.
3      Q.   Is the City asking the Court for interest
4  at 24 percent a year on this?
5      A.   Gee, if it was permissible by law, we'd try
6  to enforce our ordinance.  I'm not sure as I sit here
7  if it is or not.
8      Q.   You're not sure if 24 percent a year --
9      A.   I'm not sure if the pre-interest judgment
10 statute would permit us that much interest.
11     Q.   Okay.  But let's forget about what is
12 lawful.  I want to know what the City is demanding in
13 this lawsuit, and as I understand it the City is
14 demanding 24 percent per year so long as that's
15 lawful.
16     A.   Well, if it was lawful on amounts that
17 McLeod didn't pay under its agreements to pay, and
18 Consolidated, yeah, I think that -- if that's what the
19 agreement calls for, that's what the agreement calls
20 for.  We're seeking what's due to us under the
21 agreement that hasn't been paid.
22     Q.   Okay.  But I'm trying to understand, you
23 mentioned that you're seeking interest, and I'm trying
24 to find out what exactly it is you're seeking.  I

170

1 thought you said you're seeking 24 percent per year so
2 long as it's lawful. Is that --
3     A.    If it was permitted under the statutes,
4 that's what we would seek, correct.
5     Q.    Okay. So is it correct to say rather than
6 say that's what we would seek, because you are, in
7 fact, seeking something.
8     A.    Uh-huh.
9     Q.    Is it correct to say that you are seeking
10 24 percent per year so long as the Court finds that
11 that rate is lawful?
12     A.    If the Court found that that was lawful,
13 that's what we would be seeking.
14     Q.    Okay. That's what you are seeking right
15 now; right? I mean you're the one prosecuting the
16 lawsuit. You seem to be fighting me on --
17     A.    I'm not --
18     Q.    On are seeking versus would seek, and I
19 don't understand.
20     A.    No, I'm not making that distinction at
21 all. I'm saying we're seeking the maximum amount that
22 we're entitled to under the law, and as I sit here I'm
23 not sure what the -- if the prejudgment interest
24 statute impacts that percentage amount that we

171

 1  provided for in our ordinances.
 2      Q.   So you're --
 3      A.   So that's what I'm saying.  I'm saying I
 4  understand that there's a possibility that we may be
 5  limited in our interest rate, and I'm prepared, if
 6  that's the case, to accept that.  I'm just not sure if
 7  the law is so clear that we cannot get the original
 8  rate that we proposed.  I'm trying to be clear about
 9  this.
10      Q.   No, I understand.  Has the City to your
11  knowledge ever enforced 24 percent per year against
12  anybody?
13      A.   I don't know.  Don't know.  I don't know
14  what the finance department has imposed.
15      Q.   Okay.  But in your position as City
16  Attorney are you telling me that you don't know of any
17  example in which the City has actually enforced 24
18  percent per year against anybody?
19      A.   I don't know that we've ever been in that
20  position before to impose it.  In fact, we may not
21  have, but I'm not understanding that we've ever had
22  somebody who is so arrears on a contract before.
23      Q.   Okay.  Let me try again.  I think this is a
24  yes or no question.  I think it's a fair yes or no

172

1  question.  Do you have an example of anybody that the
2  City has ever enforced 24 percent a year against?
3       A.    I don't recall any.
4       Q.    Okay.  So is that to say that you cannot
5  provide me an example today?
6       A.    I can't provide you with an example today.
7       Q.    Okay.
8             What other penalties or fees is the City
9  requesting against McLeod in addition to this
10 interest?
11      A.    What other penalties and fees?
12      Q.    Uh-huh.
13      A.    I'm not -- I guess I'm not sure if there's
14 any provision in any of what we've -- any of what
15 we've sued you upon to get attorneys' fees, but, boy,
16 if we could, that would be great.
17      Q.    Okay.  But you understand --
18                  (Laughter)
19            I understand, and the record can reflect
20 we're all laughing, but, look; you're the 30(b)(6)
21 witness on the calculation basis for all charges that
22 the City is seeking.  Do you understand?
23      A.    That's right.
24      Q.    And what I'm trying to understand,

173

1 consistent with my 30(b)(6) notice, is what it is
2 you're seeking.
3    A.    Well, then let me recapitulate then.  We're
4 seeking every penny that you owe us under any
5 agreements that you have with us.
6    Q.    Right.
7    A.    We're seeking the maximum amount of
8 interest that we can charge you.
9    Q.    Right.
10   A.    On the arrearages, since you haven't paid
11 us, and if there's any potential to get attorneys'
12 fees, and I'm not sure that there is, we're seeking
13 attorneys' fees as well.
14   Q.    Okay.  Is there anything else that you're
15 seeking?
16   A.    Gee, I'm not sure if we've asked to have
17 your lines removed from the ground, but.  I don't
18 think we've asked for that yet.
19   Q.    Okay.  So there's nothing else you're
20 seeking other than what you've just told me.
21   A.    That's correct.
22   Q.    Is there anybody else -- let me ask you;
23 you're aware of the 1996 Federal Telecommunications
24 Act, are you not?