1

```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF ILLINOIS
                URBANA/DANVILLE DIVISION


THE CITY OF CHAMPAIGN, an Illinois )
municipal corporation,             )
                Plaintiff,         )
                                   )
     vs.                           ) NO 02-2252
                                   )
MCLEODUSA, INC., a Delaware        )
corporation, and MCLEODUSA         ) Hon. Harold Baker
TELECOMMUNICATION SERVICES,        )
INC., an Iowa corporation,         )
                                   )
                Defendants.        )


               RULE 30(b)(6) DEPOSITION

     Deposition of 30(b)(6) Deponent FREDERICK STAVINS,

taken at the instance of the Defendants on the 14th

day of April, 2004, commencing at 1:34 p.m. at Kelty

Law Offices, P.C., 3201 Pleasant Run, Suite A,

Springfield, Illinois, before Cheryl A. Davis,

Certified Shorthand Reporter and Notary Public,

pursuant to Notice of Rule 30(b)(6) Deposition and the

stipulation attached hereto.


                  DAVIS REPORTING SERVICE
                   3 Hickory Hills Drive
                 Springfield, Illinois  62707
                      (217) 546-6868

          Reported by:  Cheryl A. Davis, CSR #084-001662
```

118

```
 1     A.    I just don't recall discussing that.  I
 2  believe it's precisely the same term that's in the
 3  Ameritech agreement.
 4     Q.    If you want to turn to page 7 of the
 5  contract, section 12, Company Defined.
 6     A.    Page 7, Company Defined.
 7     Q.    Yeah.  Do you see that section?
 8     A.    Uh-huh.
 9     Q.    And, again, we're talking about the CCTS
10  agreement.  There it says where the word "Company" or
11  the words "Consolidated Communications Telecom
12  Services" are used in this agreement, they shall be
13  construed to mean the Consolidated Network, Inc..  Do
14  you see that?
15     A.    Yes, I do.
16     Q.    Okay.  And Consolidated Network, Inc.,
17  that's CNI.  That's the same party as the 1994
18  agreement, isn't it?
19     A.    I'm sure it is.
20     Q.    Okay.  And so when you say this is an
21  agreement with a different company, how does section
22  12 work?  It seems to say that CCTS means CNI.
23     A.    Yeah, it does seem to say that.
24     Q.    Okay.  So are they, in fact, agreements
```

119

1  between different companies or are these both
2  agreements with the same company which may have a new
3  name here, CCTS?
4      A.   Well, that's a good question. That's a
5  good question. You know, most of the time, and maybe
6  you can attribute it to a bit of naivete on my part.
7  You know, the corporate -- I always thought we were
8  dealing with one company, you know, when somebody was
9  dealing with Consolidated, so when I saw the first
10 agreement I thought, hum, this must be a different
11 company. Maybe they have a right-of-way company,
12 because we started to see those types of agreements
13 come through, and I don't know that I looked at this
14 very carefully. They would have supplied the term,
15 obviously, and I don't know if I would have given it
16 two thoughts.
17     Q.   Okay. So it may be -- I mean I think you
18 said that section 12 seems to say that CCTS shall be
19 understood under the agreement as CNI, the same party
20 as the '94 agreement; right?
21     A.   Well, yeah. They're the same; they're the
22 same names, corporate names, so I'm presuming the same
23 company, yeah.
24     Q.   And Section 6 seems to say to me with the

120

1  clause that we read that the company that's the party
2  to the '96 agreement shall pay only under this
3  particular agreement and that the payments shall be in
4  lieu of any other payment.
5     A.    You know, I guess I don't look at it like
6  that.  I guess I look at it as kind of a forward-
7  looking thing.  There are other charges that we have,
8  you know, potentially in the future.  I didn't look at
9  that as -- at least as I sit here now I don't look at
10 it as abrogating that final charge, that other charge
11 that we gave to them, because I'm not even sure it's
12 the same type of business that they're using the
13 equipment in.
14    Q.    Uh-huh.
15    A.    You know, that's what I have to say about
16 it.  So, you know, I know that you're interpreting
17 that to somehow abrogate the old charge.  I guess as I
18 sit here now I don't -- I don't see that, and I don't
19 recall any discussions concerning the abrogation of
20 the old charge.
21    Q.    Okay.  But you would agree with me though I
22 think that section 12 makes the agreement applicable
23 to the CNI company, the company that you dealt with in
24 1994, also with Ellyn Crutcher in 1994; right?

125

1    Q.    Okay. What I want to focus on in Exhibit 7
2 -- well, first of all, this is an agreement, as I
3 understand it, between the City of Champaign and a
4 company called McLeod Telecommunications Services,
5 Inc.. Is that right?
6    A.    McLeodUSA Telecommunications Services,
7 Inc., yeah.
8    Q.    You got it. And it is what we've been
9 calling a per foot agreement; right?
10    A.    That's correct.
11    Q.    In other words, for each foot of the City's
12 right-of-way that McLeod would use, they would pay a
13 rate of $1.00 and some additional money. Is that
14 right?
15    A.    I think that's called for an initial fee of
16 $1.32 -- $1.321 per lineal foot.
17    Q.    Okay. Does this agreement, the 1997
18 agreement, anywhere provide for the construction of
19 new facilities? I mean additional facilities in
20 addition to what's specified.
21    A.    I don't recall.
22    Q.    Take a look.
23          (Pause in the deposition.)
24    A.    You know, it maybe says, and I thought it

126

1  said somewhere in here that it was subject to all
2  ordinances and laws. I don't know if it says that or
3  not.
4              (Pause in the deposition.)
5         I don't know if there's an explicit term in
6  there. I can't find it as I sit here before you, but
7  I mean I'm pretty clear that the law with respect to
8  agreements would say that the agreement is subject to
9  all ordinances and laws then in effect.
10    Q.   Okay. But my question is, you know, does
11 the 1997 agreement say anything about the building of
12 additional facilities outside of the facilities
13 specified in the agreement?
14    A.   Well, when I say that, when I say that, no,
15 there's no specific provision for that, but the reason
16 I refer to ordinances and laws is because our
17 ordinances would then kick in for persons who were
18 under an agreement maybe that built additional
19 right-of-way or who didn't have a specific written
20 approval for the agreement would have to pay a
21 right-of-way fee. In other words, just because --
22 let's pretend that somebody came in and just built,
23 never got any permission from the City, and just
24 built. What would they be subject to? Well, there's

127

1  a provision in our ordinances that says they're
2  subject to I think triple the fee.
3      Q.   Right.
4      A.   Triple the fee that somebody under an
5  agreement would be subject to. So if somebody came in
6  and built more than that, I suppose the logical
7  extension of that is that they would be subject to
8  triple the fee. So, when you say are they subject to
9  under the agreement to that, I would say, well, since
10 they're subject to our ordinances and laws under the
11 agreement, or, just generally speaking, yeah, then
12 they're responsible to pay that, but there is no
13 specific provision for the addition of additional
14 footage, although it was certainly a common practice.
15     Q.   Okay. Do you understand that the City in
16 its pleadings and its papers claims that McLeod built
17 additional footage beyond what's authorized in the
18 1997 agreement?
19     A.   You know, I don't recall without looking at
20 the pleadings. I believe our claim is based on more
21 footage than is reflected in this agreement.
22     Q.   Right.
23     A.   Yes.
24     Q.   And I guess my question is how is that,