182

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

THE CITY OF CHAMPAIGN, an Illinois )
municipal corporation,             )
        Plaintiff,                )
                                  )
vs.                                ) NO 02-2252
                                  )
MCLEODUSA, INC., a Delaware        )
corporation, and MCLEODUSA         ) Hon. Harold Baker
TELECOMMUNICATION SERVICES,        )
INC., an Iowa corporation,         )
                                  )
        Defendants.               )

**ORIGINAL**

### RULE 30(b)(6) DEPOSITION

Continuation of the deposition of 30(b)(6) Deponent **FREDERICK STAVINS**, taken at the instance of the Defendants on the 27th day of April, 2004, commencing at 9:00 a.m. at Kelty Law Offices, P.C., 3201 Pleasant Run, Suite A, Springfield, Illinois, before Cheryl A. Davis, Certified Shorthand Reporter and Notary Public, pursuant to Notice of Rule 30(b)(6) Deposition and the stipulation attached hereto.

DAVIS REPORTING SERVICE
3 Hickory Hills Drive
Springfield, Illinois  62707
(217) 546-6868

Reported by:  Cheryl A. Davis, CSR #084-001662

1  entire definition was not read.  Go ahead.
2      Q.    Page 7, document number 1555.
3      A.    Yes.
4      Q.    Does Section 12 on page 7 likewise define
5  the company?
6      A.    Yes.  It's entitled Company Defined.
7      Q.    And how is it to be construed?
8      A.    It says whenever the word "Company" or the
9  words "Consolidated Communications Telecom Services"
10 are used in this agreement, it shall be construed to
11 mean the Consolidated Network, Inc., its lessees,
12 successors and assigns, and this agreement shall be
13 binding and inure to the benefit of the Company, its
14 lessees, successors and assigns.
15     Q.    How do you explain that inconsistency?
16     MR. WEISS:  Object to form; ambiguous.
17     Q.    Well, do you know, Fred, that in Section 12
18 it says that Consolidated Communications Telecom
19 Services, Inc. means Consolidated Network, Inc.?
20     A.    That's the first time I've noticed that I
21 have to say.
22     Q.    Do you have any knowledge that Consolidated
23 Network, Inc. --
24     MR. WEISS:  Object to form; ambiguous.

250

1  MR. KELTY: I haven't even finished the
2 question.
3  MR. WEISS: Sorry. I didn't understand that.
4  MR. KELTY:
5  Q.    -- was at the time one in the same as
6 Consolidated Communications Telecom Services, Inc.?
7  A.    Yeah, we dealt with -- I don't know. We
8 dealt with Ellyn Crutcher, and I didn't presume that.
9 I presumed that they were different companies I think.
10 Q.    Could this perhaps be a scrivener's error?
11 MR. WEISS: Objection to form; leading; assumes
12 facts not in evidence.
13 MR. KELTY: It's meant to be leading. It's
14 discovery.
15 A.    Until I saw that right now, I'm moderately
16 surprised that it said that. We were dealing with --
17 I don't know how that got in the agreement, frankly.
18 Q.    What is the date of Exhibit 6?
19 A.    The date? It's May the 21st, 1996.
20 Q.    I may have asked you this, so if I'm
21 repeating myself, tell me, but does Section 1 allow
22 for the use of the right-of-way for conduct of a
23 general telephone business?
24 A.    You asked me that, and, yes, it does.

```
                                                            318
```

1  Q. Okay. And then after that step, I believe it's your testimony that Ms. Crutcher and/or her assistant and your assistant made additions to the agreement to fill in the blanks. Is that right?

A. That I'm sure is true.

Q. Okay. So that's the second step. And then what I'll call the third step is the submission of the final agreement for signature by the city council. That happened at one point; right?

A. Yes.

Q. Okay, and I'm asking you between steps two and three, between step two where here was a final agreement with all the blanks filled and step three where it was signed by the city council, did you read the agreement?

A. Did I read it all the way through? I would guess not. I would guess I looked at the first page. As I sit here I don't recall, but I mean my guess would have been I would have look at the front page, made sure that that was it. I would have talked to Ellyn and asked her if she had made any other substantive changes. Perhaps we would have had maybe a discussion, but I had a pretty good working relationship with her, and there wouldn't have been

1  but sitting here today can you tell me that that
2  reflects an error, a mistake on somebody's part, that
3  is different than what you and Ms. Crutcher agreed
4  upon?
5      A.   Well, all I can say is what I've said
6  already.  I don't recall any specific discussion that
7  strikes me as odd since it was meant to be parallel
8  with the Ameritech agreement.
9      Q.   Okay.  So Section 12 strikes you as odd,
10 but you can't recall any understanding with
11 Ms. Crutcher that --
12     A.   I don't recall agreeing that that be
13 changed.  No.  I don't recall agreeing that that could
14 be changed.
15     Q.   Well, I'm not sure I understand what you
16 mean.  Section 12 had to be changed to reflect a
17 company name; right?
18     A.   As I said, I don't recall agreeing that
19 that could be changed.  I already indicated how we
20 went over the agreement in general terms.  I don't
21 recall agreeing that that should be changed to another
22 company.  You know, could it have happened?  Oh, I
23 suppose it could have, but I don't recall agreeing to
24 that change.