IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

| | |
|---|---|
| THE CITY OF CHAMPAIGN, an Illinois municipal corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 02-2252 |
| McLEODUSA, INC., a Delaware corporation, and McLEODUSA TELECOMMUNICATION SERVICES, INC., an Iowa corporation, | ) ) ) Hon. Harold Baker ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF McLEODUSA'S
MOTION *IN LIMINE* NUMBER 2 TO BAR TESTIMONY OF
STEPHEN D. WHITSITT, PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 16(c) and Local Rule 16.1(E)(5) and (8), defendants McLeodUSA, Inc. and McLeodUSA Telecommunication Services, Inc. (collectively, "McLeodUSA"), by their attorneys, submit this memorandum of law in support of their motion *in limine* for entry of an order barring plaintiff City of Champaign's expert, Stephen D. Whitsitt, from testifying at trial regarding his opinions about the value of land dedicated to the public right-of-way ("ROW") in Champaign. The City has disclosed Mr. Whitsitt as an expert pursuant to Fed. R. Civ. P. 26(a)(2), and McLeodUSA therefore requests that this Court bar Mr. Whitsitt from testifying about these matters pursuant to Fed. R. Evid. 702 and the standards established by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

As detailed further below, Mr. Whitsitt's report has almost nothing to do with the issues in this case, and no logical connection to Champaign's claims. As he admitted in

deposition, all Mr. Whitsitt did in his report was to list the median purchase price values of *all* real estate in Champaign.  Whitsitt did not examine any specific real estate—much less any specific Champaign ROW—and thus sheds absolutely no light on any matter at issue. McLeodUSA does not use all real estate in Champaign, or even some hypothetical average piece of real estate in Champaign, but rather uses specific nonexclusive easements under City streets. Whitsitt's report, however, deals with abstract purchase prices (not easements) over nonspecific portions of Champaign land.  Whitsitt's report is thus irrelevant to the issues at trial, and should be excluded.

## BACKGROUND

As this Court knows, and as set forth in greater detail in McLeodUSA's other filings, Champaign claims that during the years 1998 to 2002, it was entitled to charge McLeodUSA three ROW fees for McLeodUSA's use of the City's ROW. (Complaint at ¶¶ 34-67.)  McLeodUSA disputes the City's interpretation of the ROW licenses, but its primary defense is that the charges at issue are preempted by the federal Telecommunications Act of 1996 (the "1996 Act"), which strictly limits the ROW fees that cities may charge.  In the 1996 Act, Congress sought to open telecommunications markets to equal competition, and expressly preempted cities from stifling competition by assessing ROW charges that are not: (A) "competitively neutral and nondiscriminatory"; and (B) "fair and reasonable."  47 U.S.C. § 253(c).[1]  It is Champaign's burden to establish that its ROW fees are "fair and reasonable," *XO*

---

[1] *See, e.g., XO Missouri Inc. v. Md. Heights*, 256 F. Supp. 2d 987, 993 (E.D. Mo. 2003); *N.J. Payphone Ass'n v. Town of West New York*, 130 F. Supp. 2d 631, 637-38 (D.N.J. 2001), *aff'd* 299 F.3d 235 (3d Cir. 2002); *PECO Energy Co. v. Township of Haverford*, No. 99-4766, 1999 WL 1240941, at *6 (E.D. Pa. Dec. 20, 1999) (ROW fees "must be directly related to the company's use of the right-of-way); *AT&T Communications v. City of Dallas*, 8 F. Supp. 2d 582, 593 (N.D. Tex. 1998).

*Missouri Inc.*, 256 F. Supp. 2d at 995, and it has proffered Mr. Whitsitt as an expert to offer testimony to show that the City's charges to McLeodUSA satisfy this federal mandate.

Champaign apparently intends to use Mr. Whitsitt's testimony and opinion report to argue that the value of land in Champaign, in the broadest terms, is somehow relevant to the fees the City charges McLeodUSA for use of the ROW, and thereby help the City establish that those fees satisfy the 1996 Act. In his expert report, Mr. Whitsitt appraises the general value of real estate in Champaign, and from that value estimates that the value of land used for ROW access would be between $1 and $35 dollars, with a median value of $3 - $4, and a mean value of $5-$7. (6/25/04 Whitsitt Opinion at 1 (Ex. 1 attached hereto).) Even if Mr. Whitsitt's estimates are accurate, his opinions are irrelevant and therefore inadmissible.

As detailed herein, Mr. Whitsitt's testimony is inadmissible under Fed.R.Civ 702 and the standards established by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Because Mr. Whitsitt's opinions 1) are derived from parcels of land largely unused by McLeodUSA, 2) do not account for the fact that ROW usage is more like a rental or easement and not a purchase of the land, and 3) do not account for the fact that ROW usage is non-exclusive -- i.e., the same ROW is used by multiple utilities -- they are irrelevant and will not assist the trier of fact.

### ARGUMENT

**Mr. Whitsitt's Testimony Will Not Assist the Trier of Fact in Ascertaining Whether Fees Charged to McLeodUSA are "Fair and Reasonable."**

Federal Rule of Evidence 702 bars opinion testimony unless it is based on reliable methodology and would aid the trier of fact. *Daubert*, 509 U.S. at 591-94. In *Daubert*, the Supreme Court held that a district court has a duty to act as a "gatekeeper" to ensure that expert testimony is reliable and relevant before it is admitted. 509 U.S. at 589. Under *Daubert,* expert

testimony is not admissible unless, among other things, the testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Daubert*, 509 U.S. at 589-91. The *Daubert* standard applies to all purported experts, regardless of their field. *Kumho Tire Co. v. Carmichael*, 526 U.S. 139, 141 (1999). And, the proponent of expert testimony "bears the burden of proving that [the] proffered testimony meets these requirements." *Otis v. Doctor's Assocs., Inc.,* No. 94 C 4227, 1998 WL 673595, at *4 (N.D. Ill. Sept. 14, 1998).

The key question is whether the testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand, quoting *Daubert*, 509 U.S. at 597). "An opinion based on false assumptions is unhelpful in aiding the jury in its search for the truth, and is likely to mislead and confuse." *Terrell v. Childers*, No. 93 C 2460, 1996 WL 385310, at *10 (N.D. Ill. July 3, 1996) (citation omitted).

Mr. Whitsitt's opinions do not satisfy this standard. Mr. Whitsitt has been proffered by the City to opine about the value of land dedicated to the public ROW. Champaign will likely rely on his opinions to support the claim that the City's charges to McLeodUSA for ROW access were "fair and reasonable," as required by the 1996 Act. 47 U.S.C. § 253(c). In order to prove that its fees meet this standard, the City must show that its ROW charges relate to the <u>specific</u> costs imposed on the City because of McLeodUSA's presence in the ROW. *See XO Missouri Inc.*, 256 F. Supp. 2d at 993-95 (emphasis added). But Mr. Whitsitt's proposed testimony does not "fit" within this inquiry because his opinions are based on an appraisal of the value of *all* land in Champaign, do not account for the fact that ROW usage is not ownership of land but merely an easement, and do not account for the fact that ROW usage is not exclusive. For each of these reasons, Mr. Whitsitt's conclusions are based on land use values significantly

higher than McLeodUSA's non-exclusive easements on mere portions of parcels of land, and are therefore irrelevant because they are unrelated to McLeodUSA's use of the City's ROW.

First, Mr. Whitsitt's opinions are based on land values from parcels that are irrelevant to this case. Mr. Whitsitt acknowledges that his opinion is merely "the value in a *broad fashion* for *all* the parcels in Champaign." (7/20/04 Whitsitt Dep. at 20 (Ex. 2 attached hereto, emphasis added).) Included in Mr. Whitsitt's "broad" assessment are not just the roadway, where ROW is accessed, but also *all* adjoining parcels of lands attached to the public roadways. (*Id.* at 21-22.) Whitsitt was forced to rely upon this remarkably nonspecific methodology because, as he admitted, Whitsitt did not go out and actually look at any specific land. (*Id.* at 21.) Thus, even assuming McLeodUSA accessed an entire of parcel of land, which it does not, the land McLeodUSA accessed could be anywhere among the broad range of value for land in Champaign, from $1 to $35 dollars according to Mr. Whitsitt. (*Id.* at 24-25.) Whitsitt's "mean and median values" are likewise meaningless for this case, because they are calculated on the basis of *all* property in Champaign—not the very specific type of ROW property usage at issue here.

Second, Mr. Whitsitt's appraisals are based on the <u>purchase</u> price of parcels of land in Champaign. (*Id*. at 21-22.) But paying for ROW usage is not akin to purchasing all the bundle of rights of a parcel of land. Rather a ROW license is a limited easement or a rental of land. (*Id.* at 25.) Thus, because McLeodUSA's use of ROW is not comparable to the purchase of land, Mr. Whitsitt's valuations are irrelevant to determining the costs imposed on Champaign by McLeodUSA's ROW usage.

Third, Mr. Whitsitt's opinions do not account for the fact that ROW usage is non-exclusive. Mr. Whitsitt acknowledged that the value of a given parcel of land depends on the degree of encumbrance.

> Q:  And what about -- well, what about if a piece of property is used by multiple utilities, say that there have been easements granted or things like that that are part of the property? How does that affect where a piece of property falls in the range that you've described?
>
> ….
>
> A.  Well, an appraiser looks to the bundle of rights. And if that bundle of rights is encumbered, then theoretically the value would be reduced.

(*Id.* at 29.) But Mr. Whitsitt's opinions do not account for the impact of such encumbrances on the value of the ROW used by McLeodUSA because Mr. Whitsitt did not review where McLeodUSA accessed the ROW nor what other encumbrances, including other utilities, were on those specific parcels of land. (*Id.* at 21.)

For all these reasons, Mr. Whitsitt's appraisals of the value of land in Champaign will not help a jury understand the value of the ROW used by McLeodUSA, and thus cannot help the evaluation of whether the City's ROW fees are "fair and reasonable." Because Mr. Whitsitt's opinions are based on over-inclusive and irrelevant data, they do not "logically advance[] a material aspect" of Champaign's case. *Daubert*, 509 U.S. at 591; *see also Porter v. Whitehall Labs., Inc.,* 9 F.3d 607, 616 (7th Cir. 1993) (finding that one expert's testimony regarding kidney failure did not "fit" the actual situation because the expert could not rule out other causes and another expert's testimony also did not fit because he had to "speculate" to apply his theory to the actual situation); *KW Plastics v. United States Can Co.*, 131 F. Supp. 2d 1289, 1292-93 (M.D. Ala. 2001) (excluding expert's opinion on manufacturer's lost profits where expert based opinion on false assumptions unsupported by data).

Because Mr. Whitsitt's opinions are based on irrelevant land values, Champaign cannot meet its burden of establishing that Mr. Whitsitt's opinions will help the trier of fact ascertain whether the fees it charged McLeodUSA from 1998 to 2002 were "fair and reasonable," and they should therefore be barred under Rule 702.

## CONCLUSION

For the reasons described above, the City of Champaign cannot meet its burden of demonstrating the admissibility of Mr. Whitsitt's testimony under either Rule 702. This Court should therefore strike Mr. Whitsitt's opinion report and bar Mr. Whitsitt from offering any expert or lay opinion at the trial of this matter.

        Respectfully submitted,
        McLeodUSA Incorporated and
        McLeodUSA Telecommunication
           Services, Inc.

By: s/Edward F. Malone____
     One of their attorneys

Edward F. Malone
Daniel J. Weiss
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois  60611
(312) 222-9350
(312) 840-7517 (fax)

October 4, 2004