E-FILED
Tuesday, 12 October, 2004  10:09:55 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

| | | |
|---|---|---|
| THE CITY OF CHAMPAIGN, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | No. 02-2252 |
| | ) | |
| MCLEODUSA, INC., and MCLEODUSA | ) | Hon. Harold Baker |
| TELECOMMUNICATION SERVICES, | ) | |
| INC., | ) | |
| *Defendants*. | ) | |

### McLEODUSA'S RESPONSE TO CHAMPAIGN'S MOTION TO BAR DEFENDANTS' SECOND AFFIRMATIVE DEFENSE

Defendants McLeodUSA Incorporated and McLeodUSA Telecommunications Services, Inc. (collectively, "McLeodUSA"), respectfully respond as follows to the "Motion in Limine to Bar Defendants' Second Affirmative Defense," filed by Champaign on October 4, 2004 (Docket Entry No. 72).

### Response

In its motion, Champaign argues that Section 253 of the Telecommunications Act of 1996, 47 U.S.C. § 253, violates the United States Constitution, specifically the Tenth Amendment and the Commerce Clause. Champaign woefully misunderstands the law, failing to cite any case finding that Section 253 violates the Constitution, and ignoring Supreme Court and Seventh Circuit precedent that requires the rejection of its argument.

Section 253 of the 1996 Act preempts state or local laws that "prohibit or have the effect of prohibiting any entity from providing any interstate [long-distance] or intrastate [local] telecommunications service." 47 U.S.C. § 253(a). Section 253(c) further explains that this prohibition applies to any local rights-of-way ("ROW") fees that are not "fair and reasonable" or charged on "a competitively neutral and nondiscriminatory basis." *Id.* § 253(c).

The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited to it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X. The amendment is a "tautology, providing only that the States retain those powers not surrendered" to the federal government in the Constitution. *Gillespie v. Indianapolis*, 185 F.3d 693, 704 (7th Cir. 1999). The amendment is violated in only two circumstances: (1) when Congress acts outside of the "authority bestowed upon it by Article I of the Constitution," *id.*; and (2) when Congress "conscripts" state officials, requiring them to "enact or administer a federal regulatory program." *New York v. United States*, 505 U.S. 144, 161 (1992). Neither circumstance applies to Section 253.

Indeed, in reviewing challenges to federal regulation under the 1996 Act, the Supreme Court held: "the question in [cases under the 1996 Act] is not whether the Federal Government has taken the regulation of local telecommunications competition away from the States. With regard to the matters addressed by the 1996 Act, *it unquestionably has*." *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 377-78 n.6 (1999) (emphasis added). Though the Court did not specifically address the Tenth Amendment in that case, it was untroubled by the 1996 Act's sweeping preemptive effect—for good reason.

Under the first Tenth Amendment test, if a federal statute "reflects a valid exercise of the federal power to regulate interstate commerce[,] then it follows that Congress has not violated the Tenth Amendment by intruding upon an area of authority reserved to the states." *Gillespie*, 185 at 706; *see also New* York, 505 U.S. at 156. There can be no serious question that telecommunications (even local service) is an activity that impacts interstate commerce and that Congress may regulate pursuant to the Commerce Clause. As the Supreme Court explained in a pre-1996 Act case concerning local utility regulation, "the commerce power permits Congress to

preempt the States *entirely* in the regulation of private utilities." *FERC v. Mississippi*, 456 U.S. 742, 764 (1982) (emphasis added). Applying that conclusion to the 1996 Act, the Seventh Circuit held, "[i]t is clear that Congress, in exercising its Commerce Power, could determine that *all* regulation of the telecommunications industry should be entrusted to the federal government." *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 342 (7th Cir. 2000) (emphasis added). It is thus settled in this Circuit that the 1996 Act was a valid exercise of Commerce Clause authority.

The other circuit courts agree:

- "Congress, by enacting the 1996 Act pursuant to its commerce power, *validly preempted* the states' power to regulate local telecommunications competition." *AT&T Comms. v. Bellsouth Telecomms.*, 238 F.3d 636, 646 (5th Cir. 2001).

- "Congress could have preempted *all* state regulation of local phone service." *MCI Telecomms. Corp. v. Pub. Serv. Comm'n*, 216 F.3d 929, 938 (10th Cir. 2000) (emphasis added).

- "Congress *validly* terminated the states' role in regulating local telephone competition." *MCI Telecomms. Corp. v. Bell Atlantic-Penn.*, 271 F.3d 491, 510 (3d Cir. 2001) (emphasis added).

This uniform precedent makes clear that Congress' enactment of the 1996 Act and its preemptive effect under Section 253 was a valid exercise of its Article I power. Even Champaign appears to agree, stating that "telephones are instrumentalities of interstate commerce," subject to Congress' Commerce Clause power. (Mem. at 2-3.) As a valid exercise of federal power, the 1996 Act does not intrude on any matter "reserved to the States," and the Tenth Amendment is not offended. Champaign's unexplained argument that the 1996 Act violates the Commerce Clause fails for the same reason.

Nor does the 1996 Act flunk the Tenth Amendment's second test, the prohibition on federal "conscription" of state officials. *See New York*, 505 U.S. at 161; *Gillespie*, 185 F.3d

at 707. That rule applies where Congress requires state or local officials to implement a federal regulatory program, "forcing them to regulate on behalf of Congress." *MCI*, 222 F.3d at 343. For example, in *Printz v. United States*, 521 U.S. 898 (1997), the Supreme Court struck a federal gun control law that required local sheriffs to conduct background checks on behalf of the federal government. *Id.* at 915.

Here, in complete contrast, Section 253 of the Act does not require local authorities to do *anything*. The provision merely states that local authorities may not enforce local rules that conflict with the 1996 Act's legislative goal of telecommunications competition. 47 U.S.C. § 253. It is elementary that "the Supremacy Clause permits Congress to trump state policies on subjects that Article I empowers Congress to address." *Gillespe*, 185 F.3d at 708. Article I authorized Congress to address local telecommunications, *MCI*, 222 F.3d at 342, and the Supremacy Clause authorized Congress to make federal policy preemptive of conflicting state and local rules. There is no "conscription" in such a basic instance of federal preemption, and the Tenth Amendment is not violated.

Nothing in Champaign's memorandum alters this conclusion. Champaign repeatedly refers to its "police powers," but it is well-established that this concept has no place in Tenth Amendment analysis. "The [Supreme] Court long ago rejected the suggestion that Congress invades areas reserved to the States by the Tenth Amendment simply because it exercises its authority under the Commerce Clause in a manner that displaces the States' exercise of their police powers." *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981). Likewise unavailing is *Qwest Corp. v. Santa Fe*, 224 F. Supp. 2d 1305 (D.N.M. 2002), the only 1996 Act case cited in Champaign's motion. That Court held that Section 253 does *not* violate the Tenth Amendment, and merely speculated that the Tenth Amendment *might*

be violated if the 1996 Act required "rent-free use of municipal property." *Id.* at 1329. The Act, however, expressly permits "fair and reasonable" ROW charges, 47 U.S.C. § 253(c), and McLeodUSA does not seek "rent free" use of city ROW.

At bottom, the 1996 Act represents a valid exercise of Congress' power over interstate commerce, which, by virtue of federal supremacy, trumps state and local law. That result is perfectly consistent with the Tenth Amendment, the Commerce Clause, and the rest of the Constitution.

## Conclusion

For the reasons set out above, the Court should deny Champaign's motion.

Respectfully submitted,
McLeodUSA Incorporated and
McLeod Telecommunications Services, Inc.

By:   s/ Edward F. Malone
      One of their attorneys

      Edward F. Malone
      Daniel J. Weiss
      JENNER & BLOCK LLP
      One IBM Plaza
      Chicago, Illinois  60611
      (312) 222-9350
      (312) 840-7517 (fax)

October 12, 2004

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2004, I electronically filed the foregoing Response to Champaign's "Motion in Limine to Bar Defendants' Second Affirmative Defense" with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Thomas W. Kelty
>tkelty@keltylaw.com

>s/ Daniel J. Weiss

>Edward F. Malone
>Daniel J. Weiss
>Attorneys for Defendants
>Jenner & Block LLP
>One IBM Plaza
>Chicago, Illinois  60611
>(312) 222-9350
>(312) 840-7517 (fax)
>emalone@jenner.com
>dweiss@jenner.com