E-FILED
Tuesday, 12 October, 2004  12:12:28 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

| | |
|---|---|
| THE CITY OF CHAMPAIGN, an Illinois municipal corporation, on its own behalf and on behalf of the Class of all other units of local government similarly situated, ) ) ) ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | NO. 02-2252 |
| MCLEODUSA, INC., a Delaware corporation, and MCLEODUSA TELECOMMUNICATION SERVICES, INC., an Iowa corporation, ) ) ) ) ) | |
| Defendants. ) | |

**CHAMPAIGN'S RESPONSE TO MCLEODUSA'S MOTION
IN LIMINE NUMBER 3 TO BAR PAROL EVIDENCE**

NOW COMES Plaintiff, THE CITY OF CHAMPAIGN, an Illinois municipal corporation, by and through its attorneys, Kelty Law Offices, P.C., pursuant to Rule 26 of the Federal Rules of Civil Procedure and respectfully submits the following response as to why McLeodUSA's Motion should be denied.

McLeodUSA seeks to bar certain evidence which contradicts the terms of the 1996 Agreement between Champaign and McLeodUSA's predecessor, Consolidated Communications Telecom Services, Inc. (CCTS), and the 1997 Agreement between Champaign and McLeodUSA. McLeodUSA states that the City of Champaign "seeks to charge

duplicate fees" to McLeodUSA under three different contracts. McLeodUSA's statement is plainly untrue and unsupported. McLeodUSA also asserts that a substantial amount of the City's "monetary claims are barred by the plain terms of two of those three contracts". There is nothing in three contracts which makes it plain on the face that one or two bars or supersedes the terms of the third. In fact, the contracts are signed seriatim by McLeodUSA and its predecessors and are silent as to whether any one may supersede any other.

McLeodUSA argues that the 1996 Agreement "unambiguously superseded and replaced" the terms of the prior 1994 Agreement and the subsequent 1997 Agreement. When its terms do not say so.

McLeodUSA also argues that its 20,982 feet of conduit is covered by the 1996 Agreement and that all footages in excess of that amount are covered under the 1997 Agreement, all without any support whatsoever.

## Argument

### I. Three Agreements

If the three agreements involving three different companies (CNI, CCTS and McLeodUSA) plainly stated that 1997 superseded 1996 and 1996 superseded 1994, then there would be no argument between the parties and this matter would not be before this Court. It is precisely the ambiguity of the three contracts, when read together, that bring into question the interpretation of each of them.

Evidence of the true meaning and intent of the parties is permissible when contracts or their terms are ambiguous or subject to various interpretations.

Mr. Stavins testified in relevant part:

Q.  I just want to go back to the example situation we're talking about to understand how these two contracts work.  I think this is clear, and so I'll ask you a yes or no question.  Under the Ameritech contract reflected in Deposition Exhibit 3, Ameritech doesn't pay an increased fee; it doesn't pay a new access line fee until it establishes a new access line or phone number.  Right?

A.  That's correct.

Q.  Okay.  And so Ameritech can build we know under this agreement a lot of different types of facilities:  poles, anchors, wires, cables, conduits, all different types of facilities, but Ameritech's total charge won't go up when it builds those facilities until it establishes an access line; right?

A.  So long as those facilities are related to the business that they're restricted to in the agreement.  That's correct.

Q.  So long as the facilities are restricted to a general telephone business using the transmission of sounds and signals by means of electricity and light.

A.  That's correct.

Q.  Okay.  And a carrier that was under a per foot arrangement, I think it's pretty obvious and I agree with you that it's obvious, but a carrier under a per foot arrangement the same wouldn't be true.  They would actually pay per new foot of conduit they established.

A.  Well, I just -- I would answer the question the same way.  They're charged per foot, but they can put in all the same facilities, so long as they

> have approved engineering plans, as Ameritech. It's just they're not restricted, unless it's restricted under the agreement, to some type of facility.
>
> Q. Okay. But when they --
>
> A. And so, for instance, somebody can put in a new conduit under one agreement or the other agreement on an equal basis I suppose except one is charged on a per foot and the other is charged on an access line.
>
> Q. Right. And so in the second example then, when a carrier puts in new conduit, they are charged for that conduit on a per foot basis. There's no waiting for an access line, for example.
>
> A. Well, they could put in two conduits in the same footage and not be charged extra, but if they added footage, if they added lineal footage, then they could -- then they could incur an additional charge, right.
>
> Q. I think that this is a perfect example. Before when we were talking about the per foot agreement you told me it was a tautology. You told me it was obvious.
>
> A. A foot is a foot, right.
>
> Q. A foot is a foot. Now when I ask you about a single conduit under an agreement, you're telling me about two conduits.
>
> A. No, I'm sorry. I didn't understand if you were saying a single conduit. If I misunderstood the question, I apologize.
>
> Q. Okay. If you misunderstand a question, if you don't understand a question, that's fine; just let me know.

Mr. Weiss then continues with his examination of the differences between the rights and uses enjoyed by local carriers

(i.e., Ameritech and those by long distance (non-local access) carriers):

> Q. . . . So in the first example under the Ameritech agreement, Ameritech is permitted to build on various facilities - poles, anchors, wires, cables - for use in a general telephone business, and it does not incur an increased charge until it establishes a new access line or telephone number. Is that correct?
>
> A. That's correct.
>
> Q. Okay. In the second example, another carrier under a per foot agreement goes out and builds some conduit. They, unlike Ameritech, are charged on a per foot basis because of the construction of the conduit. Is that correct?
>
> A. They're charged on a per foot basis. That's correct.
>
> Q. So they incur an additional per foot charge for the new conduit.
>
> A. Well, presuming the conduit is in some other area. See, you're using -- if I can point this out about your question, in your Ameritech question you said they could put in conduit and a bunch of other facilities.
>
> Q. Uh-huh, uh-huh.
>
> A. And the only way they would be charged is if they established a new access line.
>
> Q. Right.
>
> Q. In the other agreement that you asked me a question about you said if they just put in conduit, and what I'm saying is if they have a leased foot segment and they can fit in five conduits, that's okay.
>
> Q. Okay.
>
> A. And that's the difference in how you asked the question, not how I responded to the question.

Clearly, the 1994 Agreement is relevant to Plaintiff's case as seen in the following dialogue:

> Q. Okay. In the first example Ameritech, subject to an access line agreement, can build a variety of facilities for the use in a general telephone business. It is not subject to any new additional charge until it activates a new access line or phone number. Is that correct?
>
> A. That's correct.
>
> Q. In the second example under a per foot agreement, a carrier who goes out and builds additional facilities that use additional conduit footage is subject to a new additional conduit footage charge without respect to access lines or phone numbers."
>
> *Stavins Dep. April 14, 2004.*

"Objective evidence must first be presented to the court and is given to the jury only after the court concludes that the evidence establishes a genuine ambiguity." <u>CSX Transportation, Inc. v. Chicago and North Western Transportation Company, Inc.</u>, 62 F.3d 185 (1995).

"Illinois has largely rejected the traditional rule, sometimes called the "four corners rule," which holds that if a contract is clear "on its face," no other evidence may be introduced to contradict its terms. <u>Federal Deposit Ins. Corp. v. W.R. Grace & Co.</u>, 877 F.2d 614, 620-621 (7th Cir. 1989), certiorari denied, 494 U.S. 1056, 108 L.Ed. 2d 764, 110 S. Ct. 1524. thus Illinois Courts may look to extrinsic evidence in hope of discovering the principals' genuine intent, and parties can no longer be certain that they will be stuck with the language of the agreements they

sign, no matter their actual intent." <u>R.T. Hepworth Company v. Dependable Insurance Company, Inc. v. Aegon USA, Inc.</u>, 997 F.2d 315 (1993).

"It is the same point that a clear document can be rendered unclear--even have its apparent meaning reversed--by the way in which it connects, or fails to connect, with the activities that it regulates. Discrepancy between the word and the world is a common source of interpretive problems everywhere." <u>AM International, Incorporated v. Graphic Management Associates, Incorporated</u>, 44 F.3d 572 (1995).

City Attorney Frederick C. Stavins negotiated the contracts for the City and has testified as to the fundamental difference between the so-called per lineal foot version and the access line version.

## II.  Scrivener's Error

Likewise, with regard to the 1996 Agreement where CCTSI is defined to mean "CNI", the handwritten notes (believed to be prepared by Ellyn Crutcher, an in-house attorney for McLeodUSA) offer evidence that it was the intent of both the City and McLeodUSA that the 1996 Agreement was with CCTSI alone and had no relationship to CNI. Given that the City had standard forms for such agreements, the trier of fact will likely conclude that the identification of "CNI" was a scrivener's error and nothing more. The parol evidence rule bars examination of evidence outside the

contract when the language of the contract is unambiguous.  <u>Grun v. Pneumo Abex Co.</u>, 163 F.3d 411, 420 (7th Cir. 1998); <u>Fred Kornick v. Orange-Co., Inc.</u>, No. 83C9145, 1985 WL 1728, *2 (N.D. Ill. 1985); <u>In re Marriage of Johnson</u>, 604 N.E.2d 378, 391 (4th Dist. 1992). In Illinois, though, the doctrine of mutual mistake of fact is an exception to the parol evidence rule.  <u>Grun.</u>, 163 F.3d at 420; <u>Fred Kornick v. Orange-Co., Inc.</u>, 1985 WL 1728 at *2; <u>In re Marriage of Johnson</u>, 604 N.E.2d at 391.

"Under Illinois law, a mutual mistake occurs when the parties are in actual agreement but the agreement in its written form does not express the parties' real intent."  <u>Grun.</u>, 163 F.3d at 420; <u>Miller's Blasting Service v. Texas AGA, Inc.</u>, No. 99C40246 2003 WL 21058344, *3 (N.D. Ill. 2003) (citing <u>In re Marriage of Johnson</u>, 604 N.E.2d at 391) (internal quotations omitted).  A party alleging mutual mistake has the clear and convincing burden to show (1) there was an agreement; (2) it was intended to be put in writing; and (3) it is different from the actual writing.  <u>Ind. Insurance Co. v. Pana Comm. Unit Sch. Dst. No. 8</u>, 173 F. Supp. 2d 835, 842 (C.D. Ill. 2001); <u>Fred Kornick v. Orange-Co., Inc.</u>, 1985 WL 1728 at *2.  A scrivener's error or clerical error is one example of a mutual mistake.  *See* <u>Miller's Blasting Service v. Texas AGA, Inc.</u>, 2003 WL 21058344, *4 (clerical error that had wrong insurance coverage date was a mutual mistake).

In Illinois, when a mistake is alleged, a defendant's negligence argument will fail because "simple negligence will not bar a reformation or rescission based on a mistake; instead the negligence must be so gross as to amount to the violation of a positive legal duty." Fred Kornick v. Orange-Co., Inc., 1985 WL 1728 at *2. (citation omitted, internal quotes omitted). It is assumed that mistakes result from some sort of negligence, and therefore, to hold negligence a bar would preclude relief in most cases. *Id*. (citation omitted.)

The draft (parol evidence) shows the intent of the parties when drafting. McLeodUSA's attorney put the correct name of the "Company" on the draft. Due to a clerical error, the changes were never made to "Company". The definition of "Company" in the contract is not what both parties intended. . . thus mutual mistake. Accordingly, the draft can be used.

Because Illinois law permits parol evidence where a contract is ambiguous, evidence explaining the contradiction between the 1996 and 1997 Agreements is admissible under Rules 402 and 403 because it will serve to clarify the contractual terms which are subject to various interpretations.

WHEREFORE, for the above and foregoing reasons *McLeodUSA's Motion in Limine Number 3 to Bar Parol Evidence* should be denied.

>Respectfully submitted,
>
>**THE CITY OF CHAMPAIGN, an Illinois municipal corporation, Plaintiff**
>
>s/ Thomas W. Kelty
>Thomas W. Kelty, No. 1441337
>Attorneys for Plaintiff
>**KELTY LAW OFFICES, P.C.**
>3201 Pleasant Run, Suite A
>P.O. Box 13317
>Springfield, IL 62791-3317
>Telephone: 217/726-8200
>Facsimile: 217/726-8300
>Email: tkelty@keltylaw.com

**STATE OF ILLINOIS**   )
                        )   SS.
**COUNTY OF SANGAMON**  )


### CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on this 12th day of October, 2004, pursuant to the provisions of Rule 5 of the Federal Rules of Civil Procedure, [proposed] CDIL-LR, and the penalties therein provided, that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

        Edward F Malone, Esq.
        emalone@jenner.com

        Daniel J Weiss, Esq.
        dweiss@jenner.com


and that the original was maintained in my files.


                        s/ <u>Thomas W. Kelty</u>
                        Thomas W. Kelty, No. 1441337
                        Attorneys for Plaintiff
                        **KELTY LAW OFFICES, P.C.**
                        3201 Pleasant Run, Suite A
                        P.O. Box 13317
                        Springfield, IL 62791-3317
                        Telephone: 217/726-8200
                        Facsimile: 217/726-8300