**E-FILED**
Friday, 15 October, 2004  04:32:26 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA/DANVILLE DIVISION**

| | |
|---|---|
| THE CITY OF CHAMPAIGN, <br> *Plaintiff*, | ) <br> ) <br> ) |
| *v.* | )    No. 02-2252 <br> ) |
| MCLEODUSA, INC., and MCLEODUSA <br> TELECOMMUNICATION SERVICES, <br> INC., <br>          *Defendants*. | )    Hon. Harold Baker <br> ) <br> ) <br> ) <br> ) |

## PRE-TRIAL ORDER

This matter having come before the Court at a pre-trial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.1, Thomas W. Kelty having appeared as counsel for the plaintiff and Edward F. Malone and Daniel J. Weiss having appeared as counsel for the defendants, the following action was taken:

## I. NATURE OF ACTION AND JURISDICTION

This is an action for claimed breach of three rights-of-way ("ROW") contracts and fees under those contracts. Plaintiff City of Champaign ("the City") claims that defendants McLeodUSA Incorporated and McLeodUSA Telecommunication Services, Inc. have failed to make payments for access to the City's ROW under three contracts entered into by defendants or their corporate predecessors. (Collectively, defendants are referred to herein as "McLeodUSA.") Champaign claims that those contracts set out fees that McLeodUSA must pay for its use of Champaign's ROW during the period 1996 through 2002.

Champaign claims that McLeodUSA's failure to make payments to the City for use of its ROW constitutes a contractual breach of the three ROW agreements. Champaign has brought

1

this action in order to collect the amounts that it claims are due and owing under the ROW agreements.

McLeodUSA disputes the City's interpretation of certain terms of the three ROW agreements, and also contends that the federal Telecommunications Act of 1996, 47 U.S.C. § 253, prohibits the City from collecting the fees under two of the agreements.

The Court has jurisdiction over this matter pursuant to diversity under 28 U.S.C. § 1332. The jurisdiction of the Court is not disputed.

## II. **JOINT STATEMENT**

A.        **JURISDICTION**

Diversity jurisdiction applies in this case pursuant to 28 U.S.C. § 1332. The parties are diverse. The City of Champaign is an Illinois municipal corporation. Defendant McLeodUSA Incorporated is a Delaware corporation and maintains its corporate headquarters in Cedar Rapids, Iowa. Defendant McLeodUSA Telecommunication Services, Inc. is an Iowa corporation with its principal place of business in Iowa, and McLeodUSA Incorporated is its parent company.

The amount in controversy exceeds the diversity requirement of $75,000 because the City claims damages of $685,016 in claimed unpaid ROW fees. [The City also claims prejudgment interest and penalties of an additional $1,156,460 under a municipal ordinance providing for 24% annual prejudgment interest, though that claim is subject to pretrial motions.]

Venue is appropriate in this judicial district under 28 U.S.C. § 1391(a) because this is the judicial district wherein a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred.

2

B.          **UNCONTESTED ISSUES OF FACT**

1.          Between January 1985 and August 1994, the City entered into ROW agreements with Illinois Bell Telephone Company, Ameritech Illinois, AT&T Communications of Illinois, U.S. Sprint Communications Company Limited Partnership, and Access Transmission Services, Inc.

2.          Prior to 1996, Ameritech Illinois was the sole provider of local telephone services in Champaign.

3.          In 1994, the City entered into a new ROW agreement with Ameritech Illinois (the "Ameritech Agreement").

4.          The terms of the Ameritech Agreement were modeled after a ROW agreement that Ameritech negotiated on a statewide basis with the Illinois Municipal League in 1991.

5.          The Ameritech Agreement permitted Ameritech to build and maintain telecommunications facilities, including conduits, in City ROW in exchange for a payment of 38 cents per "access line" maintained by Ameritech in the City.

6.          An "access line" is essentially a customer telephone number accessed through telephone wires in the City's ROW.

7.          A true and correct copy of the Ameritech Agreement is set out as Joint Exhibit No. 4. The terms of the Ameritech Agreement, as set out in Joint Exhibit No. 4, are not contested, though the parties may disagree about the legal effect and application of some or all of those terms.

8.          On or about July 20, 1994, the City entered into a ROW agreement with Consolidated Network, Inc., ("CNI"). (The "1994 Agreement.")

3

9.          The 1994 Agreement permitted CNI to maintain a specific segment of telecommunications conduit in Champaign's ROW in exchange for a payment from CNI to Champaign of $1.22 per conduit foot per year, with periodic increases for inflation.

10.          A true and correct copy of the 1994 Agreement is set out as Joint Exhibit No. 1. The terms of the 1994 Agreement, as set out in Joint Exhibit No. 1, are not contested, though the parties disagree about the legal effect and application of some or all of those terms.

11.          No payments have been made to the City under the 1994 Agreement since 1998. The City does not claim any amount due under the 1994 Agreement for any year prior to 1997.

12.          On February 8, 1996, Congress enacted the Telecommunications Act of 1996, Pub. L. 104-104.

13.          On May 1, 1996, CNI changed its name to Consolidated Communications Telecom Services, Inc. ("CCTS") after a merger with three other companies.

14.          On or about May 21, 1996, the City entered into a ROW agreement with CCTS (the "1996 Agreement").

15.          The 1996 Agreement permitted CCTS to build and maintain telecommunications facilities, including conduits, in City ROW in exchange for a payment of 38 cents per access line maintained by CCTS in the City.

16.          A true and correct copy of the 1996 Agreement is set out as Joint Exhibit No. 2. The terms of the 1996 Agreement, as set out in Joint Exhibit No. 2, are not contested, though the parties disagree about the legal effect and application of some or all of those terms.

17.          CCTS began providing local telephone service in Champaign in 1996.

4

18.        No payments have been made to the City under the 1996 Agreement since a 1998 payment of $5,088.96. The City does not claim any unpaid amounts due under the 1996 Agreement for any year prior to 1998.

19.        CCTS and its corporate successor MTSI (described below) maintained 7,037 access lines in Champaign during the period 1998 through 2002. In 1997, CCTS maintained 1,674 access lines in Champaign.

20.        In 1997, the City entered into a ROW agreement with defendant McLeodUSA Telecommunications Services, Inc., ("MTSI"). (The "1997 Agreement.") MTSI executed the 1997 Agreement on September 19, 1997. The City executed the 1997 Agreement on October 15, 1997.

21.        The 1997 Agreement permitted MTSI to maintain a specific segment of telecommunications conduit in Champaign's ROW measuring 20,982 feet in exchange for a payment from MTSI to Champaign of $1.321 per conduit foot per year, with periodic increases for inflation.

22.        A true and correct copy of the 1997 Agreement is set out as Joint Exhibit No. 3. The terms of the 1997 Agreement, as set out in Joint Exhibit No. 3, are not contested, though the parties disagree about the legal effect and application of some or all of those terms.

23.        MTSI constructed in 1997 a telecommunication conduit in City ROW measuring 20,982 feet, as permitted by the 1997 Agreement.

24.        No payments have been made to the City under the 1997 Agreement since an initial payment of $27,717.22 for the first year of the agreement.

25.        On September 24, 1997, McLeodUSA acquired CCTS by acquiring the parent corporation of CCTS, Consolidated Communications, Inc.

5

26.     On September 10, 1998, McLeodUSA merged CCTS into MTSI.

27.     Beginning in August or September 1998, McLeodUSA and its subsidiaries constructed conduit in City ROW measuring 46,523 feet.

28.     McLeodUSA has not made payments to the City under any of the 1994, 1996 or 1997 Agreements since 1998.

29.     The City contracted to allow CNI, CCTS, and MTSI to use the City's ROW.

30.     The City seeks to require McLeodUSA to pay ROW fees for the period 1996 through 2002 under three ROW contracts: the 1994, 1996, and 1997 Agreements.

31.     The City contends that McLeodUSA owes a total of $685,016.77 in ROW fees for the period 1996 through 2002 under all three ROW agreements. For each of the years 1999, 2000, and 2001, the City contends that McLeodUSA owes $141,175.26 in ROW fees per year, without accounting for any interest or penalties. For the year 2002, the City contends that McLeodUSA owes $154,541.25 for the year, without accounting for any interest or penalties.

32.     If the City charged McLeodUSA only under the 1996 Agreement for the years 1996 through 2002, McLeodUSA would pay $32,088.72 in ROW fees per year, or $139,051.12 for the entire period at issue, after crediting for payments McLeodUSA or its predecessors made and without accounting for any interest or penalties.

33.     During the period 1996 though 2002, the City did not charge any other carrier ROW fees under multiple contracts.

34.     Prior to 2004, the City had never conducted a study of the costs to the City caused by the use of City ROW by McLeodUSA or other telecommunications carriers.

6

35.        On January 1, 2003, Champaign ceased charging all telecommunications carriers under ROW contracts, including McLeodUSA and the contracts at issue in this case, in favor of a new telecommunications tax the City applies to telecommunications carriers.

36.        McLeodUSA is a Telecommunications Carrier as defined under the Federal Telecommunications Act.

37.        McLeodUSA needs to use the City's ROW in order to compete in Champaign.

C.          **CONTESTED ISSUES OF FACT**

1.        Plaintiff Champaign contends that the following are contested issues of fact:

(a)        Whether the rights under the three subject Agreements are "substantially" the same.

(b)        Whether the reference to CNI in Section 12 of the 1996 Agreement was a mistake.

(c)        Whether 1998 ROW construction was conducted under the name of "McLeodUSA."

(d)        Whether McLeodUSA is a "new" carrier under the Federal Telecommunications Act.

(2)        Defendant McLeodUSA respectfully submits that there are no material contested issues of fact, subject to the Court's ruling construing the ROW agreements as a matter of law and applying 47 U.S.C. § 253. To the extent the Court does not construe the agreements as a matter of law, McLeodUSA submits the following contested issues of fact:

7

(a)          Whether the parties intended that the 1996 Agreement would supersede the 1994 Agreement.

(b)          Whether the parties intended that the 1997 Agreement would be limited to the 20,982 feet of conduit expressly described in that contract.

(c)          To the extent the Court rules that Champaign's ROW fees are not governed by any contract and for the purposes of Champaign's quantum meruit claim, the reasonable value of the ROW access granted by Champaign to McLeodUSA is also a disputed issue of fact.

B.          **CONTESTED ISSUES OF LAW**

1.          The parties contest whether Champaign's claims to ROW fees under the 1994 and 1997 Agreements are preempted, in whole or in part, by the federal Telecommunications Act of 1996, 47 U.S.C. § 253. This issue includes the question whether Champaign's claimed ROW fees are (A) "competitively neutral and nondiscriminatory," and (B) "fair and reasonable," under the terms of that statute. 47 U.S.C. § 253(c).

2.          The parties contest the appropriate interpretation of the federal requirement of "fair and reasonable" fees, 47 U.S.C. § 253(c). In particular, McLeodUSA contends that the provision requires that the City charge ROW fees only to the extent justified by costs directly imposed on the City by a particular carrier, whereas the City contends that its costs should be more broadly understood to include compensation or rent beyond the amount directly related to costs imposed by a particular carrier.

8

3.          The parties contest whether the federal Telecommunications Act of 1996 violates the Commerce Clause of the United States Constitution or the Tenth Amendment to the same, as Champaign contends.

4.          The parties contest whether the City's claims to ROW fees under the 1994 Agreement are barred because that contract was superseded by the 1996 Agreement.

5.          The parties contest whether ROW fees under the 1997 Agreement are limited to the 20,982 feet of conduit expressly described in that contract, as McLeodUSA contends, or whether ROW fees under the 1997 Agreement extend to an additional 46,523 feet of conduit McLeodUSA and its subsidiaries constructed in 1998, as the City contends. McLeodUSA relatedly contends that ROW fees for the additional 46,523 feet of conduit are controlled by the 1996 Agreement, not the 1997 Agreement. Champaign disagrees.

6.          The parties contest whether any interest is due on any award to the City in this matter, and, if so, whether such interest must be paid at the 5% rate established in the Illinois Interest Act, 815 ILCS 205/2, or the 24% rate established in the City's Council Bill No. 90-261.

7.          The City contends that McLeodUSA is not a "new" carrier under the Federal Telecommunications Act of 1996; McLeodUSA disagrees.

C.          **JURY DEMAND**

Plaintiff states its Jury Demand in its Complaint.

## II. PLAINTIFF'S STATEMENT

A.          **ITEMIZED STATEMENT OF DAMAGES**

The City claims that it is owed ROW fees of $685,016.76 for the period through December 31, 2002, plus interest accrued through October 18, 2004 in the sum of $1,155,839.24. The City has calculated its claimed interest at the rate of 24% per annum, as provided by a City

9

of Champaign Ordinance. The result of adding the amounts with penalties and interest due under the CNI Agreement, the CCTS Agreement and the MTSI Agreement is a claimed total of $1,841,476.00 owed.

Attached hereto at Tab 1 are tables summarizing the City's claimed damages.

## III. **EXHIBITS ATTACHED**

The following are attached as exhibits to this order and are made a part hereof:

A.      Stipulation of Uncontested Facts and Issues of Law.

B.      Plaintiff's Witness List.

C.      Defendants' Witness List.

D.      Plaintiff's Exhibit List.

E.      Defendants' Exhibit List.

F.      Joint Exhibit List.

G.      Proposed Jury Instructions (Joint) (or Findings and Conclusions).

H.      Plaintiff's Proposed Instructions (only if objections by defendant).

I.      Defendant's Proposed Instructions (only if objections by plaintiff).

## IV. **GENERAL ADDITIONAL**

The following additional action was taken:

On June 7, 2004 McLeodUSA made an offer of judgment in this case pursuant to Fed. R. Civ. P. 68 in the amount of $250,000. On September 14, 2004, McLeodUSA made an offer of judgment in this case pursuant to Fed. R. Civ. P. 68 in the amount of $300,000. Champaign has rejected those offers.

IT IS UNDERSTOOD BY THE PARTIES THAT:

10

The plaintiff is limited to 3 expert witnesses, subject to the Court's ruling on defendants' motions in limine Nos. 1 and 2, whose names and qualifications have been disclosed to the defendants.

The defendants are limited to 1 expert witness, subject to the Court's ruling on plaintiff's motion in limine to exclude the witness, whose name and qualifications have been disclosed to the plaintiff.

Any Trial Briefs or Motions in Limine have been submitted no later than fourteen (14) days prior to the commencement of the trial.

A party may supplement a list of witnesses or exhibits only upon good cause shown in a motion filed and served upon the other parties prior to trial; except that, upon the development of testimony fairly shown to be unexpected, any party may, with leave of court, call such contrary witnesses or use such exhibits as may be necessary to counter the unexpected evidence, although not previously listed, and without prior notice of any other party.

It is mutually estimated that the length of trial will not exceed 3 full days. The case will be listed on the trial calendar to be tried when reached.

This pre-trial order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice. Such modification may be made either on motion of counsel for any party or on the Court's own motion.

Any additional proposed jury instructions shall be submitted to the Court within five days before the commencement of the trial, but there is reserved to counsel for the respective parties the right to submit supplemental proposals for instructions during the course of the trial or at the conclusion of the evidence on matters that could not reasonably have been anticipated.

11

IT IS SO ORDERED.

Oct. 15, 2004

Entered

s/ Harold A. Baker
        Judge

APPROVED AS TO FORM AND SUBSTANCE:

Attorney for the Plaintiff

Attorney for the Defendants

12

Contract Totals at October 18, 2004

| Contract | Principal Due | Principal, Interest and Late Fees Due |
|----------|--------------|---------------------------------------|
| CNI | $86,414.73 | $260,089.78 |
| CCTS | $139,051.12 | $360,663.63 |
| MTSI | $459,550.92 | $1,220,722.59 |
| Total | $685,016.77 | $1,841,476.00 |

## CNI Summary

| Year | Linear Feet | Payment Required | Payment Received | Outstanding Principal Balance | Balance at end of each year with Interest and Late Fees |
|------|-------------|------------------|------------------|-------------------------------|----------------------------------------------------------|
| 1997 | 14,398 | $17,594.36 | $14,211.86 | $3,382.50 | $4,176.67 |
| 1998 | 14,398 | $17,594.36 | $14,211.86 | $6,764.99 | $9,473.69 |
| 1999 | 14,398 | $19,912.43 | $0.00 | $26,677.43 | $36,543.00 |
| 2000 | 14,398 | $19,912.43 | $0.00 | $46,589.86 | $70,873.42 |
| 2001 | 14,398 | $19,912.43 | $0.00 | $66,502.29 | $114,412.70 |
| 2002 | 14,398 | $19,912.43 | $0.00 | $86,414.73 | $169,631.04 |
| 2003 | 14,398 | $0.00 | $0.00 | $86,414.73 | $215,133.17 |
| Balance as October 18, 2004 | | | | $86,414.73 | $260,089.78 |

## CCTS Summary

| Year | Access Lines | Payment Required (Yearly Total) | Payment Received (Yearly Total) | Outstanding Principal Balance | Outstanding Principal Balance |
|------|--------------|----------------------------------|----------------------------------|-------------------------------|-------------------------------|
| 1996 | 1,674 | $1,272.24 | $1,272.24 | $0.00 | $0.00 |
| 1997 | 1,674 | $7,633.44 | $7,633.44 | $0.00 | $0.00 |
| 1998 | 7,037 | $15,785.20 | $5,088.96 | $10,696.24 | $10,878.29 |
| 1999 | 7,037 | $32,088.72 | $0.00 | $42,784.96 | $49,336.02 |
| 2000 | 7,037 | $32,088.72 | $0.00 | $74,873.68 | $97,889.43 |
| 2001 | 7,037 | $32,088.72 | $0.00 | $106,962.40 | $159,188.74 |
| 2002 | 7,037 | $32,088.72 | $0.00 | $139,051.12 | $236,579.91 |
| 2003 | 7,037 | $0.00 | $0.00 | $139,051.12 | $298,656.23 |
| Balance at October 18, 2004 | | | | $139,051.12 | $360,663.63 |

**MTSI Summary**

| Year | Linear Feet | Payment Required | Payment Received | Outstanding Principal Balance | Balance at end of each year with Interest and Late Fees |
|------|------|------|------|------|------|
| 1997 | 21220 | $28,031.62 | $27,717.22 | $314.40 | $334.09 |
| 1998 | 67505 | $89,174.11 | $0.00 | $89,488.51 | $92,301.08 |
| 1999 | 67505 | $89,174.11 | $0.00 | $178,662.61 | $208,937.45 |
| 2000 | 67505 | $89,174.11 | $0.00 | $267,836.72 | $356,860.56 |
| 2001 | 67505 | $89,174.11 | $0.00 | $357,010.82 | $544,462.84 |
| 2002 | 67505 | $102,540.10 | $0.00 | $459,550.92 | $796,157.54 |
| 2003 | 67505 | $0.00 | $0.00 | $459,550.92 | $1,009,720.27 |
| Balance at October 18, 2004 | | | | $459,550.92 | $1,220,722.59 |

**Defendants' Recalculation of Amount Claimed by Champaign**

| CNI (1994) | | | | |
|---|---|---|---|---|
| Year | Footage | Rate | Payment | Amount Due |
| 1997 | 14398 | $1.222 | $14,211.86 | $3,382.50 |
| 1998 | 14398 | $1.222 | $14,211.86 | $3,382.50 |
| 1999 | 14398 | $1.383 | | $19,912.43 |
| 2000 | 14398 | $1.383 | | $19,912.43 |
| 2001 | 14398 | $1.383 | | $19,912.43 |
| 2002 | 14398 | $1.383 | | $19,912.43 |
| | | | | **$86,414.73** |

| CCTS (1996) | | | | |
|---|---|---|---|---|
| Year | Lines | Rate/Mo | Payment | Amount Due |
| 1998 | 6776 | $0.380 | $5,088.96 | $25,809.60 |
| 1999 | 9328 | $0.380 | | $42,535.68 |
| 2000 | 9742 | $0.380 | | $44,423.52 |
| 2001 | 9627 | $0.380 | | $43,899.12 |
| 2002 | 8863 | $0.380 | | $40,415.28 |
| | | | | **$197,083.20** |

| MTSI (1997) | | | | | | |
|---|---|---|---|---|---|---|
| Mo./Yr. | Footage | Rate | Payment | Full Year Charge | Portion of Year | Amount Due |
| Nov-97 | 21220 | $1.321 | $27,717.22 | $314.40 | 100.000% | $314.40 |
| Nov-98 | 67505 | $1.321 | | $89,174.11 | 100.000% | $89,174.11 |
| Nov-99 | 67505 | $1.321 | | $89,174.11 | 100.000% | $89,174.11 |
| Nov-00 | 67505 | $1.321 | | $89,174.11 | 100.000% | $89,174.11 |
| Nov-01 | 67505 | $1.321 | | $89,174.11 | 100.000% | $89,174.11 |
| Nov-02 | 67505 | $1.519 | | $102,540.10 | 16.670% | $17,093.43 |
| **ENDS 12/31/02** | | | | | | **$374,104.25** |

TOTAL CLAIMED:
$86,414.73
$197,083.20
$374,104.25
**$657,602.18**

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION**

| | |
|---|---|
| THE CITY OF CHAMPAIGN,<br>        *Plaintiff,* | )<br>)<br>) |
|      *v.* | )  No. 02-2252<br>) |
| MCLEODUSA, INC., and MCLEODUSA<br>TELECOMMUNICATION SERVICES,<br>INC.,<br>        *Defendants.* | )  Hon. Harold Baker<br>)<br>)<br>)<br>) |

## PRE-TRIAL STIPULATION

Plaintiff City of Champaign and Defendants McLeodUSA Incorporated and McLeodUSA Telecommunications Services, Inc., by their respective counsel, hereby stipulate to the following uncontested facts for purposes of trial in this matter:

1. Between January 1985 and August 1994, the City entered into ROW agreements with Illinois Bell Telephone Company, Ameritech Illinois, AT&T Communications of Illinois, U.S. Sprint Communications Company Limited Partnership, and Access Transmission Services, Inc.

2. Prior to 1996, Ameritech Illinois was the sole provider of local telephone services in Champaign.

3. In 1994, the City entered into a new ROW agreement with Ameritech Illinois (the "Ameritech Agreement").

4. The terms of the Ameritech Agreement were modeled after a ROW agreement that Ameritech negotiated on a statewide basis with the Illinois Municipal League in 1991.

5.          The Ameritech Agreement permitted Ameritech to build and maintain telecommunications facilities, including conduits, in City ROW in exchange for a payment of 38 cents per "access line" maintained by Ameritech in the City.

6.          An "access line" is essentially a customer telephone number accessed through telephone wires in the City's ROW.

7.          A true and correct copy of the Ameritech Agreement is set out as Joint Exhibit No. 4. The terms of the Ameritech Agreement, as set out in Joint Exhibit No. 4, are not contested, though the parties may disagree about the legal effect and application of some or all of those terms.

8.          On or about July 20, 1994, the City entered into a ROW agreement with Consolidated Network, Inc., ("CNI"). (The "1994 Agreement.")

9.          The 1994 Agreement permitted CNI to maintain a specific segment of telecommunications conduit in Champaign's ROW in exchange for a payment from CNI to Champaign of $1.22 per conduit foot per year, with periodic increases for inflation.

10.         A true and correct copy of the 1994 Agreement is set out as Joint Exhibit No. 1. The terms of the 1994 Agreement, as set out in Joint Exhibit No. 1, are not contested, though the parties disagree about the legal effect and application of some or all of those terms.

11.         No payments have been made to the City under the 1994 Agreement since 1998. The City does not claim any amount due under the 1994 Agreement for any year prior to 1997.

12.         On February 8, 1996, Congress enacted the Telecommunications Act of 1996, Pub. L. 104-104.

13.     On May 1, 1996, CNI changed its name to Consolidated Communications Telecom Services, Inc. ("CCTS") after a merger with three other companies.

14.     On or about May 21, 1996, the City entered into a ROW agreement with CCTS (the "1996 Agreement").

15.     The 1996 Agreement permitted CCTS to build and maintain telecommunications facilities, including conduits, in City ROW in exchange for a payment of 38 cents per access line maintained by CCTS in the City.

16.     A true and correct copy of the 1996 Agreement is set out as Joint Exhibit No. 2. The terms of the 1996 Agreement, as set out in Joint Exhibit No. 2, are not contested, though the parties disagree about the legal effect and application of some or all of those terms.

17.     CCTS began providing local telephone service in Champaign in 1996.

18.     No payments have been made to the City under the 1996 Agreement since a 1998 payment of $5,088.96. The City does not claim any unpaid amounts due under the 1996 Agreement for any year prior to 1998.

19.     CCTS and its corporate successor MTSI (described below) maintained 7,037 access lines in Champaign during the period 1998 through 2002. In 1997, CCTS maintained 1,674 access lines in Champaign.

20.     In 1997, the City entered into a ROW agreement with defendant McLeodUSA Telecommunications Services, Inc., ("MTSI"). (The "1997 Agreement.") MTSI executed the 1997 Agreement on September 19, 1997. The City executed the 1997 Agreement on October 15, 1997.

21.     The 1997 Agreement permitted MTSI to maintain a specific segment of telecommunications conduit in Champaign's ROW measuring 20,982 feet in exchange for a

payment from MTSI to Champaign of $1.321 per conduit foot per year, with periodic increases for inflation.

22.        A true and correct copy of the 1997 Agreement is set out as Joint Exhibit No. 3. The terms of the 1997 Agreement, as set out in Joint Exhibit No. 3, are not contested, though the parties disagree about the legal effect and application of some or all of those terms.

23.        MTSI constructed in 1997 a telecommunication conduit in City ROW measuring 20,982 feet, as permitted by the 1997 Agreement.

24.        No payments have been made to the City under the 1997 Agreement since an initial payment of $27,717.22 for the first year of the agreement.

25.        On September 24, 1997, McLeodUSA acquired CCTS by acquiring the parent corporation of CCTS, Consolidated Communications, Inc.

26.        On September 10, 1998, McLeodUSA merged CCTS into MTSI.

27.        Beginning in August or September 1998, McLeodUSA and its subsidiaries constructed conduit in City ROW measuring 46,523 feet.

28.        McLeodUSA has not made payments to the City under any of the 1994, 1996 or 1997 Agreements since 1998.

29.        The City contracted to allow CNI, CCTS, and MTSI to use the City's ROW.

30.        The City seeks to require McLeodUSA to pay ROW fees for the period 1996 through 2002 under three ROW contracts: the 1994, 1996, and 1997 Agreements.

31.        The City contends that McLeodUSA owes a total of $685,016.77 in ROW fees for the period 1996 through 2002 under all three ROW agreements. For each of the years 1999, 2000, and 2001, the City contends that McLeodUSA owes $141,175.26 in ROW fees per

year, without accounting for any interest or penalties. For the year 2002, the City contends that McLeodUSA owes $154,541.25 for the year, without accounting for any interest or penalties.

32.     If the City charged McLeodUSA only under the 1996 Agreement for the years 1996 through 2002, McLeodUSA would pay $32,088.72 in ROW fees per year, or $139,051.12 for the entire period at issue, after crediting for payments McLeodUSA or its predecessors made and without accounting for any interest or penalties.

33.     During the period 1996 though 2002, the City did not charge any other carrier ROW fees under multiple contracts.

34.     Prior to 2004, the City had never conducted a study of the costs to the City caused by the use of City ROW by McLeodUSA or other telecommunications carriers.

35.     On January 1, 2003, Champaign ceased charging all telecommunications carriers under ROW contracts, including McLeodUSA and the contracts at issue in this case, in favor of a new telecommunications tax the City applies to telecommunications carriers.

36.     McLeodUSA is a Telecommunications Carrier as defined under the Federal Telecommunications Act.

37.         McLeodUSA needs to use the City's ROW in order to compete in

Champaign.

SO STIPULATED:

McLeodUSA Incorporated; and                 The City of Champaign
McLeodUSA Telecommunications
Services, Inc.

By:_____        By:_____
*One of their attorneys*                     *One of its attorneys*

Edward F. Malone                            Thomas W. Kelty
Daniel J. Weiss                             3201 Pleasant Run, Suite A
JENNER & BLOCK LLP                          PO Box 13317
One IBM Plaza                               Springfield, Illinois 627910
Chicago, Illinois 60611                     (217) 726-8300
(312) 222-9350

Dated: October 15, 2004

## WITNESS LIST FOR PLAINTIFF

| Case Name: Champaign v. McLoedUSA | Case No: 02-2252 | Page 1 of 1 |
| --- | --- | --- |

| Witness Name | Address | Expert | Adverse |
| --- | --- | --- | --- |
| Frederick C. Stavins, Esq | Frederick C. Stavins, Esq.<br>City Attorney<br>City of Champaign<br>102 North Neil Street<br>Champaign, Illinois 61820<br>Phone (217) 403-8765 | No | |
| David L. Clark, P.E. | Civil Engineer II<br>City of Champaign<br>Public Works Department<br>Engineering Division<br>702 Edgebrook Drive<br>Champaign Illinois 61820<br>Phone (217) 403-4710 | Yes | |
| Stephen D. Whitsitt, MAI, SRA | Whitsitt & Associates, Inc.<br>211 West Springfield Avenue<br>Suite 204<br>Champaign, Illinois 61820<br>Phone (217) 356-7605 | Yes | |
| Abbas A. Butt, Ph.D., P.E. | ERES International, Inc.<br>Engineering & Research International, Inc.<br>1401 Regency Drive East<br>Savoy, Illinois 61874<br>Phone (217) 356-5945 | Yes | |
| Richard Schnuer | Finance Director<br>City of Champaign<br>102 North Neil Street<br>Champaign, Illinois, 61820<br>Phone (217) 351-4585 | No | |
| Victor Lazzaretti, | McLeodUSA Incorporated<br>c/o Jenner & Block, LLC<br>One IBM Plaza<br>Chicago, Illinois 60611<br>Phone (312) 222-9350. | No | |

**Attachment B to Pre-Trial Order**

## WITNESS LIST FOR DEFENDANTS

| **Case Name:** Champaign v. McLeodUSA | **Case No:** 02-2252 | Page 1 of 2 |
|---|---|---|

| **Witness Name** | **Address** | **Expert** | **Adverse** |
|---|---|---|---|
| Victor Lazzaretti | Vice President and Deputy General Counsel McLeodUSA, Inc. 731 North Jackson Street Suite 410 Milwaukee, WI 53202 Phone (414)831-5269 | No | |
| Michelle McLaughlin | Right of Way Coordinator I McLeodUSA, Inc. McLeodUSA Technology Park 6400 C Street S.W. Cedar Rapids, IA 52406 Phone (319)790-6910 | No | |
| Michael Smeltzer | Application Engineer McLeodUSA, Inc. 2302 Fox Drive Suite D Champaign, IL 61820 Phone (217)239-3044 | No | |
| Lynn Shishido-Topel | Chicago Partners 140 South Dearborn Suite 1500 Chicago, IL 60603 Phone (312)251-5200 | Yes | |
| Steven Carter | City Manager City of Champaign Champaign, IL | No | Yes |
| Frederick C. Stavins | City Attorney City of Champaign 102 North Neil Street Champaign, IL 61820 Phone (217)403-8765 | No | Yes |

**Attachment C to Pre-Trial Order**

| Case Name: Champaign v. McLeodUSA | Case No: 02-2252 | Page 2 of 2 |

| Witness Name | Address | Expert | Adverse |
| --- | --- | --- | --- |
| David L. Clark, P.E. | Civil Engineer II<br>City of Champaign<br>Public Works Department<br>Engineering Division<br>702 Edgebrook Dr.<br>Champaign, IL 61820<br>Phone (217)403-4710 | No | Yes |

Attachment C to Pre-Trial Order

# EXHIBIT LIST FOR PLAINTIFF

| Case Name: Champaign v. McLeodUSA | Case No: 02-2252 | |
|---|---|---|

| No:<br>[orig.<br>No.] | Description | Admit<br>Without<br>Objection | Authentication<br>Waived | Defendants'<br>Objection |
|---|---|---|---|---|
| 1.<br><br>[9] | *Nonexclusive Utility License* between The Board of Trustees of the University of Illinois and McLeodUSA Telecommunications Services, Inc., dated Oct. 15, 1998.  Plaintiff expects to offer this Exhibit. | No | ✓ | Fed. R. Civ. P. 37; 402; 403 |
| 2.<br><br>[12] | Written Report of Abbas A. Butt, Ph.D., P.E.  Plaintiff expects to offer this Exhibit. | ✓ | ✓ | -- |
| 3.<br><br>[13] | Complaint and relevant pleadings. Plaintiff may offer these Exhibits. | ✓ | ✓ | -- |
| 4.<br><br>[14] | McLeodUSA 1996 Annual Report, Exhibit B to *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment* filed herein Dec. 22, 2003.  Plaintiff may offer this Exhibit. | ✓ | ✓ | -- |
| 5.<br><br>[17] | Champaign Doc. No. 1010 through 1013, *An Ordinance Amending the Champaign Municipal Code by the Adoption of Section 1-25 and Section 1-26 (General Provisions – Late Payment Handling Fee; Interest on Unpaid Accounts; Bad Check Charge)*, adopted Oct. 2, 1990.  Plaintiff expects to offer this Exhibit. | No | No | Set forth in pretrial motion concerning interest |

| No:<br><br>[orig. No.] | Description | Admit Without Objection | Authentication Waived | Defendants' Objection |
|---|---|---|---|---|
| 6.<br><br>[18] | Champaign Doc. No. 1290 through 1308, PowerPoint presentation by McLeodUSA, entitled "City of Champaign, Common Ground", dated Mar. 8, 2002. Plaintiff expects to offer this Exhibit. | ✓ | ✓ | -- |
| 7.<br><br>[19] | Champaign Doc. No. 1329 through 1330, 1340, and 1994 through 1995, Certificates of Liability Insurance for McLeodUSA Incorporated, dated Oct. 20, 1999, Sept. 26, 1997 and Sept. 23, 2003, respectively. Plaintiff expects to offer this Exhibit. | No | No | 402; 403; 802; 901 |
| 8.<br><br>[20] | Champaign Doc. No. 1462 through 1466, Correspondence to Stavins, from Lazzaretti, dated Mar. 4, 2002, re: McLeodUSA Right-of-Way Issues. Plaintiff expects to offer this Exhibit. | ✓ | ✓ | -- |
| 9.<br><br>[23] | Champaign Doc. No. 1567 through 1568, Correspondence to Crutcher, from Crowley, dated July 10, 2000, re: Compliance with the City of Champaign License Agreement. Plaintiff expects to offer this Exhibit. | ✓ | ✓ | -- |
| 10.<br><br>[24] | Champaign Doc. No. 1677 through 1689, Documents produced from Champaign's Finance Department. Plaintiff expects to offer this Exhibit. | No | No | 802; 901 |

| No:<br><br>[orig. No.] | Description | Admit Without Objection | Authentication Waived | Defendants' Objection |
|---|---|---|---|---|
| 11.<br><br>[25] | Champaign Doc. No. 1690 through 1714, Correspondence to Vrem, from Schnuer, dated July 9, 2002, transmitting spreadsheets showing McLeod present value and payments made to AT&T, Ameritech, Consolidated Network, Inc., Consolidated Communications Telecom Services, McLeodUSA, and Sprint. Plaintiff expects to offer this Exhibit. | No | No | 403; 802; 901 |
| 12.<br><br>[26] | 1741 through 1771, documents from the Illinois Commerce Commission regarding Docket No. 93-0345, McLeod Telemanagement, Inc.'s Application for a Certificate of Service Authority to Provide Direct Non-switched Exchange and Interexchange Services and Resold Local Exchange and Interexchange Services Within All Illinois Bell Telephone Company Exchanges in Illinois Except the City of Chicago. Plaintiff may offer this Exhibit. | No | ✔ | 402; 403 |
| 13.<br><br>[27] | Champaign Doc. No. 2168 through 2183, IML/Illinois Bell Model ROW Agreement documents.  Plaintiff expects to offer this Exhibit. | No | No | 402; 403; 902; 901 |
| 14.<br><br>[28] | Champaign Doc. No. 2319 through 2328, Hand written note to "Sandy", author unknown, dated 5/28, transmitting a faxed draft *Agreement for Use of the Public Way*, between CCTS and the City, fax heading is dated May 16, 1996 from Consolidated Comm. Plaintiff expects to offer this Exhibit. | No | No | Fed. R. Civ. P. 37; 802; 901 |

| No:<br><br>[orig. No.] | Description | Admit Without Objection | Authentication Waived | Defendants' Objection |
|---|---|---|---|---|
| 15.<br><br>[29] | Customer Billing Summaries and other documents produced by McLeodUSA Oct. 8, 2003, by letter from Edward F. Malone, Esq. addressed to Thomas W. Kelty, Esq.  Plaintiff may offer this Exhibit. | ✔ | ✔ | -- |
| 16.<br><br>[30] | All Articles of Incorporation, Articles of Merger and attachments thereto produced by McLeodUSA in response to the City's Requests for Production of Documents, identified as MC1-38. Plaintiff expects to offer this Exhibit. | ✔ | ✔ | -- |
| 17.<br><br>[31] | All documents produced by McLeodUSA in response to the City's First, Second, and Third Requests, and First Supplemental Request, for Production of Documents, [that McLeodUSA identified as being produced in support of their Affirmative Defenses], identified as MC1-MC1157.  Plaintiff may offer this Exhibit. | No | No | Privilege; 403; 408; 802; 901 |
| 18.<br><br>[32] | Article from the State Journal-Register, Jan. 21, 2004, entitled *Dialing Long-Distance Consolidated Buys Texas Company for $527 million*, used as Exhibit 21 in the Deposition of Victor Lazzaretti taken Apr. 13, 2004.  Plaintiff may offer this Exhibit. | No | No | 402; 403; 802 |
| 19.<br><br>[33] | Article from the State Journal-Register, Jan. 3, 2003, entitled *New owners, old name for Consolidated*.  Plaintiff may offer this Exhibit. | No | No | Fed. R. Civ. P. 37; 402; 403; 802 |
| 20.<br><br>[34] | Profile for McLeodUSA, Inc. (NasdaqNM:MCLD) by Yahoo Finance, dated Apr. 14, 2002.  Plaintiff may offer this Exhibit | No | No | Fed. R. Civ. P. 37; 402; 403; 802 |

| No: [orig. No.] | Description | Admit Without Objection | Authentication Waived | Defendants' Objection |
|---|---|---|---|---|
| 21. [35] | Order of the Illinois Commerce Commission on the Application for Approval of a Reorganization pursuant to Section 7-204 of the Public Utilities Act and for approval of the sale of certain assets pursuant to Section 7-102 of the Public Utilities Act, dated Dec. 17, 2002, 202 Ill. PUC LEXIS 1167 (2002). Plaintiff may offer this Exhibit. | No | ✔ | 402; 403 |
| 22. [36] | Acquisition Agreement by and among McLeodUSA Telecommunications Services, Inc., McLeodUSA Holdings, Inc., McLeodUSA Integrated Business Systems, Inc., McLeodUSA Market Response, Inc. and Homebase Acquisition Corp., dated July 16, 2002, Exhibit 2.18 to 202 Ill. PUC LEXIS 1167 (2002). Plaintiff may offer this Exhibit. | No | ✔ | 402; 403 |
| 23. [37] | Exhibits to the Acquisition Agreement, Exhibit 2.19 to 202 Ill. PUC LEXIS 1167 (2002). Plaintiff may offer this Exhibit. | No | ✔ | 402; 403 |
| 24. [38] | Results of searches with the Illinois Secretary of State, using LexisNexis, into McLeodUSA Incorporated and its various subsidiaries. Plaintiff may offer this Exhibit. | No | No | Fed. R. Civ. P. 37; 402 |
| 25. | Demonstrative Exhibit pertaining damages suffered by the City of Champaign, including computation of amounts due the City from McLeodUSA under the ROW Agreements for all relevant periods. Plaintiff expects to offer this Exhibit. | No objection provided demonstrative reflects admissible evidence | N/A | No objection provided demonstrative reflects admissible evidence |

| No:<br>[orig. No.] | Description | Admit Without Objection | Authentication Waived | Defendants' Objection |
|---|---|---|---|---|
| 26. | Demonstrative Exhibit pertaining to use of ROW by McLeodUSA, Inc. and its various subsidiaries | same as above | N/A | same as above |
| 27. | Demonstrative Exhibit pertaining to the 1994 Agreement, the 1996 Agreement and the 1997 Agreement | same as above | N/A | same as above |
| 28. | Demonstrative Exhibit pertaining to damages suffered by the City of Champaign | same as above | N/A | same as above |
| 29. | Demonstrative Exhibit illustrating the corporate mergers, and changes to the corporate structure, of McLeodUSA, Inc. and its various subsidiaries. | No objection provided demonstrative is limited to transactions or subsidiaries directly related to this case, per defendants' motion *in limine* No. 5. | N/A | No objection provided demonstrative is limited to transactions or subsidiaries directly related to this case, per defendants' motion *in limine* No. 5. |

## EXHIBIT LIST FOR DEFENDANTS

| Case Name: Champaign v. McLeodUSA | | Case No: 02-2252 | | |
|---|---|---|---|---|
| **No.**<br><br>[Orig.<br>No.] | **Description** | **Admit<br>Without<br>Objection** | **Authentication<br>Waived** | **Plaintiff's<br>Objection** |
| 1.<br><br>[8] | 30(b)(6) Deposition Notice Served on Plaintiff City of Champaign. (Served via facsimile and U.S. Mail on 3/3/04) | ✓ | ✓ | none |
| 2.<br><br>[21] | August 9, 2002 Report to Champaign City Council from Steven C. Carter re Adoption of Simplified Municipal Telecommunications Tax SS 2002-047. | No | ✓ | 402; 403 |
| 3.<br><br>[23] | Documents referencing payments by McLeodUSA or predecessors of McLeodUSA to City of Champaign. (Champaign Doc. No. 1348-1350, 1409, 1569-1581) | ✓ | ✓ | none |
| 4.<br><br>[20] | August 4, 2004 Report of McLeodUSA's expert, Lynn Shishido-Topel and all documents relied upon therein. | No | ✓ | Rule 702 |
| 5.<br><br>[4] | Champaign City Counsel Memoranda describing 1996 Agreement. (Champaign Doc. No. 2167) | ✓ | ✓ | none |
| 6.<br><br>[19] | City of Champaign's written responses to McLeodUSA's discovery requests, including Document Requests, Interrogatories, and Requests for Admission. (Does not include document production.) | ✓ | ✓ | none |
| 7.<br><br>[25] | Demonstrative exhibits depicting City of Champaign's claimed charges against McLeodUSA. | No objection provided demonstrative reflects admissible evidence | N/A | No objection provided demonstrative reflects admissible evidence |
| 8.<br><br>[26] | Demonstrative exhibits comparing City of Champaign's claimed charges against McLeodUSA to its charges against other carriers. | same as above | N/A | same as above |

**Attachment E to Pre-Trial Order**
**Page 1 of 3**

| Case Name: Champaign v. McLeodUSA | | Case No: 02-2252 | | |
|---|---|---|---|---|
| No.<br><br>[Orig. No.] | Description | Admit Without Objection | Authentication Waived | Plaintiff's Objection |
| 9.<br><br>[27] | Demonstrative exhibits showing chronology of events. | same as above | N/A | same as above |
| 10.<br><br>[28] | Demonstrative exhibits showing terms of 1994, 1996, and 1997 agreements. | same as above | N/A | same as above |
| 11.<br><br>[29] | Demonstrative exhibits showing relationships between CNI, CCTS, and McLeodUSA. | same as above | N/A | same as above |
| 12<br><br>[24] | All pleadings, motions, and memoranda filed by parties in this case. | ✓ | ✓ | none |
| McLeodUSA has objected to the introduction to the following exhibits, and will seek to introduce the exhibits or use them at trial only to the extent the documents are not excluded from trial pursuant to McLeodUSA's pending motions *in limine*, other pretrial motions, and the Court's ruling on objections at trial: | | | | |
| 13<br><br>[9] | Map with Attachment from Ameritech.<br>(Champaign Doc. No. 327-328) | ✓ | ✓ | none |
| 14<br><br>[10] | Curriculum Vitae of David Clark.<br>(Clark 7/20/04 Deposition Ex. 1) | ✓ | ✓ | none |
| 15<br><br>[11] | David Clark Expert Opinion Report and all documents relied upon therein.<br>(Clark 7/20/04 Deposition Ex. 2) | ✓ | ✓ | none |
| 16<br><br>[12] | City of Champaign Ordinance.<br>(Champaign Doc. No. 1005-1006) | ✓ | ✓ | none |
| 17<br><br>[13] | September 11, 1998 email from Stavins to Jeff Smith.<br>(Champaign Doc. No. 1540-1541) | ✓ | ✓ | none |
| 18<br><br>[15] | City of Champaign Council Bill 85-5.<br>(Plaintiff's Response to Ms. Bracey's Letter Request Dated 01/24/03: 1-7) | ✓ | ✓ | none |

| Case Name: Champaign v. McLeodUSA | | Case No: 02-2252 | | |
|---|---|---|---|---|
| No. [Orig. No.] | Description | Admit Without Objection | Authentication Waived | Plaintiff's Objection |
| 29 [16] | City of Champaign Council Bill 87-48. (Plaintiff's Response to Ms. Bracey's Letter Request Dated 01/24/03: 27-43) | ✓ | ✓ | none |
| 20 [17] | Curriculum Vitae of Stephen Whitsitt. (Whitsitt 7/20/04 Deposition Ex. 1) | ✓ | ✓ | none |
| 21 [18] | Stephen Whitsitt Expert Opinion Report and all documents relied upon therein. (Whitsitt 7/20/04 Deposition Ex. 2) | ✓ | ✓ | none |

## JOINT EXHIBIT LIST

| Case Name: Champaign v. McLeodUSA | Case No: 02-2252 | |
|---|---|---|

| No. | Description | Admit Without Objection | Authentication Waived | Objection |
|---|---|---|---|---|
| 1. | CNI Agreement (1994). (Champaign Doc. No. 1380-1388) [Pltf. 1, Def. 1.] | ✓ | ✓ | none |
| 2. | CCTS Agreement (1996). (Champaign Doc. No. 1549-1558) [Pltf. 2, Def. 2.] | ✓ | ✓ | none |
| 3. | McLeod Agreement (1997). (Champaign Doc. No. 1351-1360) [Pltf. 3, Def. 3.] | ✓ | ✓ | none |
| 4. | Ameritech/Champaign Agreement. (Plaintiff's Response to Ms. Bracey's Letter Request Dated 01/24/03: 8-26) [Pltf. 5, Def. 5.] | ✓ | ✓ | none |
| 5. | Access Transmission Services License Agreement. (Plaintiff's Response to Ms. Bracey's Letter Request Dated 01/24/03: 58-63) [Pltf. 8, Def. 6.] | ✓ | ✓ | none |
| 6. | U.S. Sprint Communication Company License Agreement. (Plaintiff's Response to Ms. Bracey's Letter Request Dated 01/24/03: 44-57) [Pltf. 7, Def. 7.] | ✓ | ✓ | none |
| 7. | February 16, 1999 letter from Schiff, Hardin & Waite. (Champaign Doc. No. 1483-1485) [Pltf. 22; Def. 13] | ✓ | ✓ | none |
| 8. | Corporate Merger Documents attached to Plaintiff's Motion for Summary Judgment. (Attached as Exs. 3 and 6 to S.J. Motion.) [Pltf. 30; Def. 22] | ✓ | ✓ | none |

Attachment F to Pre-Trial Order
Page 1 of 1