E-FILED
Friday, 15 October, 2004  04:33:15 PM
Clerk, U.S. District Court, ILCD

**Form Instruction 71-3 Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in the objections, or in their questions is not evidence. Nor is what I may have said--or what I may say in these instructions--about a fact issue evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the (plaintiff/defendant) has proven his case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case. As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

**Comment**

It is appropriate to repeatedly emphasize to the jury that they are the sole and exclusive judges of fact. Some courts have added the following language when charging the jury on their function as triers of fact:

> You, ladies and gentlemen, are the sole judges of what the facts are. To determine these, you should take into consideration the story told by the witness, the manner in which he told it, the probability of the story being true, and the interest of the witness, if any, in the result of the action. It is for you to say how far, if at all, a witness is to be believed.

The evidence presented conflicts. But it is the function of the jury, under proper instructions of the court, to judge the credibility of witnesses, to appraise their testimony, to weigh contradictory testimony and conflicting circumstances, and to draw the ultimate conclusions as to the facts.

The Fifth Circuit has expressly stated that it is the role of the jury to determine credibility and to weigh conflicting evidence and inferences.

It is equally appropriate to admonish the jury not to regard arguments of counsel as evidence, since it is their recollection, alone, which governs. For this reason, and to avoid any claim of judicial misconduct, it is also appropriate to be informed that what the court says is not evidence.

As the Fifth Circuit has observed, "a federal district judge has the right, and sometimes indeed the duty, to comment on the evidence, to direct the jurors' attention to pertinent points and to provide assistance in determining where the question and knot of the business lies." However, as the Fifth Circuit went on to note, a judge may not abuse his discretion and usurp the jury's function to make independent determinations of the facts. In *Bass v. International Brotherhood of Boilermakers,* the Fifth Circuit concluded that even though some of the judge's comments on the evidence may have been suggestive, any prejudicial effect was cured by instructing the jury that the decision was for the jury and that the jury should not give account to his evidentiary comments.

Similarly, a trial court's comment that a specific expert witness may have been in the best position of any witness was not found prejudicial where the judge properly instructed the jury that it was the jury's duty to determine the facts and that they were not bound by the testimony of any expert witness.

Instruction 71-3 also contains an appropriate reminder to the jury to reach its decision without bias or prejudice. In the event a more elaborate instruction on this issue is appropriate, see Instruction 71-9, *infra.*

**Form Instruction 71-1 Juror Attentiveness**

Ladies and gentlemen, before you begin your deliberations, I now am going to instruct you on the law. You must pay close attention and I will be as clear as possible.

It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified. Your interest never flagged, and you have followed the testimony with close attention.

I ask you to give me that same careful attention as I instruct you on the law.

**Comment**

Instruction 71-1 is recommended as a way for the court to be direct in its request for juror attentiveness, while also serving to put the jury at ease by complimenting them on the work they have already done. In this way, the jury will feel reassured that it can successfully perform the difficult work ahead.

In addition, the observation that the jury has been attentive serves the function of preserving the record in the face of a claim by counsel that a juror was distracted, asleep during the trial, or incompetent to follow the evidence. The foregoing instruction will signal to the appellate court that the trial judge believes the jury has been faithful to its obligations and has paid close attention to the case. In order to preserve any claim of juror misconduct on appeal, counsel must make the appropriate motion for mistrial at the time of occurrence, or the claim may be deemed invalid.

**Form Instruction 71-2 Role of the Court**

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be, or ought to be, it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

**Authority**

**United States Supreme Court:** *The Patapsco Insurance Co. v. Southgate, 30 U.S. 604, 621, 8 L. Ed. 243 (1831).*

**Second Circuit:** *Franks v. United States Lines Co., 324 F.2d 126 (2d Cir. 1963).*

**Third Circuit:** *United States v. 564.54 Acres of Land, More or Less, 576 F.2d 983 (3d Cir. 1978), rev'd on other grounds, 441 U.S. 506 (1979).*

**Fifth Circuit:** *Shelak v. White Motor Co., 636 F.2d 1069 (5th Cir. 1981); Shelak v. White Motor Co., 581 F.2d 1155 (5th Cir. 1978); Martin v. Travelers Indemnity Co., 450 F.2d 542 (5th Cir. 1971); Troutman v. Southern Railway Co., 441 F.2d 586* (5th Cir.), *cert. denied, 404 U.S. 871 (1971).*

**Sixth Circuit:** *Nolan v. Greene, 383 F.2d 814 (6th Cir. 1967); Tyree v. New York City Central R.R., 382 F.2d 524* (6th Cir.), *cert. denied, 389 U.S. 1014 (1967).*

**Comment**

The court should include a charge that counsels' statements of law are not controlling, especially since such a charge can cure an attorney's improper characterization of the law. In *United States v. 564.54 Acres of Land, More or Less,* the court held that where counsel for the government prejudicially misstated the law, the trial judge did *not* cure the resulting prejudice by simply telling the jury "to follow the law as stated in the instructions of the Court." Instead, the Third Circuit held that the judge should have specifically told the jury that statements of counsel are not law and to disregard statements of law by counsel. As the Third Circuit also pointed out, the better practice is for the trial court to single out the offending remarks as being erroneous.

While inclusion of the general admonition that counsels' statements are not the law in order to preserve the record is recommended, careful consideration should be given to whether counsel should request a charge that singles out an offending statement. The danger of such a charge is that it may unnecessarily remind the jury of the offending argument. On the other hand, the advantage of such a charge may be the curative effect to be gained, as well as the strategic advantage of having the appearance that the court is undercutting adversary counsel's argument. When the judge has erroneously stated the law in an instruction, the jury should be made aware of the error. It may not be enough merely to state the law correctly at another time. The better practice is to explain the misstatement to the jury.

Record preservation is also a primary reason for instructing the jury to consider the charge as a whole. In *Tyree v. New York City Central Railroad Co.*, the court quoted with approval the general rule:

> [I]f, when taken together, they properly express the law as applicable to the particular case, there is no just ground of complaint, even though an isolated and detached clause is in itself inaccurate, ambiguous, incomplete or otherwise subject to criticism.

The charge to "consider my instructions as [a] whole" accurately communicates the sense that each instruction should be taken in light of the other parts. The recommended formulation is preferred to language which merely informs the jury to "follow all of them and not single out some and ignore others," since it is important for the jury to understand that each charge modifies the other, and not merely that no charge should be ignored. Failure to give this instruction may result in closer scrutiny by appellate courts of erroneous instructions.

**Form Instruction 71-4 Juror Oath**

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

**Comment**

The Ninth Circuit Civil Jury Instruction 1.1 recommends that the jurors be reminded of their oath to try the case solely on the facts and the evidence. The same approach is adopted here as a device to ensure that the jury will reach its verdict based on reasoned deliberations of the evidence, and not bias, sympathy or speculation.

H:\FORMS\JURY-INSTRUCTIONS\FEDERAL\71.04\10-6-2004

**Form Instruction 71-5 Jury To Disregard Court's View**

I have not expressed nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it. You are, I repeat, the exclusive, sole judges of all of the questions of fact submitted to you and of the credibility of the witnesses. Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you. In making your determination of the facts in this case, your judgment must be applied only to that which is properly in evidence. Arguments of counsel are not in evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your hearing. You have no concern with the reasons for any such rulings and you are not to draw any inferences from them. Whether offered evidence is admissible is purely a question of law in the province of the court and outside the province of the jury. In admitting evidence to which objection has been made, the court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence. Of course, you will dismiss from your mind completely, entirely any evidence which has been ruled out of the case by the court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between court and counsel held out of your hearing or sight.

H:\FORMS\JURY-INSTRUCTIONS\FEDERAL\71.05\10-6-2004

**Comment**

This separate instruction admonishing the jury not to be concerned with the court's view is recommended only in those cases when the general charge contained in Instruction 71-3 is not sufficient. Instruction 71-5 should be used when there is a claim by counsel of bias; counsel should also consider requesting such a charge when the record would permit an argument that the trial court invaded the jury's province. In the event that the court has reprimanded counsel, or counsel is concerned about his own misconduct, Instruction 71-6 should be considered.

In *Johnson v. Celotex Corp.,* the Second Circuit held the following instruction cured even the appearance of any impropriety:

Now, I don't reach a determination myself as to how you should decide the facts of the case, that's your function. That's why we have jurors.

It's not my function to decide any of the facts in the case, and I haven't expressed, nor have I intended to convey any view as to how the facts are to be decided; as to which witnesses are or aren't worthy of belief; as to what facts are or are not established; or as to what inferences ought to be drawn from the evidence.

If any expression of mine during the course of this trial has seemed to indicate an opinion regarding any of these matters, I instruct you to disregard that expression entirely.

## Form Instruction 71-6 Conduct of Counsel

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

## Comment

It is especially appropriate to request and give an instruction as to counsel's duty to object, where there may be an issue on appeal as to judicial bias. Instruction 71-6 is appropriate when the jury has been exposed to an acrimonious exchange between the bench and counsel. The Ninth Circuit pattern instructions, in the context of defining what is not evidence, contains the passing admonition: "You should not be influenced by the objection or by the court's ruling on it."

**Form Instruction 71-7 Reprimand of Counsel for Misconduct**

During the course of the trial, I have had to admonish or reprimand an attorney because I did not believe what he was doing was proper. You should draw no inference against him or his client. It is the duty of the attorneys to offer evidence and press objections on behalf of their side. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks and to reprimand counsel when I think it is necessary. But you should draw no inference from that. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer.

In fact, in this case, I would like to express my gratitude to each of the attorneys for their conscientious efforts on behalf of their clients and for work well done.

Your verdict should be based on the facts as found by you from the evidence and the law as instructed by the court.

**Comment**

This charge is especially important when an issue has been raised concerning improper conduct of counsel. It is also appropriate where the court has exercised its discretion to cut off improper questioning, strike offending remarks or reprimand counsel in the jury's presence. Since reversal will rarely be based on the grounds that the court acted improperly in reprimanding counsel, consideration should be given to requesting this charge by the attorney who was reprimanded in order to blunt the effect which the court's reproaches may have had on the jury.

**Form Instruction 72-2 Corporate Responsibility (Express, Apparent, Implied Authority Defined)**

A corporation is a creation of state law and can act only through its agents--that is, its employees, officers or authorized representatives. In order to find that the act of an agent was binding on the corporation you must find that the agent had authority to act in the manner in which he or she is alleged to have acted.

This authority may be express, apparent or inherent. Express authority is created by the direct verbal or written giving of that authority by the corporation to its agent. For example, express authority to perform certain duties may be part of an employee's contract.

Apparent authority, on the other hand, is the authority which a principal by reason of its acts and conduct leads a third person reasonably to believe that its agent possesses. Apparent authority can be created by appointing a person to a position, such as manager, treasurer or other, which position carries generally recognized duties. In other words, apparent authority is based on a "holding out to the world" of the agent, in his particular position, by the corporation. To third parties who deal with this agent, knowing of his position, the agent has apparent authority to do all those things ordinarily done by someone in that position, regardless of any unknown limitations which are imposed on the particular agent. In such circumstances, the corporation is bound to third parties, who are unaware of any lack of authority to the same extent as if the power to act had been directly conferred. Therefore, if you find that the corporation has, by reason of its words or conduct, led a third party to rely on the appearance of the agent's authority to act on behalf of all the facts and circumstances of the particular case, then the corporation is responsible for such acts of its agent as if the corporation itself committed the acts.

There are also situations in which an agent has inherent authority to bind the corporation even where the corporation has not granted the employee either the express or apparent authority to act on its behalf. This inherent authority may exist, provided the acts in question are within the scope of his employment, even though the acts may be criminal or tortious. An act is within the scope of employment if it is sufficiently related to the kind the employee was employed to perform, if it was done substantially within the time and space limits of the job and was actuated, at least in part, by a purpose to serve the corporation.

Therefore, if you find that the agent acted with express, apparent, or inherent authority to bind the corporation, you may find that the corporation was responsible for his conduct.

## Comment

Corporations are entitites created by the state law; therefore, most corporate law issues are governed by individual state law. The text embodies the general principles of agency and the rules expressed in the Restatement of Agency.

It is well-settled that corporations are bound by the acts of their agents that are within the agent's express, apparent or inherent authority. Some courts substitute the term "implied" for "inherent," but the text uses "inherent" in order to avoid the similarities in meaning between the words "apparent" and "implied."

Apparent authority is a doctrine created by the courts to protect persons dealing with corporate officials. There are two elements of apparent authority: (1) the principal must make some form of manifestation to an innocent third party; and (2) the third party must rely reasonably on the purported authority of the agent as a result of the principal's manifestations. The reasonableness of the reliance is determined from all the facts and circumstances of the case.

Because apparent authority is based on the acts of the corporation in holding the agent out to a third party, it can only exist with a disclosed or partially disclosed principal. Where the principal is undisclosed, the principal cannot "speak" to a third party and, therefore, no apparent authority can exist. In cases of apparent authority, the corporation is bound only where the court finds reliance to be reasonable. In *Kuehn v. Kuehn* ,n6 an agent was given power of authority, a land assignment and quitclaim deed and an irrevocable assignment as attorney-in-fact. This led third parties reasonably

to believe that the agent had the power to sell them the land in question. The court held that where an agent is "cloth [ed] ... with the indicia of a corporate officer," the corporation will be bound by his acts. The *Kuehn* court, as well as others, used the language "the corporation is estopped from denying liability" interchangeably with the corporation's being "bound" by the acts of its agents. The text chooses to use only the latter, since the jury should not be concerned with issues of estoppel.

In the Fifth Circuit, apparent authority was also found to exist where a corporation had held itself out through press conferences and announcements as the owner of a hotel and also held out one of its employees as its manager. The court held the corporation liable to an advertising agency who had reasonably relied on the manager's assurance that the corporation would pay for the agency's services.

Apparent authority will not be found where reliance is not reasonable. Such was the case where a corporate president, who was given wide powers over corporate funds and dealings with banks, transferred corporate funds to cover his own indebtedness. The court felt it was not reasonable for the bank to assume the president had the power to use corporate funds in this manner. Similarly, it was not reasonable for a businessman to conclude that a corporation entered into a multimillion dollar contract based upon an oral agreement with individuals without written evidence of their authority or any evidence of approval by a board of directors.

Like apparent authority, inherent authority is found by the courts to protect innocent third parties:

[C]orporations ... depend for their existence upon agency principles. ... It is inevitable that in doing their work, either through negligence or an excess of zeal, agents will harm third persons or deal with them in unauthorized ways. It would be unfair for an enterprise to have the benefit of the work of its agents without making it responsible to some extent for their excesses and failures to act carefully.

In accordance with these principles, Instruction 72-2 charges the jury that it may find the corporation to be bound by an employee who acted with inherent authority. Instruction 72-2 is careful to explain that liability would extend to an employee's acts that were even criminal or tortious, if the acts were committed within the scope of employment. That term is defined broadly in the text, in accordance with the principles embodied by the Restatement of Agency.

In one case, a corporation was held liable when one of its stores violated the Food Stamps Program by selling non-food items such as beer on at least four occasions. The court said this constituted a "firm" policy and held that a corporation is responsible for the acts of its agents even though the acts are committed without the knowledge of the officers of the corporation, because they were committed within the scope of the employee's employment.

Inherent authority may be found with both disclosed and undisclosed principals:

[W]hen a general agent for an undisclosed principal does a forbidden act, there is a total failure of communication between the principal and the other party. Nevertheless, the principal may be liable.

Therefore, the portion of Instruction 72-2 dealing with inherent authority applies regardless of whether or not the principal is disclosed.

In this regard, it should be noted that many jurisdictions have adopted rules to protect innocent third parties against the acts of corporations; therefore, the courts should be cautious to examine applicable state law before permitting a corporate defendant to interpose the defense of ultra vires.

There may also be cases where an employee injures a third party in carrying out a corporate policy. In such cases, the following instruction has been approved by the Sixth Circuit:

A corporation may act only through natural persons as its agents or employees and in general any agent or employee of a corporation may bind the corporation by his or her acts and declarations made by acting within the scope of his or her authority delegated to him or her by the corporation, or within the scope of his [or her] duties as an employee of the corporation.

You [are] instructed that [the defendant corporation] may be liable where you find that the plaintiff has been deprived of his constitutional rights and such deprivation was done pursuant to a ... policy ... with respect to a directive, guideline or decision promulgated by the corporation. When the plaintiff is injured as a result of corporate policy, regulation or decision, whether made by its board of directors or by those officials whose edicts or acts may fairly be said to represent ... policy making authority, the corporation itself may be responsible for the injury that it caused. ...

**Form Instruction 73-2 Burden of Proof--Preponderance of the Evidence**

The party with the burden of proof on any given issue has the burden of proving every disputed element of his claim to you by a preponderance of the evidence. If you conclude that the party bearing the burden of proof has failed to establish his claim by a preponderance of the evidence, you must decide against him on the issue you are considering.

What does a "preponderance of evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties-- that it is equally probable that one side is right as it is that the other side is right--then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence--he must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof--that what the party claims is more likely true than not true--then that element will have been proved by a preponderance of evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper

standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and

you should put it out of your mind.

### Authority

**Second Circuit:** *Larson v. JoAnn Cab Corp., 209 F.2d 929 (2d Cir. 1954).*
**Third Circuit:** *Porter v. American Export Lines, Inc., 387 F.2d 409 (3d Cir. 1968); Virgin Islands Labor Union v. Caribe Construction Co., 343 F.2d 364 (3d Cir. 1965); Burch v. Reading Co., 240 F.2d 574* (3d Cir.), *cert. denied, 353 U.S. 965 (1957).*
**Fifth Circuit:** *Gardner v. Wilkinson, 643 F.2d 1135 (5th Cir. 1981).*
**Sixth Circuit:** *Disner v. Westinghouse Electric Corp., 726 F.2d 1106 (6th Cir. 1984); Toledo, St. L. & W. R. Co., v. Kountz, 168 F. 832 (6th Cir. 1909).*

### Comment

The standard of proof used in federal civil actions has constitutional dimensions, finding its roots in the fifth amendment of the Constitution of the United States, which forbids any person to "be deprived of life, liberty, or property without due process of law." However, on appeal from a civil tax case where the defendant at trial waived his claim that the burden of proof shifted to the government to show the amount of a deficiency once the defendant demonstrated that the assessment was excessive, the Seventh Circuit wrote that the defendant "may not now resurrect burden of proof on appeal." The standard of proof used to guide a jury's decision is an element of the due process requirement.

There are, roughly, three standards of proof. These can be described as ranging along a "continuum" and representing varying "degree [s] of confidence ... in the correctness of factual conclusions" produced in the mind of the trier of fact. Alternatively, at least one court has described this continuum as representing varying degrees of probability of truth. Under this theory, expressed by Judge Weinstein in *United States v. Fatico* , "quantified, the preponderance [of the evidence] standard would be 50+% probable"; the probability of truth under the clear and convincing evidence burden "might be in [the] order of 70%"; under the clear, unequivocal, and convincing evidence standard the probabilities "might be in the order of above 80%"; and under the beyond a reasonable doubt standard, the probabilities "might be in the range of 95+% probable." These quantifications, however, are not considered to be helpful guideposts to jurors because they focus the factfinder on mathematical formulae when matters such as credibility are clearly not susceptible to such precision; therefore, they are not used in Instruction 73-2.

The Supreme Court has explained that the degree of a litigant's burden is multi-determined. According to the court, the "minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." Thus, in a civil case involving a monetary dispute between private parties, due process would require, at the minimum, that the claim be proved by only a preponderance of evidence because the private interest is only monetary, and the public interest minimal. "The litigants thus share the risk of error in roughly equal fashion."

Conversely, "in a criminal case ... the interests of the defendant are of such magnitude that ... our society imposes almost the entire risk of error upon itself." This reflects society's "fundamental value determination ... that it is far worse to convict an innocent man than to let a guilty man go free."

Between these two points on the continuum of standards of proof lies an intermediate standard under which the party with the burden of proof bears the greater risk of an erroneous decision than he would under the preponderance standard, but not as high as that under the beyond reasonable doubt standard. This "clear and convincing evidence" standard is used, typically, in civil cases where the defendant's private interests at stake are more substantial than risk of monetary loss. "[S]ome jurisdictions accordingly reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof," and the Supreme Court "has used the 'clear, unequivocal and convincing' standard of proof to protect particularly important individual interests."

Accordingly, because the proper standard of proof is fundamental to a fair trial, a trial court's failure to give an adequate instruction on the burden of proof would be plain error. Indeed, the Seventh Circuit has held that a trial court has the duty to instruct the jury properly as to the burden of proof even though trial counsel tenders erroneous instructions on the issue of burden of proof. The failure to distinguish between a rebuttal and an affirmative defense may result in shifting the plaintiff's burden of proof onto the defendant, resulting in prejudice and requiring reversal. However, an instruction may be proper even though it does not "specifically use the words 'burden of proof.'"

Instruction 73-2 instructs the jury to assess the probability of truth of the claim made by the party with the burden of proof, and instructs the jury to determine whether those claims have the "greater weight of the evidence." Instruction 73-2 thereby incorporates two approaches to defining a preponderance of the evidence, a concept that jurors apparently find difficult to grasp.

Most circuits have approved a definition of a preponderance of evidence as "more likely than not" or "more probably true than not," either in decisions of the courtn24 or in the circuit pattern instructions. No court has held the use of the "greater weight" metaphor to be erroneous, although the Second Circuit has questioned the use of the "balancing" metaphor alone as potentially misleading the jury to weigh the quantity of evidence addressed by each side, without regard to its persuasiveness. Instruction 73-2 avoids this problem by giving the jury proper guidance as to the

quality and persuasiveness of the evidence, and not just the number of witnesses or documents. The Third Circuit thought it "more comprehensible" to define preponderance in terms of probabilities, instead of by relative weights of the evidence, noting that, "the ancient metaphor referring ... to the 'greater weight' of evidence is intrinsically of very limited usefulness in giving to a juror real guidance as to his duty." An unexplained instruction simply instructing the jury to "weigh" the evidence may therefore encourage jurors to count up and compare the number of witnesses and exhibits produced by the parties. In his concurrence in *In re Winship,* Justice Harlan noted with approval earlier criticism of an instruction that would ask "the trier of fact to weigh in some objective sense the quantity of evidence submitted by each side rather than asking him to decide what he believes most probably happened," and recommended that a preponderance be explained in terms of a degree of belief of factual conclusions.

On the other hand, the court should be careful not to suggest that more is needed than to "tip the scales." In *Blossom v. CSX Transportation, Inc.,* plaintiff's counsel argued to the jury that his burden was "to tip the scales just one little bit in our favor," to which the trial court interjected:

[T]hat's not a proper argument. It's the preponderance of the evidence. It's not a matter of putting to see what weighs slightly more ... There's no mathematical formula.

In charging the jury on the burden of proof, the judge stated:

Some reference was made during argument ... that if you put it on scales and it just slightly tilts one way--now that's not a correct measure of the burden of proof. It must be that it has more convincing force and produces in your minds a belief that what is sought to be true is more likely true than not true.

The Eleventh Circuit reversed and remanded for a new trial. The court held that the "tipping the scales" metaphor is a proper description of the burden of proof, noting that several courts have recommended or required its use. But, by telling the jury that this was not correct, and then giving an equally acceptable definition, the court suggested to the jury that there was a difference between the two standards and that more was required than just "tipping the scales." Thus, the court felt that the jury was misled by the instructions and that a new trial was required.

The Eighth Circuit pattern instruction, an abbreviated version of the recommended instruction, provides in part:

In these instructions you are told that your verdict depends on whether you find certain facts have been proved. The burden of proving a fact is upon the party whose claim [or defense] depends upon that fact. The party who has the burden of proving a fact must prove it by the [(greater weight) or (preponderance)] of the evidence. To prove something by the [(greater weight) or (preponderance)] of the evidence is to prove that is more likely true than not true. It is determined by considering all of the

evidence and deciding which evidence is more believable. [If, on any issue in the case, the evidence is equally balanced, you cannot find that issue has been proved.]

[The [(greater weight) or (preponderance)] of the evidence is not necessarily determined by the greater number of witnesses or exhibits a party has presented.]

Instruction 73-2 is preferred since it gives substantially more guidance to the jury. In addition, the second paragraph of the Eighth Circuit's instruction is troublesome in that by stating that the number of witnesses or exhibits does not *necessarily* determine whether the burden of proof has been met, it suggests that those factors may be relevant.

The Fifth Circuit pattern instruction contains no language on the weighing of the evidence:

In this case, the plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.

This instruction is not recommended, since it fails to include the "weighing" analogy, does not clearly indicate what the jury should do if the evidence is equally balanced, and fails to state that the number of witnesses is not controlling.

The Eleventh Circuit instruction is similar to the Fifth Circuit's, and is not recommended for the same reasons. The Eleventh Circuit instruction provides:

In this case it is the responsibility of the Plaintiff to prove every essential part of the Platintiff's claim by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence which is enough to persuade you that the Plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence you may consider the testimony of all of the witnesses, regardless of who may have called

them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claim by a preponderance of the evidence, you should find for the Defendant as to that claim.

The Ninth Circuit pattern instruction is extremely brief. It provides:

When a party has the burden of proof on any claim [or affirmative defense] by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim [or affirmative defense] is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Because this instruction provides virtually no guidance to the jury, it is not recommended.

Instruction 73-2 properly instructs the jury that it cannot find for the party with the burden of proof if the jury finds that the version of facts presented by that party is only just as likely to be true as false. Although the Eighth Circuit has held that it is not error to refuse to give this "equal hypothesis" instruction if the charge as a whole properly explains the standard of proof, the instruction usefully explicates the requirement that a party with the burden of proof must persuade the jury that his claim is more likely than not to be true. It is error to instruct the jury that the party with the burden of proof on an issue may prevail if the evidence is equally divided.

The Second and Third Circuits have disapproved instructions that, in order to find for the party with the burden of proof, the jurors must have a "conviction" because that party had a duty to "convince" them. The Seventh Circuit has disapproved of the use of the phrases, "satisfy," "convince," "convincing," and "clear preponderance" in charges explaining "preponderance of evidence." However, use of such terms in an instruction is unlikely to be plain error. Similarly, an instruction that the jury must find against the party with the burden of proof if it hesitates or is doubtful, may not be plain or fundamental error if it is accompanied by a proper definition of a "preponderance of evidence." Although the term "fair preponderance" is often used to describe this standard of proof, the modifier is eschewed here as an unnecessary gloss.

The Eighth Circuit pattern instruction contains the following optional language:

[You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard which applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.]

The recommended instruction incorporates a similar warning to the jury that the beyond reasonable doubt standard is not applicable to the matter under consideration. Such an instruction may clarify lingering confusion about the two standards of proof.

Instruction 73-2 aims to describe a party's burden of proof with concision and clarity. Excessive description and repetition of a party's burden of proof may in effect increase that party's standard of proof; however, if a charge is on the whole accurate and fair, repetition would be unlikely to be held prejudicial. On the other hand, Instruction 73-2 is careful to relate the burden of proof to the individual elements of the claim as opposed to the evidence as a whole. If the same burden of proof applies to all of the elements of all of the claims, then it is acceptable to give one general instruction on the burden; it is not necessary that the burden of proof be repeated with respect to all claims or all elements of one claim.

When the standard of proof is uncertain, a judge may submit the alternative standards of proof as special interrogatories in order to avoid reversal. In *Fogarty v. Greenwood*, the standard of proof with regard to punitive damages in *42 U.S.C. § 1983* actions had been expressly left open by the Seventh Circuit. The district court proposed to submit interrogatories containing the alternative standards, with the following explanation:

> 1. In addition to the general verdict form, the jury will be provided with interrogatories requiring that it answer separately whether the substantive conduct that would be a prerequisite to any possible award of punitive damages has been proved as to each defendant (a) by a preponderance of the evidence or (b) by clear and convincing evidence.
>
> 2. Relatedly the jury will be instructed that it should not go on to consider the award of punitive damages unless it answers either or both of those interrogatories 'Yes.'
>
> 3. In the instruction dealing with what is meant by burden of proof, the jury will be instructed as to the definition and meaning of both "preponderance of the evidence" and "clear and convincing."
>
> 4. To avoid the quite understandable confusion about just what's going on, this Court sees no reason why they should not be told as part of the instructions that the law is not yet settled on the standard of proof for purposes of awarding damages."

**Form Instruction 74-1 What Is and Is Not Evidence**

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the question of a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

The famous example of this is the lawyer's question of a married witness: "When did you stop beating your wife?" You would not be permitted to consider as true the assumed fact that he ever beat his wife, unless the witness himself indicated he had, or unless there was some other evidence in the record that he had beaten his wife.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose--such as for the purpose of assessing a witness' credibility--you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the court.

To constitute evidence, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

**Authority**

**Second Circuit**: *United States v. Aluminum Co. of America, 1 F.R.D. 62 (S.D.N.Y. 1939).*
**Third Circuit:** *Sims v. Greene, 161 F.2d 87 (3d Cir. 1947).*
**Fifth Circuit:** *Rodriguez v. Olin Corp., 780 F.2d 491, 496 (5th Cir. 1986); United States v. State of Texas, 523 F. Supp. 703 (E.D. Tex. 1981).*
**Eighth Circuit:** *Haines v. Powermatic Houdaille, Inc., 661 F.2d 94 (8th Cir. 1981).*
**Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 3.3-3.5.
**Tenth Circuit:** *Rasmussen Drilling, Inc., v. Kerr-McGee Nuclear Corporation, 571 F.2d 1144* (10th Cir.), *cert. denied, 439 U.S. 862 (1978).*

**Comment**

The language of Instruction 74-1 properly cautions the jury that counsel's questions and arguments are not evidence. The recommended language is especially appropriate if counsel has made allegations that were unproven. Indeed, the offending attorney should consider requesting a limiting instruction that unproven allegations are not in evidence, since the courts appear to hold that an instruction to disregard unproven allegations is sufficient to cure any prejudice.

In that regard, counsel may consider requesting additional language to the effect that "allegations contained in the complaint are not evidence." There is authority for such language and such a charge may cure any prejudice, as, for example when a court submits special damages to the jury, when none were proven.

Similarly, there is authority for the language in Instruction 74-1 that material used to refresh recollection is not evidencen6 and this language is especially appropriate when there is a possibility of confusion.

When charging the jury about what is evidence, care should be taken not to imply that receipt into evidence makes the evidence true. The jury, therefore, should be reminded that it alone decides the weight to be given any piece of evidence. In this regard, appellate courts will frequently look for a trial court's reminder that "the jury--not the court --was to make the ultimate assessment of the truth" before holding that a trial court's comment on evidence was not prejudicial.

Finally, the Instruction instructs the jury that the judge's comments are not evidence. This is particularly important where the judge marshals the evidence for the jury.

**Form Instruction 74-2 Direct and Circumstantial Evidence**

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses--something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on (*e.g.,* a preponderance of) all the evidence presented.

## Authority

**United States Supreme Court:** *Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330, 81 S. Ct. 6, 5 L. Ed. 2d 20 (1960).*

**Fourth Circuit:** *United Textile Workers of America, AFL-CIO, Local Union No. 120 v. Newberry Mills, Inc., 238 F. Supp 366 (W.D.S.C. 1965).*

**Eighth Circuit:** *Ellis Fischel State Cancer Hosp. v. Marshall, 629 F.2d 563 (8th Cir. 1980).*
**Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 3.6.
**Eleventh Circuit:** *Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321 (11th Cir. 1982).*

## Comment

The Supreme Court has stated that in civil cases "[d]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence."

Under federal standards, a jury verdict based solely on circumstantial evidence will stand even if this evidence might support an equally probable inference to the contrary.

Instruction 74-2 correctly instructs the jury to apply logic and reason in determining whether to find a fact based upon the circumstances of another fact, and not rely upon mere conjecture. As stated in *Denman v. Armour Pharmaceutical Company:*

It is well settled that a fact may be proved by circumstantial evidence, provided the circumstances are such as to take the case out of the realm of conjecture and place it in the field of legitimate inference; and the trier of fact [is] not obliged to resort to surmise to any material degree in reaching its conclusions. While circumstantial evidence may be even more satisfying and persuasive than direct evidence, the circumstance must be so proven that the conclusion sought to be thereby established must be a reasonable and probable one, and must follow logically from the facts.

In giving examples clarifying the use of circumstantial evidence, the court should be cautious to avoid reference to facts which resemble the evidence in the particular case. As stated in *Vanskike v. ACF Industries, Inc.* , it is a general rule that "instructions must be objective, not phrased in an argumentative vein favorable to either party... . A court must be careful if it intends to tie in principles of law to the facts." The Eleventh Circuit has stated that the trial court should be responsive to jurors' confusion regarding the distinction between direct and circumstantial evidence.

**Form Instruction 74-3 Judicial Notice**

I have taken judicial notice of certain facts which are not subject to reasonable dispute. I have

accepted these facts to be true, even though no direct evidence has been introduced proving them to

be true. You are required to accept these facts as true in reaching your verdict.

**Authority**

**Fifth Circuit**: Fifth Circuit Pattern Civil Jury Instruction 2.4.
**Eighth Circuit:** Eighth Circuit Model Civil Jury Instruction 2.04.

**Comment**

The foregoing instruction is appropriate for all facts judicially noticed in civil cases. Such facts include "adjudicative" facts, which are facts specifically relevant to the particular case, and "legislative" facts, which are facts judges use in their interpretation of statutes and narrowing or broadening of common law rules.

A different instruction is required in criminal cases, where the jury is required to accept legislative facts as binding but may consider adjudicative facts as it would any other evidence. The Fifth, Eighth, and Ninth Circuit pattern instructions follow the distinction mandated by Rule 201(g).

Under Rule 201 , a formal opportunity to be heard exists with respect to the propriety of judicial notice of adjudicative facts. Attorneys may exercise this opportunity and object even after judicial notice has been taken if no notice had been given in advance. If, after the appropriate hearing, it is found that judicial notice was taken improperly, an instruction cautioning the jury to ignore the improperly noticed facts should be given.

**Form Instruction 74-4 Stipulation of Facts**

A stipulation of facts is an agreement among the parties that a certain fact is true. You must

regard such agreed facts as true.

**Authority**

**Fifth Circuit**: Fifth Circuit Pattern Civil Jury Instruction 2.3.
**Sixth Circuit**: *Brown v. Tennessee Gas Pipeline Co., 623 F.2d 450, 454 (6th Cir. 1980).*
**Eighth Circuit:** Eighth Circuit Model Civil Jury Instruction 2.03.
**Ninth Circuit:** *Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, 589 F.2d 974, 977 (9th Cir. 1978);* Ninth Circuit Model Civil Jury Instruction 2.4.

**Comment**

The above instruction represents the general rule that stipulated facts stand "as fully determined as if ... adjudicated" at trial. Indeed, *Rule 16 of the Federal Rules of Civil Procedure* encourages the use of stipulations as a means to "avoid unnecessary proof," stating that "at least one of the attorneys for each party participating in any conference before trial shall have the authority to enter into stipulations... ." Stipulations of testimony, by contrast, are covered in Instruction 74-5, *infra.*

Though courts have broad discretion in determining whether to hold a party to its stipulation, in practice stipulations of fact are disregarded by courts only after "a clear and convincing demonstration that manifest injustice would otherwise result." The existence of such injustice is a determination to be made within the trial court's discretion.

The Tenth Circuit has articulated the following considerations for permitting a party at retrial to withdraw a stipulation entered into at the first trial:

[W]here a stipulation is distinctly and formally made for the express purpose of relieving the opposing party from proving some fact or facts, or where a formal admission of facts is made by counsel and becomes a part of the record, such a stipulation or admission, provided it is not by its terms limited to a particular occasion or a temporary object, can be introduced in evidence and is available as proof of the facts admitted upon a subsequent trial of the same action, unless the court permits its withdrawal upon proper application.

When a stipulation is limited expressly to a single trial and phrased in terms of conclusory, rather than evidentiary, facts, district courts may on retrial free a party from the stipulation.

> Finally, "where a stipulation is entered into under a mistake of law induced by the then existing state of the case law a [party] is entitled to be relieved of the stipulation if no prejudice results."

This general unwillingness of courts to disregard stipulations of fact was exemplified in *Loftin and Woodard, Inc. v. United States,* in which the parties stipulated as to certain payments made by a partnership to a corporation, using figures from the partnership's books. After the district court disregarded the stipulation and used figures from the corporation's books, the Fifth Circuit reversed, finding the corporation's figures no more reliable than the partnership's and citing "the honored place accorded to stipulations reached by the solemn efforts of opposing parties."

Despite the finality accorded stipulations of fact, courts are free to disregard purported stipulations of fact which are actually stipulations of law. The Fifth Circuit has stated that "a court is free to disregard stipulations if parties have spoken to 'the legal effect of admitted facts ... since the court cannot be controlled by agreement of counsel on a subsidiary question of law.'" For example, in *Garrett v. Mathews* , the parties stipulated that, based on a university faculty handbook, the university's president was without power to implement tenure or revocations since the grant of this power was not mentioned in the university's handbook. The court, declaring that it was "not bound by the parties' agreements of law, nor by agreements of fact which are contrary to facts disclosed by the record," examined the handbook and stated that "[t]he old saw, 'inclusio unius est exclusio alterius' does not apply here... . The Handbook is not on its face so complete as to create the presumption that the omission of tenure revocation was intentional."

Similarly, in *Estate of Connelly v. United States,* the parties stipulated as to the rights of the insured under an insurance contract. Upon inspection of the contract, however, the court disregarded the stipulation, stating that "[a]scertainment of 'facts' like these are matters of interpretation of contract, to be determined by the court... ." Other unsuccessful attempts to stipulate with respect to matters within the judge's province have involved stipulations regarding burden of proof and admission of evidence.

As a final note, there is a conflict among the circuits regarding the propriety of stipulating *which forum's* law should govern an action.

## Form Instruction 74-5 Stipulation of Testimony

A stipulation of testimony is an agreement among the parties that, if called, a witness would

have given certain testimony. You must accept as true the fact that the witness would have given that

testimony. However, it is for you to determine the effect, if any, to be given that testimony.

### Authority

**Fifth Circuit**: Fifth Circuit Pattern Civil Jury Instruction 2.2.
**Eighth Circuit:** *Koenig v. Frank's Plastering Co., 227 F. Supp. 849 (D. Neb. 1964), aff'd, 341 F.2d 257 (8th Cir. 1965).*
**Ninth Circuit:** *Tucker v. Brady, 305 F.2d 550, 552 (9th Cir. 1962).*

### Comment

Care should be taken to distinguish between stipulations of fact, which are binding upon the jury (*see* Comment to Instruction 74-4, *supra*), and stipulations of testimony, which have the same effect as any other evidence. This concept was well illustrated in *Tucker v. Brady,* in which the parties stipulated that the defendant, had she testified, would have denied knowledge of certain information. In response to the contention that defendant's lack of knowledge was a fact binding upon the jury in the absence of any evidence to the contrary, the Ninth Circuit Court of Appeals explained that:

> It must be noted that appellee did not stipulate as to the ultimate fact of knowledge....
> By the device of refraining from putting her demeanor to the test, appellant should
> not be enabled to render credible as a matter of law what otherwise might have been
> disbelieved. The court was still entitled to disbelieve her would-be testimony if it
> found it unlikely.

This reasoning is clearly in accord with the Supreme Court's mandate that:

> [I]t is for the jury to decide whether any, and if any what, weight to be given to ...
> testimony... . The jury, even if such testimony be uncontradicted, may exercise their
> independent judgment.

Instruction 74-5 explicitly tells the jurors that it is for them to determine the value of the stipulated testimony. Similarly, the Fifth Circuit pattern instruction instructs the jury to give the testimony "the value you believe it deserves." However, the pattern instructions of the Eighth and Ninth Circuits omit this language, stating instead that the jury should treat the stipulated testimony in the same manner as if it had been given in court. In light of the admonition by the Supreme Court, the language of the text instruction and the Fifth Circuit is preferred.

In stipulating to authenticity, counsel would be well advised to request the trial court to specifically instruct the jury along the following lines:

> The stipulation you have just heard only means that the parties agree that plaintiff/defendant (or third party) does not have to call a witness to prove that the document was (*e.g.*, a business record). It remains for you to determine, however, whether the document which has been received actually proves the fact which is contested.

**Form Instruction 74-12 Summaries and Charts Not Admitted as Evidence**

The charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they were based. You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing the evidence and understanding the evidence.

**Authority**

**Second Circuit**: *United States v. Citron, 783 F.2d 307, 316-17 (2d Cir. 1986).*
**Fifth Circuit:** *United States v. Smyth, 556 F.2d 1179, 1184* (5th Cir.), *cert. denied, 434 U.S. 862 (1977).*
**Sixth Circuit:** *Gomez v. Great Lakes Steel Div., Nat. Steel Corp., 803 F.2d 250, 257-58 (6th Cir. 1986).*

**Comment**

The Ninth Circuit pattern instruction provides:

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

The negative tone of this instruction seems to invite the jury to disregard the charts and summaries. Accordingly, the more positive language of Instruction 74-11 is preferred.

**Form Instruction 74-13 Interrogatories**

You have heard and seen evidence in this case which is in the form of interrogatories.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side. Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

**Authority**

**District of Columbia Circuit**: *Stottlemire v. Cawood, 213 F. Supp. 897 (D.D.C. 1963).*
**First Circuit**: *Ware v. Garvey, 139 F. Supp. 71 (D. Mass. 1956).*
**Second Circuit**: *Rosenthal v. Poland, 337 F. Supp. 1161, 1170 (S.D.N.Y. 1972).*
**Third Circuit**: *Zenith Radio Corp. v. Matsushita Electric Industrial Co., 505 F. Supp. 1190 (E.D. Pa. 1980).*
**Fourth Circuit**: *Marcoin, Inc. v. Edwin K. Williams & Co., Inc., 605 F.2d 1325, 1328 (4th Cir. 1979); Coca-Cola Co. v. Dixi-Cola Laboratories, 30 F. Supp. 275, 279 (D. Md. 1939).*
**Sixth Circuit**: *Freed v. Erie Lackawanna Railway Company, 445 F.2d 619, 621 (6th Cir. 1971), cert. denied, 404 U.S. 1017 (1972); Gridron Steel Co. v. Jones v. Laughlin Steel Corp., 361 F.2d 791, 794 (6th Cir. 1966).*
**Ninth Circuit**: *Donovan v. Crisostomo, 682 F.2d 869, 875 (9th Cir. 1982); Victory Carriers, Inc. v. Stockton Stevedoring Co., 388 F.2d 955, 959 (9th Cir. 1968).*
**Tenth Circuit**: *Helig v. Studebaker Corporation, 347 F.2d 686, 689 (10th Cir. 1965).*

**Comment**

Answers to interrogatories are admissible as "admissions against interest." The foregoing instruction avoids the term "admission" as potentially confusing, since there are other types of "admissions" which bind the parties making them whereas answers to interrogatories are merely reviewed as evidence against the responding party.

Indeed, counsel for the party who submitted an interrogatory answer which is contradicted by his client's trial testimony may wish to request the following additional language:

> An answer to an interrogatory is comparable to an answer, which may be mistaken, given in deposition testimony or during the course of the trial itself. Answers to interrogatories must often be supplied before an investigation is completed and can rest only upon the knowledge which is available at the time. When there is a conflict between answers supplied in response to interrogatories and answers obtained through other questioning, either in deposition or trial, it is for you, the jury, to weigh all of the answers and resolve the conflict.

In *Freed v. Erie Lackawanna Railway Company,* the defendant directly contradicted his answer to an interrogatory during trial testimony. The jury, during its deliberations, submitted a question to the judge asking what their conclusion should be with respect to the point in question. The judge declined to answer the jury's question on the grounds that it involved a question of fact for the jury to resolve. On appeal, the plaintiff contended that the interrogatory answer was an "admission against interest" which was, therefore, binding on the defendant, and that the court had erred in not answering the jury's question accordingly. The Sixth Circuit rejected this contention, stating that:

> While the [plaintiff's] cited case is authority for the rule that answers to interrogatories when introduced in evidence may be utilized as admissions, it does not hold that such admissions are binding... . The court properly declined to answer the [jury's] question...

The Ninth Circuit pattern instruction omits any discussion of the use for which interrogatories may be introduced. It provides:

> Evidence is now to be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers have been given in writing and under oath, before the actual trial, in response to questions which were submitted in writing under established court procedures. The answers are entitled to the same consideration and are to be judged as to credibility and weight, and otherwise considered by you insofar as possible, as if the answers were made from the witness stand.

Similarly, a district judge in the First Circuit charged the jury as follows:

> There is a right under the federal rules ... to put such questions in advance of trial and the answers which are given to those interrogatories may or may not be read to the jury. They are admissible evidence. They aren't binding. They have the same force and effect as any other kind of testimony weighed by you.

While these instructions are accurate insofar as they go, this approach is not adopted in Instruction 74-13, because it leaves open the issue concerning against whom the answer is admissible. Instruction 74-13 provides that in an appropriate case, the jury should be cautioned that answers to interrogatories may be considered as evidence against any party other than the responding party. Because of the ex parte nature of answers to interrogatories, these answers may never be introduced by the answering party as evidence against the proprounding party. Instruction 74-13 properly informs the jury that the interrogatory answer may only be considered against the responding party.

If interrogatory answers from a prior lawsuit involving substantially identical issues are admitted in evidence, the jury should be instructed that the answers were given in pretrial discovery in an earlier lawsuit, and that it may consider the earlier interrogatories as they would any other evidence in the case.

## Form Instruction 74-14 Depositions

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adversary party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

## Authority

**Fifth Circuit:** Fifth Circuit Model Civil Jury Instruction 2.23.
**Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 2.6.
**Tenth Circuit:** *Minshall v. McGraw Hill Broad. Co., 323 F.3d 1273 (10th Cir. 2003).*

## Comment

Instruction 74-14 is recommended for cases in which the deposition is offered for affirmative evidence because the deponent is "unavailable" at the time of trial. The Federal Rules of Evidence define such "unavailability" to include situations of privilege, refusal to testify in defiance of court order, lack of memory, death or illness, and inability to procure attendance by process or other reasonable means. This instruction is also appropriate where the deposition is offered as affirmative evidence because the deponent gives trial testimony inconsistent with his deposition. The definition of "inconsistency" is a matter of considerable discretion for the trial court; to be inconsistent, statements need not be diametrically opposed.

The depositions offered as affirmative evidence may have been taken in prior proceedings, in which event, the court should add as a third sentence a statement to the effect that the deposition the jury is asked to consider was taken in a prior proceeding. Where appropriate, it may be advisable specifically to advise the jury that such depositions are to be given the same weight as any other testimony. In short, depositions from prior proceedings are admissible as affirmative evidence as long as the person against whom they are offered had an opportunity to develop the testimony at the prior proceeding by direct, cross, or redirect examination, with a threshold requirement being substantial identity of issues and parties in the two actions. Instruction 74-14 is especially pertinent where the deposition is videotaped, since the jury will have an opportunity to view the witness' demeanor and evaluate his credibility while under oath. When a deposition is read by counsel, the court may wish to caution the jury that the inflection or demeanor of the reader is to be disregarded. In this regard, the Ninth Circuit pattern instruction contains the following optional language:

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Though a live testimony or a videotaped deposition may be preferred, the court may not instruct a jury that a written deposition is entitled to less weight. Instruction 74-14 clearly and concisely instructs the jury as to the proper weight that should be given to a written deposition.

## Form Instruction 74-15 Requests for Admission

You have heard evidence in the form of certain "requests for admission" submitted by the plaintiff (*or* defendant). Requests for admission are written statements of fact submitted by one party prior to trial to the opposing party. The opposing party has a certain amount of time in which to respond to the requests, knowing that his failure to respond within that time will be deemed equivalent to his *admitting* the truth of the statements contained in the requests.

Since the defendant failed to respond to the requests I have presented to you, you must assume the facts contained therein to be true. Therefore, in determining whether or not the defendant is liable, you are not permitted to disregard or disbelieve the contents of these requests, even in light of any other evidence presented. The requests admitted in evidence are binding and conclusive on the defendant for the purposes of this trial.

### Authority

**District of Columbia Circuit**: *Anchorage-Hynning & Co. v. Moringiello, 697 F.2d 356 (D.C. Cir. 1983); Rainbolt v. Johnson, 669 F.2d 767 (D.C. Cir. 1981).*
**First Circuit:** *Brook Village North Associates v. General Electric Company, 686 F.2d 66 (1st Cir. 1982).*
**Ninth Circuit:** 999 v. *C.I.T. Corp., 776 F.2d 866, 868-70 (9th Cir. 1985); Asea, Inc. v. Southern Pacific Transportation Company, 669 F.2d 1242 (9th Cir. 1981).*

### Comment

Before the amendment of *Rule 36 of the Federal Rules of Civil Procedure* in 1970, there was some confusion as to "how binding" admissions procured by request were for the purposes of trial. Some courts allowed such admissions to be outweighed by contradictory evidence presented at trial; others treated the admissions as conclusively binding the non-responding parties to whom they were directed. Rule 36(b) as amended now imposes "binding and conclusive" language of the foregoing instruction, and courts have honored the compulsory language of the Rule.

The Fifth Circuit, citing Rule 36, reversed a district court's decision to disregard two admissions upon which a plaintiff had relied.

Rule 36(a) specifies that any matter admitted is "conclusively established." "In form and substance, a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party." An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible. This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim.

In keeping with this rule, it may be helpful to advise the jury that requests for admission have the same type of binding effect as stipulations (*see* Instruction 74-4) and more binding an effect than answers to interrogatories (*see* Instruction 74-13). As discussed in the Comment to Instruction 74-13, answers to interrogatories do not "conclusively" bind the answering party, who may present contradictory testimony at trial to be weighed, along with his answers, by the jury. Indeed, the Advisory Committee's Note to Rule 36 states that a request for admission is "comparable to an admission in the pleadings or a stipulation drafted by counsel rather than to an evidentiary admission of a party."

In cases involving several codefendants, the foregoing instruction should be modified, especially where a request for admission has been directed to less than all of the defendants. In that situation, the jury should be instructed not to consider any request as evidence against a defendant to whom it was not initially directed.

## Form Instruction 75-1 Inference Defined

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw--but not required to draw--from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

### Authority

**United States Supreme Court:** *Schulz v. Pennsylvania R. Co., 350 U.S. 372, 76 S. Ct. 608, 100 L. Ed. 668 (1956); Lavender v. Kurn, 327 U.S. 645, 66 S. Ct. 740, 90 L. Ed. 926 (1946).*
**Second Circuit:** *Wilkins v. American Export Isbrandtsen Lines, Inc., 446 F.2d 480* (2d Cir.), *cert. denied, 404 U.S. 1018 (1971).*
**Third Circuit:** *EEOC v. Greyhound Lines, 635 F.2d 188 (3d Cir. 1980).*
**Seventh Circuit:** *United States v. An Article of Device, 731 F.2d 1253 (7th Cir. 1984), cert. denied, 105 S. Ct. 249 (1984).*
**Eleventh Circuit:** *Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321 (11th Cir. 1982).*

# Comment

This instruction may precede charges on specific types of inferences. It provides a detailed but simple description of the inference as a logical conclusion deduced from facts presented in evidence, permissive in nature, based on common sense rather than speculation.

As the Supreme Court has written:

The very essence of [the jury's] function is to select from among conflicting inferences and conclusions which it considers most reasonable. Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn.

In accordance with modern federal civil practice, the charge permits "pyramiding of inferences," or the use of one inference as the basis for another inference. This so-called inference-on-inference rule has been described as controversial, because of early fears that the jury will be carried away on a chain of speculation increasingly removed from direct evidence. This danger is avoided in Instruction 75-1 by emphasizing to the jury that inferences must be reasonable deductions drawn from facts in evidence, and not guesswork or speculation. Current practice supports this permissive attitude toward pyramiding inferences as long as the inferences are not "at war with uncontradicted or impeached facts" or "only a guess or possibility."

In one case, the Seventh Circuit did uphold a charge admonishing the jury not to "pile an inference on an inference" because, in context, it appeared to be "a rhetorical device aimed more against guesswork and speculation than against the normal process of inferential reasoning." Nonetheless, the Seventh Circuit went on to emphasize that the better practice is to avoid reference to the pyramiding and instruct the jury in language similar to Instruction 75-1:

We think it would be the better practice to avoid the "inference on inference" language and to concentrate instead on the jury's duty not to engage in speculation that is beyond the scope of the evidence. However, we find no error here in light of the district court's other language on guesswork and speculation.

While Instruction 75-1 correctly permits pyramiding, it does not contain express language instructing the jury that it may draw an inference on another inference. Such a charge is not included because it is deemed unnecessary and confusing. The Seventh Circuit, in fact, has expressly held that such language should be avoided.

No instruction is recommended regarding the two inference rule. It is now settled that the jury should not be instructed that where proven facts would permit two equally probable inferences

judgment must go against the party bearing the burden of proof. It is for the jury to determine which inference is the most reasonable. As the Supreme Court wrote:

> Whenever facts are in dispute or the evidence is such that fair minded men may draw different inferences, a measure of speculation or conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the indecision reached does a reversible error appear.

For this reason, the text emphasizes that the task of drawing inferences is exclusively for the jury, to be exercised with common sense and reason.

It should be emphasized that there are important distinctions between inferences and presumptions. A presumption is an inference which the trier of fact is required to draw from a set of facts. By contrast, an inference is a conclusion which the trier of fact is permitted but not compelled to draw. Any error in instructing the jury in terms of presumptions when only an inference exists may be reversible error. Instruction 75-8, *infra,* discusses presumptions in greater detail.

**Form Instruction 75-2 Effect of Inference on Burden of Proof--Inference Against Defendant Does Not Shift Burden of Proof**

The mere existence of an inference against the defendant does not relieve the plaintiff of the burden of establishing his case by a preponderance of the evidence (*or* clearly and convincingly). If the plaintiff is to obtain a verdict, you must still believe from the credible evidence that he has sustained the burden cast upon him. If he has failed, then your verdict must be for the defendant. If you should find that all of the evidence is evenly balanced, then the plaintiff has failed to sustain the burden of proof and your verdict should be for the defendant.

If and only if you determine, after carefully weighing all the evidence, that the facts favor the plaintiff by the standard I have articulated, then he has met the burden of proof.

**Authority**

**Second Circuit:** *Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, 32 F.2d 209 (2d Cir. 1929).*
**Third Circuit:** *United States v. Cherasky Meat Company, 259 F.2d 89 (3d Cir. 1958); Eckenrode v. Pennsylvania R. Co., 164 F.2d 996 (3d Cir. 1947).*
**Fifth Circuit:** *Golden v. Kentile Floors, Inc., 512 F.2d 838 (5th Cir. 1975); United States v. Roberson, 233 F.2d 517 (5th Cir. 1956).*
**Seventh Circuit:** *The A.L.B. Theatre Corporation v. Loew's Incorporated, 355 F.2d 495 (7th Cir. 1966).*

**Comment**

The foregoing instruction, regarding the effect of an inference on the plaintiff's burden of proof, is appropriate where the jury appears confused or may have been misled into thinking that the mere presence of an inference is enough to mandate a verdict against the party against whom the inference is drawn. For example, while the failure of one party to testify may permit an adverse inference to be drawn against him in a civil case, such an inference would not convert evidence otherwise insufficient into a prima facie case.

Instruction 75-2 explains, in plain English, the procedural principle that the existence of an inference only permits a fact to be found and that it does not carry, shift, or in any way alter the burden of proof. Since the recommended charge properly explains how to balance the evidence and how the burden of proof operates, this charge should be sufficient to eliminate any mistaken impression the jury may have that the drawing of an inference alone shifts the burden of proof.

H:\FORMS\JURY-INSTRUCTIONS\FEDERAL\75.02\10-7-2004

Care must be taken to adapt the recommended charge so that "defendant" is substituted for "plaintiff" and vice versa when the case involves a defendant's counterclaim on which the defendant has the burden. In addition, the text should be modified to substitute "clear and convincing" for "preponderance" in appropriate cases.

This instruction may be included in a charge following Instruction 75-1, defining inferences, or instructions explaining specific inferences.

**Form Instruction 76-1 Witness Credibility**

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. (*If applicable:* It must also be obvious to you that both sides cannot be true and this is where you play your role as jurors.) In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies? You watched the witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he appear to be frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his demeanor--that is, his carriage, behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness and probability of his testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment and your own life experience.

**Authority**

**United States Supreme Court:** *Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S. Ct. 724, 88 L. Ed. 967 (1944).*
**District of Columbia Circuit:** *United States v. American Telephone and Telegraph, 83 F.R.D. 323 (D.D.C. 1979).*
**Second Circuit:** *Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1952); Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946).*
**Sixth Circuit:** *Powers v. Bayliner Marine Corp., 83 F.3d 789 (6th Cir. 1996), cert. denied, 519 U.S. 992 (1996) .*
**Eighth Circuit:** Eighth Circuit Model Civil Jury Instruction 3.03.
**Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 3.7.
**Eleventh Circuit:** Eleventh Circuit Pattern Civil Jury Basic Instruction 3.

**Comment**

Final instructions regarding witness credibility are necessary because as the Supreme Court has held: "[t]he jury were the judges of the credibility of the witnesses ..., and in weighing their testimony had the right to determine how much dependence was to be placed upon it."

Instruction 76-1 is recommended because of its broad coverage of the considerations to be used in determining credibility. Emphasis is properly placed not only on the witness' actual testimony but on his demeanor, which Judge Timbers has described as often being more important. In *Hogan v. New York Times,* Judge Timbers delivered the following charge on credibility, which counsel may wish partially to use in requesting a general credibility instruction, if a witness' behavior on the stand has been especially questionable:

> On the subject of credibility of witnesses, there has been a good deal of discussion here, and I would like to just say this: the question of whether a witness is telling the truth, the question of what weight you are to accord to his or her testimony, is solely your function. It is no one else's. There is no better way to judge the credibility of a witness than to just use your ordinary, down-to-earth, common horse-sense. You deal with people every day in the week in your business affairs and household affairs. You see a witness on the witness stand, and you watch him or her testify. You will, just by instinct, observe twitches or nervousness or indications of whether or not he is

telling the truth. I could charge you all night as to things you might look for, but it is really like carrying coals to Newcastle to suggest to you ladies and gentlemen the rules by which you judge the credibility of a witness, or the weight to be given to a witness' testimony.

Let me just say very simply this: that everything that a witness does counts in your determining where the truth lies. His demeanor on the stand very often is just as important as what he says. So-called "demeanor testimony" often is much more important than the substance of his testimony. Little checks such as this: if a witness is caught in a mistake on cross examination, contradictions in testimony, or errors as to dates, and so forth, sometimes the surest test as to whether you have a truthful witness on the stand is his or her reaction to that mistake once it is called to his attention. Does he try to cover it up, hedge on it, or does he come right out frankly and say, "I was in error with respect to the prior testimony"? Those are the sorts of tests which you can apply.

If you find that any witness has testified falsely with respect to a material fact in the case, you may, but you are not required to, disregard his entire testimony. Or, in your discretion, you may choose to follow that which you believe is true, and reject the balance. It is entirely within your discretion to weigh it, to determine the weight to be given to the testimony and to judge the credibility of the witness.

The emphasis on the witness' manner in order to evaluate the weight to be accorded to their testimony is supported by abundant authority.

As the Supreme Court wrote:

Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced.

Instruction 76-1 is cautious to charge the jury to examine the witness' testimonial demeanor; specifically what he "did on the witness stand" and "his carriage, behavior, bearing, manner and appearance while testifying." It is recognized that there is authority for permitting the fact-finder to

consider a witness' "off the stand appearance or conduct ... when it constitutes an observable physical fact." However, charging the jury on this issue is not recommended here, because the court's emphasis on off-the-stand behavior may lead to questionable debates over such matters as whether one person's courtesy was another's obsequiousness.

Judge Learned Hand explained the importance of the jury's role in determining witness credibility:

> [T]he carriage, behavior, bearing, manner and appearance of a witness--in short, his "demeanor"--is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question that arises in our ordinary affairs, and it is abundantly settled that a jury is as little confined to them as we are. They may, and indeed they should, take into consideration the whole nexus of sense impressions which they get from a witness. This we have again and again declared, and have rested our affirmance of findings of fact of a judge, or of a jury, on the hypothesis that this part of the evidence may have turned the scale. Moreover, such evidence may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies.

The Second Circuit has repeatedly affirmed the importance of reliance of demeanor testimony before a jury, emphasizing that the jury has the opportunity to examine the look or manner of a witness; his hesitation, his doubts, his variations of language, his confidence or precipitance,' his calmness or consideration.

Instruction 76-1 recommends that the jury be instructed to use its common sense in rendering its determination of which witness to believe as probably the single most important guide to reaching its verdict. The Ninth Circuit actually enumerates the factors the jury should consider, as follows:

> In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.
>
> In considering the testimony of any witness, you may take into account:
>
> 1. the opportunity and ability of the witness to see or hear or know the things testified to;
>
> 2. the witness' memory;
>
> 3. the witness' manner while testifying;

4.    the witness' interest in the outcome of the case and any bias or prejudice;

5.    whether other evidence contradicted the witness' testimony;

6.    the reasonableness of the witness' testimony in light of all the evidence; and

7.    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

This formulation is not recommended since its reliance on a numerical list makes it seem more of a checklist and less of the common-sense determination it ought to be. In addition the final paragraph is objectionable in that by stating that the number of witnesses is not *necessarily* determinative, it suggests that this factor may be determinative in some cases.

The Eighth Circuit's formulation is similar to the Ninth's without the numbering:

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, you may consider a witness' intelligence, the opportunity a witness had to see or hear the things testified about, a witness' memory, any motives a witness may have for testifying a certain way, the manner of a witness while testifying, whether a witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

This formulation is also not recommended because of its checklist nature.

The Eleventh Circuit's formulation provides a similar list:

In deciding whether you believe or do not believe any witness I suggest you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness' testimony differ from other testimony or other evidence?

This formulation does approach the issue in a more common-sense manner than the other pattern instructions. However, since it is still constructed as a list of questions and lacks any further explanatory material, it is less preferable than the recommended instruction.

**Form Instruction 76-2 Bias (Modified)**

In deciding whether to believe a witness, you should specifically note any evidence of

hostility which the witness may have towards one of the parties. Likewise, you should consider

evidence of any other interest or motive that the witness may have in cooperating with a particular

party.

It is your duty to consider whether the witness has permitted any such bias or interest to color

his testimony. In short, if you find that a witness is biased, you should view his testimony with

caution, weigh it with care and subject it to close and searching scrutiny.

**Authority**

**United States Supreme Court:** *Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347
(1974).*
**Second Circuit:** *Duke Laboratories, Inc. v. United States, 222 F. Supp. 400 (D. Conn. 1963).*

**Comment**

Courts consistently have held that bias and prejudice are important factors in assessing
credibility and determining the weight the jurors should give to the witness' testimony. All of the
relevant pattern jury instructions include bias and hostility as a determinant of credibility. Instruction
76-2 goes beyond these pattern charges by recommending the jury be told to consider a witness'
affection, interest or motive.

Strategically, counsel should consider specific cautionary instructions regarding credibility
on those issues that will be emphasized in summation. It is appropriate to tailor the requested
instruction to the specific facts involved. An example of weaving facts into the foregoing credibility
charge would be to insert the following after the first sentence of Instruction 76-2:

In this case, you will recall evidence that the defendant Smith asked the witness Jones
to resign from his job. In addition, Smith replaced Jones as head of the division
within the company, assigning Jones to a less prestigious position. If you credit this
evidence, you may find that Jones was angry at the defendant which may have
resulted in bias or hostility towards him.

Instruction 76-2 instructs jurors to consider not only traditional biases such as hostility and
affection, but also more ephemeral notions of *interest* in general. Although at times "interest" may
appropriately fall within the "interest in outcome" topic addressed in Instruction 76-3, *infra,*

frequently a witness may have an obvious *interest in cooperating* with one party, while having no specific interest in the outcome of the case at bar. For example, a paid expert, an employee of one of the litigants, and a witness who has been granted prosecutorial immunity in order to testify will possess clear motives to give testimony that advances one party's claim, although such witnesses may have no stake in the outcome of the case. By cautioning the jury to consider any interest or motive that the witness may have that could color his testimony, Instruction 76-2 addresses precisely these situations.

**Form Instruction 76-3 Interest in Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness' interest has affected his testimony.

**Authority**

**United States Supreme Court:** *Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).*
**Second Circuit:** *Duke Laboratories, Inc. v. United States, 222 F. Supp. 400 (D. Conn. 1963).*

**Comment**

The foregoing instruction consists of four parts: the observation that a witness may have an interest in the outcome; the warning that such an interest creates a motive to testify falsely; the admonition to consider the effect of a witness' interest on his testimony; and the balancing instruction that an interested witness can nevertheless tell the truth.

A witness' interest in the outcome of a case, like bias or prejudice may be an essential factor in determining credibility. In fact, it has been referred to as a "hornbook proposition" that personal motives must be factored in. It is wise to remind the jury, however, that personal interest does not necessarily mean false testimony and they should use their own good judgment.

Again, counsel are urged to consider weaving relevant facts into the requests to charge, by adding an appropriate sentence after the first paragraph. For example, counsel might request language to the following effect:

> In this case, Smith testified that he did not inform the defendant that the source of Smith's tip to buy stock was based on inside information. You may consider in deciding whether to credit this testimony that had Smith testified that he had disclosed this fact, Smith would have exposed himself to further criminal charges of conspiracy to violate the securities laws.

All of the relevant pattern jury instructions include interest as a factor in determining credibility.

**Form Instruction 76-4 Discrepancies in Testimony**

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness' testimony. On the other hand, discrepancies in a witness' testimony or between his testimony and that of others do not necessarily mean that the witness' entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

**Authority**

**United States Supreme Court:** *Quock Ting v. United States, 140 U.S. 417, 11 S. Ct. 851, 35 L. Ed. 501 (1891).*

**Comment**

Counsel should request the court to charge Instruction 76-4 in instances when a witness has been impeached with trivial, prior inconsistent statements, or when other witnesses have differed in their testimony, and there are obviously innocent explanations to the discrepancies. Instruction 76-4 balances the jury's instinct to discredit a witness entirely by charging the jury need not automatically discredit a witness because of inconsistencies. The text further enumerates a series of innocent explanations which the jury may find were responsible for the inconsistencies, ranging from nervousness to differing perceptions. The jury is also told to consider whether the discrepancies are trivial and whether they are willful falsehoods.

It should go without saying that an instruction that the jury must accept in its entirety the testimony of one or another witness whose testimony is in conflict is erroneous. Thus, an instruction stating that in order to find for the plaintiff, the jury must find that the facts were "substantially as [the plaintiff] described them in her trial testimony" is erroneous and likely to lead to reversal on appeal.

As recommended below, a charge more favorable to the impeaching party may also be given, since there is abundant authority that inconsistencies provide ample evidence from which the jury may conclude that a witness was not credible. The text, however, suggests appropriate language which may soften the standard charge in applicable cases. As Judge Learned Hand remarked, a jury should be guided by the "whole nexus of sense impressions which they receive from the witness."

**Form Instruction 76-5 Impeachment by Prior Inconsistent Statements**

You have heard evidence that at some earlier time the witness has said or done something which counsel argues is inconsistent with the witness' trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony.

**Authority**

**District of Columbia Circuit:** *United States v. American Telephone and Telegraph Co., 83 F.R.D. 323 (D.D.C. 1979).*
**Seventh Circuit:** *Saladino v. Winkler, 609 F.2d 1211 (7th Cir. 1979).*

**Comment**

A witness' prior inconsistent statements are frequently relevant to credibility, and impeachment by prior inconsistent statements, as by perjury, can be very damaging. Accordingly, it is necessary to give the jury cautionary instructions on how it should consider such evidence.

Instruction 76-5 is designed exclusively for cases where the prior inconsistent statement is offered for impeachment purposes only. It should not be given when the prior statement is admissible for its truth, as in the case of testimony from a previous trial used in a retrial. Similarly, if the prior statement was made under oath subject to the penalty of perjury at a deposition, it may be offered as affirmative proof under Rule 801(d)(1)(A) and Instruction 76-5 should not be given. In those circumstances, no special attention need be called to the prior statement.

It is questionable whether a special charge should be given if the prior statement is utilized on the basis that it omits something the witness subsequently includes in his trial testimony. Instruction 76-5 leaves impeachment by omission to counsel's argument.

Since a witness' prior inconsistent statements are relevant to credibility and are often effective, cautioning instructions are generally appropriate.

The pattern instructions of the Fifth and Eleventh Circuits are similar. The Fifth Circuit instruction provides:

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said [or did] something, [or failed to say or do something] that was different from the testimony he gave at the trial.

The Eleventh Circuit instruction provides:

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend upon whether it has to do with an important fact or with only an unimportant detail.

The fuller explanation provided to the jury by Instruction 76-5 is preferred.

**Form Instruction 76-9 Expert Witnesses--Generally**

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

**Authority**

**Second Circuit:** *United States v. Simon, 425 F.2d 796 (2d Cir. 1969), cert. denied, 397 U.S. 1006 (1970).*
**Seventh Circuit:** Seventh Circuit Pattern Criminal Jury Instruction 3.07.
**Ninth Circuit:** *United States v. Rrapi, 175 F.3d 742 (9th Cir. 1999), cert. denied, 528 U.S. 912 (1999);* Ninth Circuit Model Civil Jury Instruction 3.8.
**Eleventh Circuit:** *United States v. Herring, 955 F.2d 703 (11th Cir. 1992), cert. denied, 506 U.S. 926 (1992);* Eleventh Circuit Pattern Civil Jury Instructions, Basic Instruction 5.1.

**Comment**

When expert testimony is introduced at trial, and is denominated as such for the jury, there arises a significant danger that the jury will unduly credit the witness because the judge has characterized the witness as an "expert." Accordingly, the recommended instruction avoids the term "expert" and instead characterizes the testimony as "opinion testimony," a more neutral term. The published pattern instructions split roughly evenly on this point, with most adopting the

recommended language, while others continue to refer to the witnesses as expert witnesses or "persons described as experts."

Instruction 76-9 emphasizes that the expert testimony is designed to *assist* the jury to reach an independent decision on the facts, and that an expert's opinion is not a *substitute* for the jury's common sense evaluation of the evidence. The jury is reminded that they are the exclusive triers of the facts.

In some cases, it may be appropriate to include a summary of the expert testimony in the test of the instruction itself. However, counsel should consider whether or not this is necessary, particularly in light of the statement of some courts questioning the wisdom of marshaling evidence in cases that are brief and uncomplicated.

**Form Instruction 77-3 Compensatory Damages (Modified)**

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendant's violation of the plaintiff's rights. If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate it for any injury proximately caused by the defendant's conduct.

These are known as "compensatory damages." Compensatory damages seek to make the plaintiff whole--that is, to compensate it for the damage suffered. Damages for a breach of contract should place the wronged party in as good a position as that party would have been if the breaching party had fully performed its obligations under the contract.)

I remind you that you may award compensatory damages only for injuries that a plaintiff proves were proximately caused by a defendant's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative losses, but only for those losses that a plaintiff has actually suffered.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

**Authority**

**United States Supreme Court:** *Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S. Ct. 248, 75 L. Ed. 544 (1931)* .

**Fourth Circuit:** *Kinty v. United Mine Workers of America, 544 F.2d 706 (4th Cir. 1976), cert. denied, 429 U.S. 1093 (1977)* .

**Fifth Circuit:** *Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962)* ; Fifth Circuit Pattern Civil Jury Instruction 15.2.

**Seventh Circuit:** *U.C. Castings Co. v. Knight, 754 F.2d 1363 (7th Cir. 1985)* ; *Luria Brothers & Co., Inc. v. Pielet Brothers Scrap Iron Metal, Inc., 600 F.2d 103 (7th Cir. 1979)* .

**Federal Circuit:** *Bluebonnet Savings Bank v. United States, 339 F.3d 1341 (Fed. Cir. 2003)* .

## Comment

The Supreme Court has noted a preference for abandoning any distinction between lost past wages and lost future wages. The Court prefers to consider any diminution in earning capacity as lost future wages. Courts have recognized, however, the difficulty with this approach in some circumstances and have allowed the "dichotomous approach" to past and future lost wages if necessary. The Sixth Circuit cautions against carrying the "wholeness" concept too far, especially in actions involving personal injury. Specifically, the Sixth Circuit has held that in personal injury cases, it was reversible error to instruct that:

Nothing can fairly be deemed compensation which does not put the injured party in as good a condition as he would have been if the injury has not occurred. Nothing short of this is adequate.

The Sixth Circuit explained that such an instruction is potentially misleading, "as it might not be possible ever to restore plaintiff to a condition as good as he was prior to the accident, and no amount of money could accomplish this purpose."

In all instances, it is important to refrain from using "descriptive phrases which are likely to appeal to the emotions of the jurors" when instructing the jury on compensatory damages. The Third Circuit, for example, has found objectionable an instruction that:

The loss of companionship, comfort, society, solace, and protection is a loss for which a wrongdoer must pay.

The Fourth Circuit noted that the jury should be directed to base any award of compensatory damages on the evidence in the case, not on the *ad damnum* clause of the plaintiff's complaint. In *Smith v. Brady,* for example, the trial judge instructed that:

[The jury may] allow such damages ... as will be a fair and just compensation for the injury which the plaintiff sustained, not to exceed $ 100,000, the amount claimed in plaintiff's complaint.

The allegations of the complaint as to the amount of damages ... are not to be considered by you ... except in this one respect, that the amount ... claimed ... does fix a maximum limit, and you are not permitted to award the plaintiff more than that amount.

On appeal, the Fourth Circuit called this instruction "not a correct statement of the law" as "the propriety of the verdict is tested by the evidence, not the ad damnum clause." The Fourth Circuit further criticized the instruction as potentially misleading on the grounds that it might "leave the erroneous impression that any verdict not exceeding the plaintiff's claim is proper."

Although it is true that the jury is entitled to disregard the damages sought, verdicts still must be based on reasonable evidence, must not represent mere compromise, and must fairly compensate the aggrieved party. The Fourth Circuit has explained that this rule does not mean that plaintiff's difficulty in calculating his damages will immunize a defendant from liability. Rather, the court and jury must "do the best it can in fixing fairly the damages due." The evidence must be weighed for guidance in reaching an "equitable judgment."

The burden of proving the extent of consequential damages is on the plaintiff, but mathematical precision is not required; proof of the loss must only be reasonable under the circumstances. In particular, a defendant whose wrongful act creates the difficulty in assessing damages is not entitled to complain that the amount of damages escapes accurate measurement. As the Eleventh Circuit explained, whoever is responsible for the wrongful act should bear the risk of any uncertainty in the calculation of damages. According to *Story Parchment Co. v. Paterson Parchment Paper Co.*

> Where from the nature of the case damages could not be measured with certainty by a fixed rule, the facts and circumstances tending to show the probable amount of such damages should be submitted to the jury to enable them to form such reasonable and probable estimate, as in the exercise of good sense and sound judgment they shall think will produce adequate compensation. There is no sound reason in such a case, as there may be, to some extent, in actions upon contract, for throwing *any* part of the loss upon the injured party, which the jury believe from the evidence he has sustained; though the precise amount cannot be ascertained by a fixed rule, but must be a matter of opinion and probable estimate. And the adoption of any arbitrary rule in such a case, which will relieve the wrong-doer from any part of the damages, and throw the loss upon the injured party, would be little less than legalized robbery.

In *Mason City Center Assoc. v. City of Mason City*, for example, an award was reversed on the grounds that it was highly speculative. The court noted that: "[I]f the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated." In *Mason City* the city's claimed damages were based on an allegation of interference, causing the city to delay "about one year" in selling bonds to finance its share of expenses in completing a small project. The evidence, however, indicated no attempt by the city to sell the bonds, and, therefore, the city failed to incur the interest costs that it used to

calculate its damages. Furthermore, the court stated that it was impossible to know what the interest costs would be if the bonds were sold in the future. Similarly, where a manufacturer failed to specify its recurring costs, did not explain how and in what amounts an on-line computer system for which it had contracted would have reduced certain costs, and failed to account for the cost of operating the computer system itself, a judge refused simply to "hypothecate a number" and denied an award for those losses.

Some circuits have suggested that certain types of claims, such as those arising from Eighth Amendment violations, inherently require specificity in damages proof.

By contrast, where a plaintiff established the volume of business and level of profits earned at a facility prior to the interruption and the parallel figures after the reopening, the Eighth Circuit has held a trial court's findings of lost profits was neither unreasonable nor speculative. Likewise, where a plaintiff provided comparisons of sales and costs of late mailings with test mailings of the publications as well as overhead--it was held that there existed sufficient documentation to permit the jury to reach a reasonable estimate of damages.

The Eleventh Circuit allowed a plaintiff to prove damages for a lost fishing catch by demonstrating the performance of three other fishing vessels during the plaintiff's downtime. The plaintiff thereby satisfied the burden of proof to a reasonable certainty, in that the comparison vessels were subject to the same factors, such as inclement weather, which would have affected the plaintiff's vessel had it been able to fish.

The District of Columbia held that an employer proved lost profits with reasonable certainty after it showed depreciation of a contract for a specified period of time due to an employee's breach of loyalty when the employee obtained a contract that otherwise would have been awarded to the employer.

However, the Second Circuit refused to allow plaintiff to recover consequential damages in the form of lost profits which purportedly could have been received by the charter and intended use of a "phantom fleet of future ship purchases." The Court held that any prospective profits that are too remote, contingent or speculative, do not meet the "reasonable certain standard" and are not recoverable as consequential damages.

In order to ensure that the jury does not speculate, the court is encouraged to use the recommended language in Instruction 77-3. The last two paragraphs on this subject derive from a charge specifically approved by the Seventh Circuit in *Luria Bros. & Co. v. Pielet Bros. Scrap Iron.*

Interestingly, three of the four published circuit pattern instructions omit an instruction defining compensatory damages. The Fifth Circuit has adopted Instruction 77-3, with minor variations in language.

The following are additional charges involving specific types of compensatory damage; they may be appropriate in certain cases:

Compensatory Damages

Compensatory damages may include an award for such conscious physical and/or emotional pain and suffering which plaintiff has endured and is likely to continue as a direct consequence of defendant's conduct. Compensatory damages should also include the fair and reasonable value of the expenses necessarily incurred by plaintiff as the result of his injuries as well as any future expenses reasonably certain to be incurred. Plaintiff may also be compensated for the loss of earnings that he has suffered to date as a result of the injuries as well as loss of future earning capacity.

1.    Proper Bases for Award of Damages:

a.    Injury or Disability

If you find from a preponderance of the evidence that plaintiff is entitled to a verdict, then you should award plaintiff an amount sufficient to compensate him for any bodily injury sustained and any resulting disability or disfigurement experienced in the past or likely to be experienced in the future.

b.    Pain and Suffering

If you should find that the plaintiff is entitled to a verdict, then you should award him a sum that will reasonably compensate him for any pain, suffering, and mental anguish already suffered by him as a proximate result of the injury in question.

In addition to any award for pain and suffering by the plaintiff up to now, if you find from the evidence in the case that any of plaintiff's injuries are permanent so that he is reasonably certain to suffer in the future from the same cause, you must make such allowance in your verdict. In considering this, you should take into account both the nature and extent of plaintiff's injury and the period of time that has elapsed from the date of the injury to the present time and the period of time that the plaintiff can be expected to live. A person of plaintiff's age would be expected to live _____ years according to the mortality tables. Such tables are, of course, nothing more than statistical averages. The life expectancy figure I have suggested, therefore, is not binding upon you, but may be considered by you in combination with the evidence you have heard concerning

the condition of plaintiff's health, his habits, employment and
activities in determining what the plaintiff's present life expectancy
is.

c.    Medical or Other Expenses

If you find that plaintiff is entitled to a verdict, in arriving at the
amount of the award, you should include a sum for plaintiff's
reasonable and necessary expenditures incurred as a result of this
injury. Such expenditures may include payments for medicine and
medical services, physicians' and nurses' care, hospitalization, and x-
rays (plaintiff claims $ _____ in medical expenses).

If you find that plaintiff has sustained permanent injuries, then you
may include an award for medical expenses that he is reasonably
certain to incur in the future.

d.    Lost Earnings or Profit

Plaintiff alleges that by reason of his claimed injuries, proximately
resulting from defendant's conduct, he has sustained damages for loss
of earnings.

Plaintiff is entitled to be reimbursed for the loss of earnings he has
suffered as the result of his injury from the time that he was injured
until the present date.

In computing loss of earnings, you must not include any periods of
time when the plaintiff was able to work, whether he actually worked
or not. This is because the plaintiff is required to keep his damages
to a minimum or to mitigate his damages. This means that he must try
to obtain employment.

Any award you make for earnings lost to this date may not be
estimated, but must be calculated from the number of days that you
find plaintiff was disabled and the amount that you find he would
have earned on those days had he not been disabled.

An additional element of this case is future earnings. If you find that
plaintiff's earning capacity has been diminished as a result of his
injuries, then you should include an award for future lost earnings.
Such an award must be based on a number of factors, including the
following: plaintiff's earnings prior to the injury; the condition of his

health and the extent of his injury; his probable future earnings and prospects for advancement prior to the injury, and the extent to which the injury has diminished those prospects; the length of time plaintiff would probably have worked had he not been injured; the nature and hazards of plaintiff's employment; and any other circumstances that might affect plaintiff's earning capacity. The mortality tables that I discussed earlier estimate that plaintiff has a work expectancy of _____ years. If you find that plaintiff is entitled to an award for diminution of future earning capacity, then you should calculate that amount for the period that plaintiff will suffer such diminution.

e.    Loss of Consortium

Plaintiff (plaintiff's spouse) is entitled to recover for any loss of consortium suffered by reason of (his wife's) (her husband's) injury. In determining the amount of such damage, you should consider plaintiff's acts of love and sexual intercourse performed and the extent to which the injuries sustained in the accident have prevented him/her from performing such acts after the incident.

f.    Loss of Services

If you find that plaintiff is entitled to recover, you may then consider whether plaintiff's (husband/wife) may recover for loss of (his wife's/her husband's) services, comfort, society, and attentions as a result of his/her injuries. In determining the amount of such damage you may take into consideration the nature and extent of plaintiff's services and society prior to the incident, including his disposition, temperament, character and attainments, the interest he manifested in his home, and in the comfort, happiness and general welfare of the members of his family and the service he rendered in the household.

Based upon the evidence you have heard and from your own observation, experience and knowledge applied to the facts and circumstances of this case, you should award plaintiff's (wife/husband) an amount which will compensate him/her for the loss he/she has sustained and is reasonably certain to sustain in the future as a result of plaintiff's inability after his/her injuries to perform such services and to provide such society.

g.    Damages to Property

Plaintiff is entitled to damages for injury sustained to his property. The compensation for damage to plaintiff's property is arrived at either by computing the reasonable expense of necessary repair for the property plus the difference between the fair market value of the property immediately before the incident complained of and the fair market value after the property is repaired, or in the alternative, the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence. You may award for property damage the lesser of these two figures only.

If you also find that the plaintiff was deprived of the use of his property until he could secure (repair or replacement), then he is entitled to recover an additional sum sufficient to compensate him for the loss of use of such property. An award for loss of use of property, however, is limited to only such time as is reasonably required to obtain (repair or replacement) of the property.

It should be noted that the jury should not be instructed that compensatory damages may reflect a defendant's financial condition; rather, compensatory damages should be based upon the harm suffered. This is in contrast to punitive damages, which permit consideration of a defendant's financial condition.

Upon request, the jury also should be instructed that it should not compensate twice for the same injury merely because it was caused by the violation of two different legal rights, such as one federal and the other state.

**Form Instruction 78-1 Right To See Exhibits and Hear Testimony; Communications With Court**

You are about to go into the jury room and begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, you may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony--in fact any communication with the court--should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**Authority**

**Fifth Circuit:** Fifth Circuit Pattern Civil Jury Instruction 2.12.
**Eighth Circuit:** Eighth Circuit Model Civil Jury Instruction 3.06.
**Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 3.14.
**Eleventh Circuit:** Eleventh Circuit Pattern Civil Jury Instruction 8.

**Comment**

Some courts send all exhibits to the jury upon commencement of deliberations. In that event, the jury should be informed:

> During the trial, several items were received into evidence, and they will be sent into the jury room with you when you begin to deliberate. Examine the exhibits if you think it would help you in your deliberations.

While the general practice is to provide jurors with whatever exhibits they request, and to read those portions of the transcript specified, trial courts will be accorded substantial deference in the management of the trial deliberations.

The requirement in Instruction 78-1, that all communications be written, conforms to the view taken by the Supreme Court that "[a]ny ex parte meeting or communication between the judge and the foreman of a deliberating jury is pregnant with possibilities of error." The rule in criminal

cases that the court should not engage in ex parte communications with the jury and that all notes exchanged between them should be preserved for the record has been extended to civil cases.

Although a jury's unsolicited disclosure of its numerical division may not necessitate reversal, the Supreme Court has held that this information is unnecessary and irrelevant to the court's supervision of jury deliberations. Moreover, the court may be inhibited in dealing with a subsequent deadlock note if the jury reveals its division on the verdict. Instruction 9-1 therefore admonishes the jury not to communicate the extent of its disagreement. Certainly, the trial court should not inquire into the numerical division of the jury, since such probes may have an unsettling and coercive effect on the deliberation.

In *Fillippon v. Albion Vein Slate Co.,* the Supreme Court held that supplementary instructions should not be given without notice to the parties or without the opportunity for counsel to object. The dangers of ex parte contacts between judge and jury are illustrated in cases which were reversed because such contacts may have introduced prejudicial evidence, influenced the jury's damage award, coerced a verdict, or closed off a party's legal theory.

All of the circuit pattern instructions contain an instruction on communicating with the court. They differ only in the amount of detail provided to the jury. The Fifth Circuit instruction provides:

> If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

The Fifth Circuit instruction includes the following admonition in an earlier paragraph:

> You must never disclose to anyone, not even to me, your numerical division on any question.

The Eighth Circuit instruction provides:

> [I]f you need to communicate with me during your deliberations, you may send a note to me through the marshall or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone--including me--how your votes stand numerically.

The Ninth Circuit instruction provides:

> If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal [or bailiff], signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any

member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone--including me--how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

Finally, the Eleventh Circuit instruction provides:

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshall who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

**Form Instruction 78-3 Duty To Deliberate/Unanimous Verdict**

You will now return to decide the case. In order to prevail, the plaintiff (*or* defendant) must sustain his or her burden of proof as I have explained to you with respect to each element of the complaint (*or* affirmative defense *or* counterclaim). If you find that the plaintiff has succeeded, you should return a verdict in his or her favor on that claim. If you find that the plaintiff failed to sustain the burden on any element of the claim, you should return a verdict against the plaintiff. (Similarly, if you find that the defendant has failed to sustain his or her burden with respect to any element of the defendant's affirmative defense (*or* counterclaim), you must return a verdict against the defendant on that defense or claim.)

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

## Authority

**United States Supreme Court:** *American Publishing Co. v. Fisher, 166 U.S. 464, 17 S. Ct. 618, 41 L. Ed. 1079 (1896).*
**Second Circuit:** *Grace Lines, Inc. v. Motley, 439 F.2d 1028 (2d Cir. 1971).*
**Fifth Circuit:** Fifth Circuit Pattern Civil Jury Instruction 2.11.
**Eighth Circuit:** Eighth Circuit Model Civil Jury Instruction 3.06.
**Ninth Circuit:** *Jazzabi v. Allstate Ins. Co., 278 F.3d 979 (9th Cir. 2002)* ; Ninth Circuit Model Civil Jury Instruction 4.1.
**Tenth Circuit:** *Bledsoe v. Garcia, 742 F.2d 1237 (10th Cir. 1984).*
**Eleventh Circuit:** Eleventh Circuit Pattern Civil Jury Basic Instruction 7.1, 7.2.

## Comment

Instruction 78-3 is designed first to inform the jury that it must return a verdict against the party seeking relief unless the party has sustained his burden, and, second, to encourage the jury to exchange their opinions openly during their deliberations.

Instruction 78-3 should be modified in cases when the parties stipulate that "a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury" pursuant to *Rule 48 of the Federal Rules of Civil Procedure* . In these cases, the first clause of the third sentence of the second paragraph should be omitted and in its place, the Court should charge: "Your verdict must represent an agreement of at least _____ jurors."

Even when unanimity is not required, jurors should be encouraged to consult with one another and seriously consider each other's opinions in arriving at their verdict, provided they are not called upon to surrender their honest conviction for the sake of unanimity. Cases are uniform upholding verdicts despite the claim that individual jurors were persuaded to adopt the majority's reasoning. As one judge explained:

> [T]here is every reason to encourage full and free discussion among jurors and their readiness to give up their views and to yield to the persuasions of their fellow jurors, so long as they do not surrender their honest convictions solely for that reason. Unanimity is possible only if a minority is willing to go along with the majority.

Instruction 78-3 conforms with this rationale and with cases which hold that the duty to consult should be coupled with a reminder not to surrender conscientiously held beliefs for the purpose of reaching a unanimous verdict.

Instructions which have the effect of discouraging thoughtful discussion of the issues, particularly by implying a time limit on deliberations, should be scrupulously avoided.

The Ninth Circuit recommends the following charge on the jury's duty to deliberate:

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

The language of Instruction 78-3 is preferred to the Ninth Circuit pattern instruction because it includes a reminder that each claiming party must satisfy his burden as to each element, and the instruction is drafted in recognition of the defendant's right to assert counterclaims. The duty to deliberate language is preferred because of its simplicity, clarity and brevity.

Instruction 78-3 requires jury unanimity, and should be modified if the parties stipulate that a majority verdict would suffice. This instruction conforms to the rule that unless the parties stipulate to a majority decision civil juries in federal forums must return a unanimous verdict. The unanimity requirement, "one of the peculiar and essential features of trial by jury at the common law" finds support in the seventh amendment and, impliedly, in *Rule 48 , Federal Rules of Civil Procedure.* One district court has written that the constitutional foundations of the unanimity requirement have been swept away by the Supreme Court which upheld local rules for six member juries in federal civil cases; however, this reasoning has not been followed by the Third or Tenth Circuits.

When an affirmative defense is raised, the court should instruct the jury that they must come to a unanimous agreement on the defense before reaching the issue of damages. Thus, in *Jazzabi v. Allstate Ins. Co.,* it was error to instruct the jury that if the plaintiff established his claim (or if that issue was undisputed), then the plaintiff is entitled to damages if the jury fails to reach unanimous agreement on an affirmative defense. In this situation, the following instruction would be exemplary:

With respect to [specify claim], if you find unanimously that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff on that claim, unless you also find unanimously that the defendant has proved an affirmative defense, in which event your verdict should be for the defendant on that claim.

**Form Instruction 78-4 Deadlock Charge: Reaching Agreement**

(*In all circuits, except the District of Columbia and Seventh Circuits:*)

This case is important for the plaintiff and for the defendant. Both parties, as well as the court, have expended a great deal of time, effort and resources in seeking a resolution of this dispute.

It is desirable if a verdict can be reached, but your verdict must represent the conscientious judgment of each juror.

While you may have honest differences of opinion with your fellow jurors during the deliberations, each of you should seriously consider the arguments and opinions of the other jurors. Do not hesitate to change your opinion if, after discussion of the issues and consideration of the facts and evidence in this case, you are persuaded that your initial position is incorrect. However, I emphasize that no juror should vote for a verdict unless it represents his conscientious judgment.

(*If given as a supplementary charge:* You are reminded that the plaintiff, to prevail, must prove each element of his claim(s) in accordance with the standards, that I explained to you before. Likewise, the defendant, to prevail on his counterclaim(s), must prove each element in accordance with the standards I described before.)

(*In the District of Columbia and Seventh Circuits:*)

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change

your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the

weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere

purpose of returning a verdict.

You are not partisans. You are judges--judges of the facts. Your sole interest is to ascertain

the truth from the evidence in the case.

## Authority

**United States Supreme Court:** *Allen v. United States, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).*
**District of Columbia Circuit:** *United States v. Thomas, 449 F.2d 1177 (D.C. Cir. 1971).*
**Fourth Circuit:** *United States v. Boone, 759 F.2d 345 (4th Cir. 1985); United States v. Sawyers, 423 F.2d 1335 (4th Cir. 1970).*
**Seventh Circuit:** *United States v. Silvern, 484 F.2d 879 (7th Cir. 1973) (en banc).*
**Eighth Circuit:** Eighth Circuit Model Civil Jury Instruction 3.07.
**Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 4.7.

## Comment

Despite criticism that the so-called *Allen* charge is improperly coercive, this deadlock charge has been upheld in federal civil cases as a fair and reasonable way to urge jurors to reach a verdict. Instructions emphasizing the desirability of a verdict and encouraging jurors to re-examine their own views in light of the evidence and the arguments advanced by their fellow jurors have been uniformly upheld.

Nonetheless, any *Allen* or deadlock charge must be coupled with a reminder that jurors are not expected to yield their conscientiously held beliefs for the sake of a verdict. Any suggestion that a verdict is required or that a jury's failure to return a verdict would be irresponsible or improper is a potential basis for reversal. In this regard, inquiries about the numerical division of the jury have also been found impermissibly coercive.

The Seventh Circuit prohibits courts from giving a supplementary instruction unless it was also given in the main charge. This requirement is premised on the view that inclusion of the *Allen* charge in the main instructions will make its repetition in the event of a deadlock less coercive. In recognition of the potential dangers of verdict-urging, and the logic of the Seventh Circuit's concern, trial courts may wish to include the language of Instruction 78-4 in the main charge.

The reminder of the burden of proof requirements in the supplementary version of Instruction 78-4 also reduces the coercive impact of the instruction. This is consistent with the admonition by the First Circuit that such a reminder is "the leaven making [the *Allen* charge] palatable."

Some circuits, while approving the use of *Allen* charges, have cautioned against unduly strong language to persuade jurors to reach a verdict. Thus, the Third Circuit has held that it is reversible error for a court to "direct a juror to distrust his own judgment if he finds a large majority of the jurors taking a view different from his." The Court reasoned that such an instruction

departs from the sole legitimate purpose of a jury to bring back a verdict based on the law and the evidence received in open court, and substitutes therefore a direction that they be influenced by some sort of Gallup Poll conducted in the deliberation room.

On the other hand, the Fourth Circuit has approved an instruction similar in other respects to the recommended instruction, but including the following language:

If much the larger number are for the plaintiff, a dissenting juror or jurors should consider whether his or her disagreement is a reasonable one when it differs from the opinion of so many persons equally honest, equally intelligent with him or herself.

If, upon the other hand, the majority is for the defendant, the minority ought to ask themselves whether they might not reasonably question the correctness of a judgment which is not concurred in by the majority, provided, of course, that each juror who finds himself in the majority shall listen and give consideration to the views of the minority.

This language cannot be recommended because it is excessively coercive, and because it appears to provide different standards depending upon whether the majority of jurors favor the plaintiff or the defendant.

In the exercise of their supervisory powers, the Seventh and District of Columbia Circuits have required that verdict-urging instructions be consistent with the American Bar Association's Standards for Criminal Justice:

Length of deliberations; deadlocked jury:

a. Before the jury retires for deliberation, the court may give an instruction which informs the jury:

    i.    that in order to return a verdict, each juror must agree thereto;
    ii.   that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

      iii.    that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

      iv.    that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

      v.    that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

b.    If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

c.    The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

As indicated, both the Seventh and District of Columbia Circuits mandate that specific language be used in the proper verdict-urging instruction in civil cases.

The Eighth Circuit pattern instruction presents an evenhanded modified version of its criminal pattern instruction. It provides:

As stated in my instructions, it is your duty to consult with one another and to deliberate with a view to reaching agreement if you can do so without violence to your individual judgment. Of course you must not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinions of other jurors or for the mere purpose of returning a verdict. Each of you must decide the case for yourself; but you should do so only after consideration of the evidence with your fellow jurors.

In the course of your deliberations you should not hesitate to re-examine your own views, and to change your opinion if you are convinced it is wrong. To reach a unanimous result you must examine the questions submitted to you openly and frankly, with proper regard for the opinions of others and with a willingness to re-examine your own views.

Finally, remember that you are not partisans; you are judges--judges of the facts. Your sole interest is to seek the truth from the evidence. You are the judges of the credibility of the witnesses and the weight of the evidence.

You may conduct your deliberations as you choose. But I suggest that you carefully [re]consider all the evidence bearing upon the questions before you. You may take all the time that you feel is necessary.

There is no reason to think that another trial would be tried in a better way or that a more conscientious, impartial or competent jury would be selected to hear it. Any future jury must be selected in the same manner and from the same source as you. If you should fail to agree on a verdict, the case is left open and must be disposed of at some later time.

[Please go back now to finish your deliberations in a manner consistent with your good judgment as reasonable persons.]

The Ninth Circuit has recently amended its pattern instruction, eliminating the now-repudiated suggestion that if agreement cannot be reached, the dissenting jurors should defer to the majority. The revised instruction provides:

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now retire and continue your deliberations.

**Form Instruction 78-5 Selection of Foreperson**

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

**Authority**

**Eighth Circuit:** Eighth Circuit Model Civil Jury Instruction 3.06.
**Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 4.1.

**Comment**

Some courts designate the first juror as the foreperson, in which case Instruction 78-5 should be modified accordingly.

## Form Instruction 78-6 Return of Verdict

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that (*if applicable:* each of) you should be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

### Authority

**Fifth Circuit:** Fifth Circuit Pattern Civil Jury Instruction 2.12.
**Eighth Circuit:** Eighth Circuit Model Civil Jury Instruction 3.06.
**Ninth Circuit:** Ninth Circuit Model Civil Jury Instruction 4.3.
**Eleventh Circuit:** Eleventh Circuit Pattern Civil Jury Instruction 8.

### Comment

All of the circuit pattern instructions contain language similar to the first paragraph of Instruction 78-6. The verdict form, even if signed and sealed by the foreman, does not constitute an official verdict. As one court has noted: "the only verdict is that which the jury announces orally to the court, and which alone is received and recorded as the jury's findings." The second paragraph has been added to make clear to each juror that any disagreement with the stated verdict should be voiced before the verdict is received and recorded. It should be modified if the parties have stipulated to a non-unanimous verdict pursuant to *Rule 48 of the Federal Rules of Civil Procedure* .

## **CHAMPAIGN'S PROPOSED JURY INSTRUCTION REGARDING 47 U.S.C. § 253**

Ladies and gentlemen, I will now provide you with some instructions regarding the federal law that governs the right-of-way fees that a City like Champaign may charge a telecommunications carrier like McLeodUSA.

### 1. **Background & Purpose of the 1996 Act**

In 1996, Congress passed a bill known as the Telecommunications Act of 1996, or the 1996 Act. President Clinton signed the 1996 Act into law on February 8, 1996.[1]

One of the purposes of the 1996 Act was to open local telephone markets to competition.[2] Before the 1996 Act, local telephone service was provided by monopoly carriers. The monopoly local carriers were primarily the "Baby Bell" carriers that were once part of AT&T. In Illinois, the local "Baby Bell" carrier was Illinois Bell, otherwise known as Ameritech. In most places, Ameritech and the other Baby Bells maintained legal monopolies as providers of local phone service. AT&T continued to provide only long distance services.[3]

In the 1996 Act, Congress sought to create competition between multiple local telephone companies. Congress believed that competition in the local telephone market would benefit American consumers by lowering telephone service prices.

As you have heard, McLeodUSA is a carrier that provides competing local service under the 1996 Act, in competition with Ameritech (which is now known as SBC), and long distance service in competition with AT&T.

---

[1]*Quest v. City of Santa Fe*, 224 F.Supp.2d 1305.

[2]*Indiana Bell Tel. Co. v. McCarty*, 362 F. 3d 378, 382 (7th Cir. 2004)("The Telecommunications Act of 1996 seeks primarily to promote competition in the previously monopoly-driven local telephone service market").

[3]*AT&T Communications v. Illinois Bell Tel. Co.*, 349 F. 3d 402, 404 (7th Cir. 2003)(referring to "the 'Baby Bell' descendants of American Telephone & Telegraph, spun off in 1982 as part of the divestiture that ended the national telephone monopoly."

**2. Preemption of Anticompetitive Laws (§ 253(a).)**

To further its goal of competition, Congress sought in the 1996 Act to remove barriers that might prevent new carriers like McLeod from offering competing local service. In Section 253(a) of the 1996 Act, Congress provided:

> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate [i.e. long-distance] or intrastate [i.e. local] telecommunications service.

Under this rule, no local authority, such as Champaign, may enforce a local law or regulation that keeps new carriers out of a local market, or makes it more difficult for them to compete against the established carriers. Provided, however, that Congress may not violate the U.S. Constitution when creating such restrictions.[4]

If you find that all or a portion of Champaign's rights-of-way ("ROW") fees do not violate the standards of Section 253, you should find that Champaign may enforce those fees against McLeodUSA.

**3. Rules Applicable to ROW Fees**

Section 253 contains some specific tests regarding rights-of-way ("ROW") fees which cities like Champaign are allowed to collect from carriers like McLeodUSA. In particular, Section 253(c) provides:

> Nothing in [Section 253] affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and non discriminatory basis, for use of public rights-of-way on a nondiscriminatory basis.[5]

---

[4]*Quest at page 1317*

[5]47 U.S.C. § 253(a)

In other words, a City's ROW fees must be "nondiscriminatory" and require "fair and reasonable compensation." If a City's ROW fee meets those two tests, it is not preempted (or nullified) by Section 253.

The first test, nondiscrimination, requires that a City treat carriers in an even-handed manner.

The second test, the "fair and reasonable compensation" limitation, permits a City to collect compensation because of a carrier's use of the ROW. That is, the City may use its fees to raise its general revenue, but the revenues must be fair and reasonable.[6]

The burden of demonstrating that City ROW fees "may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate [i.e. long distance] or intrastate [i.e. local] telecommunications service" is upon McLeod.[7]

If you find that McLeodUSA has met its burden in this regard, then you must determine whether the City has met its burden under Section 253(c) of the Act.[8]

If McLeod does so, then the burden of demonstrating that City ROW fees meet the two tests is upon the City. That is, unless Champaign shows that its fees are "nondiscriminatory" and call for "fair and reasonable compensation," it may not enforce the agreements.

If you find that all or a portion of Champaign's ROW fees are "discriminatory" or are "unfair and unreasonable" under the standards I have just explained, you should find that Champaign may not enforce those fees against McLeodUSA.

If you find the fees not to be discriminatory, then you must find that Champaign may enforce its agreements..

---

[6] *Quest at page 1325*

[7] *Quest at page 1322*

[8] 47 U.S.C § 253(c)