**DEFENDANTS' PROPOSED JURY INSTRUCTION NO 1.
REGARDING BACKGROUND OF 47 U.S.C. § 253**

Ladies and gentlemen, I will now provide you with some instructions regarding the federal law that governs the right-of-way fees that a city like Champaign may charge a telecommunications carrier like McLeodUSA.

**Background & Purpose of the 1996 Act**

In 1996, Congress passed a bill known as the Telecommunications Act of 1996, or the 1996 Act. President Clinton signed the 1996 Act into law on February 8, 1996.[1]

One of the purposes of the 1996 Act was to open local telephone markets to competition.[2] Before the 1996 Act, local telephone service was provided by monopoly carriers.[3] The monopoly local carriers were primarily the "Baby Bell" carriers that were once part of AT&T.[4] In Illinois, the local "Baby Bell" carrier was Illinois Bell, otherwise known as Ameritech.[5] In most places, Ameritech and the other Baby Bells maintained legal monopolies as providers of local phone service.[6]

---

[1] Pub. L. 104-104, 110 Stat. 56.

[2] *Indiana Bell Tel. Co. v. McCarty*, 362 F.3d 378, 382 (7th Cir. 2004) ("The Telecommunications Act of 1996 seeks primarily to promote competition in the previously monopoly-driven local telephone service market").

[3] *Id.*

[4] *AT&T Communications v. Illinois Bell Tel. Co.*, 349 F.3d 402, 404 (7th Cir. 2003) (referring to "the 'Baby Bell' descendants of American Telephone & Telegraph, spun off in 1982 as part of the divestiture that ended the national telephone monopoly"); *see also Verizon Comms. v. FCC*, 535 U.S. 467, 475-76 (2002) (breakup of AT&T "did nothing, however, to increase competition in the persistently monopolistic local markets, which were thought to be the root of natural monopoly in the telecommunications industry. These markets were addressed by provisions of the Telecommunications Act of 1996, that were intended to eliminate the monopolies enjoyed by the inheritors of AT&T's local franchises").

[5] *Id.* ("Illinois Bell, a subsidiary of Ameritech, [was] one of the original Bell Operating Companies (or BOCs, as the divestiture decree called the Baby Bells"); *see also Ill. Bell Tel. Co. v. WorldCom Techs.*, 179 F.3d 566, 568 (7th Cir. 1999) ("Illinois Bell Telephone Company, doing business as Ameritech Illinois (Ameritech) is the incumbent local exchange carrier in Chicago and most of the rest of Illinois").

[6] *South Austin Coalition Community Counsel v. SBC Comms.*, 274 F.3d 1168, 1170 (7th Cir. 2001) ("When the local-service subsidiaries of AT & T were spun off in the 1980s, most people assumed that local phone service is a natural monopoly. This was a premise of the divestiture, and each Baby Bell was constituted as a monopoly in its service area"); *see also AT&T Corp. v. Iowa Utils. Bd.*, 526 U.S. 366, 371 (1999) ("Until the 1990's, local phone (continued)

In the 1996 Act, Congress sought to end the Baby Bells' monopolies on local service.[7] In the place of those monopolies, Congress sought to create competition between multiple local telephone companies.[8] Congress believed that competition in the local telephone market would benefit American consumers by lowering telephone service prices.[9]

As you have heard, McLeodUSA is a carrier that provides competing local service under the 1996 Act, in competition with Ameritech (which is now known as SBC).

Given                   _____
Given as Modified       _____
Refused                 _____
Withdrawn               _____

---

service was thought to be a natural monopoly. States typically granted an exclusive franchise in each local service area to a local exchange carrier").
[7] *MCI Telecomms. Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 560 (7th Cir. 1999) ("The Act seeks to introduce competition into local telephone service markets by ending the historic monopoly held by incumbent local exchange carriers").
[8] *Verizon Comms. v. FCC*, 535 U.S. 467, 489 (2002) (provisions of the 1996 Act were "designed to give aspiring competitors every possible incentive to enter local retail telephone markets").
[9] *Voicestream Minneapolis v. St. Croix County*, 342 F.3d 818, 828 (7th Cir. 2003) (Congress enacted 1996 Act to "promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers") (internal quotations and citations deleted).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO 2.
## REGARDING 47 U.S.C. § 253(a)

**Preemption of Anticompetitive Laws (§ 253(a).)**

To further its goal of competition, Congress sought in the 1996 Act to remove barriers that might prevent new carriers like McLeod from offering competing local service.[10] One particular barrier that Congress targeted in the 1996 Act was state or local rules that hindered competition.[11] Under the Constitution, Congress has the power to preempt, or nullify, state and local rules.[12] In Section 253(a) of the 1996 Act, Congress used that power and provided:

> No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate [*i.e.,* long-distance] or intrastate [*i.e.,* local] telecommunications service.[13]

Under this rule, no local authority, such Champaign, may enforce a local law or regulation that keeps new carriers out of a local market, or makes it more difficult for them to compete against the established carriers.[14] A local rule does not need to be impossible for a new carrier to overcome to run afoul of Section 253.[15] So long as the local rule makes the playing field unequal, Section 253 says that the rule cannot be enforced.[16]

---

[10] *AT&T Corp. v. Iowa Utils. Bd.*, 526 U.S. 366, 371 (1999) (Under the 1996 Act, "[s]tates may no longer enforce laws that impede competition, and incumbent [carriers] are subject to a host of duties intended to facilitate market entry").
[11] 47 U.S.C. § 253(a).
[12] U.S. Const. Art. VI.
[13] 47 U.S.C. § 253(a).
[14] *TCG New York v. City of White Plains*, 305 F.3d 67, 77 (2d Cir. 2002) (§ 253(a) triggered when local rule "materially inhibits the ability of any competitor or potential competitor to complete in a fair and balanced legal and regulatory environment").
[15] *New York v. City of White Plains*, 305 F.3d 67, 76 (2d Cir. 2002) (competitive prohibition "does not need to be complete or 'insurmountable' to run afoul of § 253(a)"); *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1269 (10th Cir. 2004) ("A regulation need not erect an absolute barrier to entry in order to be found prohibitive"); *see also RT Comms. v. FCC*, 201 F.3d 1264, 1284 (10th Cir. 2000) (same).
[16] *TCG New York v. City of White Plains*, 305 F.3d 67, 77 (2d Cir. 2002) (§ 253(a) requires "fair and balanced legal and regulatory environment"); see also *In re California Payphone Ass'n*, 12 F.C.C.R. 14191 ¶ 31 (1997) (same).

If you find that all or a portion of Champaign's rights-of-way ("ROW") fees violate the standards of Section 253, you should find that Champaign may not enforce those fees against McLeodUSA.

Given          _____
Given as Modified  _____
Refused        _____
Withdrawn      _____

# DEFENDANTS' PROPOSED JURY INSTRUCTION NO 2.
## REGARDING 47 U.S.C. § 253(c)

**Rules Applicable to ROW Fees.**

Section 253 contains some specific tests regarding rights-of-way ("ROW") fees imposed by cities like Champaign upon carriers like McLeodUSA.[17] In particular, Section 253(c) provides:

> Nothing in [Section 253] affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis.[18]

In other words, a city's ROW fees must be "nondiscriminatory" and "fair and reasonable." If a city's ROW fee meets those two tests, it is not preempted (or nullified) by Section 253.[19]

The first test, nondiscrimination, requires that a city treat carriers in an even-handed manner.[20]

The second test, the "fair and reasonable" limitation, requires that a city limit its ROW fees to an amount representing the costs imposed on the city because of a carrier's use of

---

[17] 47 U.S.C. § 253(c).
[18] *Id.*
[19] *Id.*
[20] *New York v. City of White Plains*, 305 F.3d 67, 72-73, 76 (2d Cir. 2002) (where new carriers required to pay fee not paid by incumbent carrier, "competitive neutrality would be undermined."); *New Jersey Payphone Ass'n v. Town of West New York*, 299 F.3d 235, 234 (3d Cir. 2002) (city may not, "consistent with the requirement to be competitively neutral, force companies into a competition the terms of which favor larger telecommunications larger telecommunications companies . . . over smaller competitors").

the ROW.[21] That is, the city may not use its fees to raise its general revenue, but must only collect reimbursement for expenses that carriers cause.[22]

The burden of demonstrating that city ROW fees meet the two tests is upon the city attempting to enforce the fees.[23] That is, unless Champaign has shown that its fees are "nondiscriminatory" and "fair and reasonable," it may not enforce them.

If you find that all or a portion of Champaign's ROW fees are not "nondiscriminatory" or not "fair and reasonable" under the standards I have just explained, you should find that Champaign may not enforce those fees against McLeodUSA.

Given          _____
Given as Modified   _____
Refused        _____
Withdrawn      _____

---

[21] *XO Mo. v. City of Md. Heights*, 256 F. Supp. 2d 987, 992-93 (E.D. Mo. 2003) (fees "must be directly related to a company's use of the local rights-of-way"); *see also PECO Energy Co. v. Township of Haverford*, No. 99-4766, 1999 WL 1240941, at *6 (E.D. Pa. Dec. 20, 1999) (ROW fees "must be directly related to the company's use of the right-of-way); *Bell Atlantic-Md. v. Prince George's County*, 49 F. Supp. 2d 805, 817 (D. Md. 1999).

[22] *XO Mo. v. City of Md. Heights*, 256 F. Supp. 2d 987, 992-93 (E.D. Mo. 2003); *PECO Energy Co. v. Township of Haverford*, No. 99-4766, 1999 WL 1240941, at *6 (E.D. Pa. Dec. 20, 1999).

[23] *Corp. v. City of Santa Fe*, 380 F.3d 1258, 1273 & n.10 (10th Cir. 2004) ("city had the burden of demonstrating that the [ROW] ordinance came under § 253(c)); *New Jersey Payphone Ass'n v. Town of West New York*, 299 F.3d 235, 234 (3d Cir. 2002) ("the burden of proving that the regulation comes within the safe harbor in Section 253(c) falls on the defendant municipality"); *XO Mo. v. City of Md. Heights*, 256 F. Supp. 2d 987, 995 (E.D. Mo. 2003) ("Under the [1996 Act], the municipality must show that the fees it seeks are both fair and reasonable").

## DEFENDANTS' PROPOSED INSTRUCTION NO. 4

## COUNTS I, II, AND III - BREACH OF CONTRACT

Where there is a written contract in evidence, the intentions of the parties must be determined from its language alone, not from what the parties thought.[24]

Given          _____
Given as Modified   _____
Refused        _____
Withdrawn      _____

---

[24] *Kallman v. Radioshack Corp.*, 315 F.3d 731, 736 (7th Cir. 2002); *Kaplan v. Sure Bros.*, 266 F.3d 598, 604 (7th Cir. 2001); *Young v. Allstate Ins. Co.*, 351 Ill. App. 3d 151, 157, 812 N.E.2d 741, 748-49 (1st Dist. 2005); *City National Bank of Murphysboro v. Reiman*, 236 Ill. App. 3d 1080, 601 N.E.2d 316 (5th Dist. 1992).