E-FILED
Monday, 18 October, 2004  06:39:32 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA/DANVILLE DIVISION

| | | |
|---|---|---|
| THE CITY OF CHAMPAIGN, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | No. 02-2252 |
| | ) | |
| MCLEODUSA, INC., and MCLEODUSA | ) | Hon. Harold Baker |
| TELECOMMUNICATION SERVICES, | ) | |
| INC., | ) | |
| *Defendants*. | ) | |

### McLEODUSA'S PRETRIAL
### BRIEF CONCERNING APPLICABILITY OF 47 U.S.C. § 253

Defendants McLeodUSA Incorporated and McLeodUSA Telecommunications Services, Inc. (collectively, "McLeodUSA"), respectfully submit the following pretrial brief concerning the applicability of 47 U.S.C. § 253 to the right-of-way ("ROW") fees at issue in this case.

### Introduction

During the pretrial hearing in this matter on October 16, 2004, and before *voir dire* on October 18, 2004, the Court suggested that the Court may hold that the Telecommunications Act of 1996, 47 U.S.C. § 253, does not apply to the ROW fees claimed by Champaign in this case because those fees were assessed under contracts rather than directly assessed under laws or regulations. The Court suggested that 47 U.S.C. § 253 ("Section 253") may not apply to such fees, because such contracts might be "freely negotiated," unlike a municipal regulation, and thus not subject to Section 253.

McLeodUSA has not before addressed the precise issue raised by the Court because Champaign has never argued that Section 253 does not apply. McLeodUSA has maintained its defense under Section 253 since the February 2003 filing of its answer to

Champaign's complaint. Though Champaign has since disagreed on the merits that Section 253 preempts the fees it seeks, Champaign has never argued—including in response to McLeodUSA's initial and renewed motions for summary judgment—that the provision has no application at all. Indeed, Champaign's only pending motion concerning Section 253 asserts that Section 253 violates the Constitution (which is incorrect), but nowhere suggests that the provision, if constitutional, does not apply.

To the extent the Court now raises the question *sua sponte*, McLeodUSA explains below that Section 253 undoubtedly applies to ROW agreements such as the ones at issue here. The plain terms of Section 253 apply to "State or local statute[s], or regulation[s], or *other State or local legal requirement[s]*." 47 U.S.C. § 253(a) (emphasis added). This broad language unambiguously covers *any* municipal legal requirement governing the use of city ROW, regardless of whether the requirement is embodied in an ordinance, regulation, or contract. For at least two related reasons, there can be no doubt that Section 253 applies here:

(1) Champaign, as a matter of City ordinance, forbids carriers from using City ROW without first entering into written arrangements requiring the carrier to pay fees to the City. Champaign law further sets a specific rate of $1.00 per foot of conduit as a "minimum requirement" of such a required ROW agreement. Contracts resulting from these legal requirements are not "freely negotiated," and, as a practical matter, have the same effect as law or regulation. Federal courts, including the Second and Tenth Circuits, have applied Section 253 to nearly identical municipal schemes. Indeed, McLeodUSA is unaware of *any* case from any federal court holding that Section 253 does not apply to a ROW agreements required by a municipality.

(2) Even putting Champaign's ordinances aside, ROW contracts between a city and a carrier cannot be considered "arm's-length" transactions because cities have monopoly power over access to public ROW within their boundaries. It is undisputed and clear from the City's own ordinance that, if a carrier wants to provide telephone service in Champaign, it *must* obtain Champaign's permission to use the City's ROW. There is no alternative source for access to public ROW within the City. If Champaign makes unfair demands in negotiations, a carrier's only real

choices are to accept Champaign's terms, or to abandon its plans to serve customers within the City. Congress enacted Section 253 to address precisely this problem.

For both reasons, the Court should hold that Section 253 applies to the ROW fees Champaign seeks to collect in this case.

## Background

### Champaign's Ordinances Require ROW Agreements.

Champaign's Municipal Code provides that no party may place "conduit or transmission or utility equipment" in the City's ROW for more than a few hours without "first obtaining the written consent of the City as hereinafter provided for in this article." Champaign Mun. Code Art. X § 30-230 (Ex. 1). The Municipal Code then provides two methods to obtain the "written consent" of the City: (a) requesting a permit to "temporarily" occupy the City's ROW for less than 180 days; or (b) requesting that the City enter into a "license agreement giving the consent of the City to use City streets or other property." Art. X §§ 30-232, 30-233. The second option, the "license agreement," is the only way to install non-temporary facilities under the City's ordinance, and is the mechanism at issue here.

Champaign's ordinances further establish specific "minimum requirements" governing the terms of the required license agreements. Under City law, the City Manager is authorized to enter into an agreement "subject to section 30-234." Art. X §§ 30-233. That section, in turn, sets out several "minimum requirements," including:

> *Compensation*. Annual payments *shall* be made to the City in the amount of one dollar ($1.00) per lineal foot of licensed property of ten (10) feet or less in width. Compensation for licensed property in excess of ten (10) feet in width shall be at fifteen cents ($0.15) per square foot). The amounts herein set for compensation *shall*, on January first of each year beginning January 1, 1988, be adjusted by the Consumer Price Index published by the United States Department of Labor, Chicago area, all items for all urban

> consumers, or other generally recognized index which succeeds the Consumer Price Index.

Art. X § 30-234(d) (emphasis added).

The City's ordinances further provide that any person maintaining facilities in the City's ROW without a written agreement, shall "be irrebutably presumed to have consented to the formation of a contract" with the City, and that the minimum requirements of "section 30-234 shall be deemed to have been in effect." Art. X § 30-235.

The above ordinances were enacted on December 15, 1987, before the formation of any of the ROW agreements in this case. (*See* Ex. 1, bates-stamped page 1008, for date reference.)

**Champaign's ROW Agreements.**

Consistent with Champaign's "minimum requirements" for ROW agreements, the two agreements that McLeodUSA challenges as violative of Section 253 applied ROW fees of $1.00 per conduit lineal foot, adjusted for inflation as required by the ordinance. The 1994 agreement provided for conduit fees of $1.22 per foot, and the 1997 agreement provided for conduit fees of $1.321 per foot. (Pretrial Order Joint Statement ¶¶ 9, 21.)

The 1996 agreement, which McLeodUSA has not challenged as discriminatory under federal law, applies a rate of 38 cents per "access line"—a different standard than under the "minimum requirements" ordinance. (Pretrial Order Joint Statement ¶ 15.) Champaign entered into that contract with CCTS in 1996 after it concluded that the 1996 Telecommunications Act *required* it to offer CCTS the same terms that it had provided to Ameritech. (Ex. 2.) In a 1996 memorandum prepared by the City Attorney that is on the exhibit list attached to the Pretrial Order, Champaign concluded that "new Federal Telecommunications legislation specifies that municipalities which enter into agreements with new market entrants

4

must do so in a nondiscriminatory manner." (Ex. 2.) Champaign further noted that, under the 1996 Act, "[t]he terms of the [proposed] agreement must be substantially the same as the [City's] agreement with Ameritech." (*Id.*)

## Argument

### Section 253 Applies to Contracts Required by City Law.

Section 253 applies to the ROW agreements at issue in this case. Section 253 applies to any "State or local legal requirement[s]." 47 U.S.C. § 253(a). The agreements McLeodUSA challenges in this case and their compensation terms were *required* by City law.

Under Champaign's municipal code, McLeodUSA and its successors were flatly prohibited from accessing City ROW without first obtaining the City's written permission. Champaign Mun. Code Art. X, § 30-230. The only form of "written permission" available under City ordinance for non-temporary facilities was a "license agreement." *Id.* § 30-233. And City law further required that any such license agreement contain a "minimum requirement" ROW fee of at least $1.00 per conduit foot. *Id.* § 30-234.

The 1994 and 1997 ROW agreements precisely track those requirements of City law. Using the terminology of the City's ordinance, both agreements are labeled "License Agreement." The terms of the agreements also track the City's "minimum requirement" for compensation, setting out ROW fees slightly higher than $1.00 per foot, after the adjustment for inflation set out in the ordinance. On their face, then, the contracts were "legal requirements" of Champaign's municipal law, subject to Section 253. Indeed, Champaign's own legal memoranda show that the City itself has concluded that its ROW contracts are governed by Section 253. (Ex. 2.)

That conclusion is confirmed by the multiple decisions of federal courts finding that Section 253 applies to nearly identical municipal ROW schemes. For example, in *TCG New York v. City of White Plains*, 305 F.3d 67 (2d Cir. 2002), the Second Circuit invalidated a city's ROW scheme that "forbid[] any telecommunications provider from using the rights-of-way of the City without obtaining a franchise or revocable license from the Common Council that incorporates the requirements of the Ordinance." *Id.* at 72. Under that system, the city would provide a access to ROW under a contractual "franchise agreement" with a carrier that was subject to "some negotiations." *Id.* at 71. In *White Plains*, a carrier that had already negotiated and submitted a franchise agreement under this scheme challenged the ROW fee requirements of the agreement. *Id.* at 72. The Second Circuit applied Section 253 and found that the ROW fees required under the agreement violated federal law. *Id.* at 80.

That the ROW fees in *White Plains* were imposed under a franchise agreement, rather than directly under a municipal ordinance, did not trouble the Second Circuit. Indeed, in considering a waiver clause that the city required in the franchise agreement, the Second Circuit expressly held that "the [1996 Act] does *not* create a collection of default rules that municipalities and service providers may contract around." *Id.* at 82 (emphasis added). The same principles apply here.

Likewise, in *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258 (10th Cir. 2004), the Tenth Circuit considered a municipal ordinance that required carriers to obtain from the city "a lease agreement for the use of a right-of-way." *Id.* at 1262. As in Champaign, the ordinance provided that ROW fees would be imposed under that separate agreement, not directly under a regulation. *Id.* The Tenth Circuit considered fees to be imposed under the required agreements—which were to be set according to an appraisal value—and found that the fees

violated Section 253. *Id.* at 1272. Like the Second Circuit, the Tenth Circuit did not alter its analysis because the ROW fees at issue would be paid under a contract (a lease) rather than directly under an ordinance. *Id.*

The same result applied in *TC Systems v. Town of Colonie*, 263 F. Supp. 2d 471 (N.D.N.Y. 2003), where the district court considered a draft franchise agreement proposed by a municipality and found that the agreement violated Section 253. *Id.* at 484. Once again, the Court did not hesitate to apply Section 253, even though some of the challenged requirements were provided in a contract rather than a city ordinance or regulation. *Id.*

As in the above cases, there can be no question that Champaign's required ROW agreements represent "local legal requirement[s]" subject to Section 253. 47 U.S.C. § 253(a). Indeed, McLeodUSA is unaware of any federal case holding that a city may avoid Section 253 by imposing ROW requirements in contracts rather than regulations. Such a rule would create a loophole in the statute eviscerating the federal law.

**The Agreements in this Case Were Not Freely Negotiated.**

Even putting aside Champaign's ordinances requiring ROW agreements exactly like ones McLeodUSA challenges here, the ROW agreements cannot be considered "freely negotiated" or "arm's-length" transactions that evade review under Section 253.

At the outset, McLeodUSA and its predecessors did not give up their rights under Section 253 by entering into the City's ROW contracts. The 1994 agreement was formed *before* the 1996 enactment of Section 253. The predecessor corporation that entered into that agreement thus obviously could not negotiate with Champaign on the same footing as after the passage of the federal law. And, under the 1997 agreement—the only other contract that McLeodUSA contends imposes a discriminatory rate—the parties both expressly reserved their positions on

the applicability of the 1996 Act, providing: "[t]he parties recognize, acknowledge and hereby preserve their respective rights pursuant to the Federal 1996 Telecommunications Act and [an Illinois law], and regulations or legal interpretations of the same, and execution of this Agreement is not a waiver of any rights or obligations thereunder." (Ex. 3 § 16.)  Therefore, even if the parties could be said to have meaningfully "negotiated" despite Champaign's minimum legal requirements, any such negotiations would not have impacted the application of Section 253.

Moreover, by their very nature, ROW agreements with municipalities are not "freely negotiated."  Cities like Champaign have the exclusive power to allow access to public ROW within their boundaries.  In that respect, they possess the power of a monopolist or a provider of "essential facilities" in antitrust law, and are not subject to the normal rules of give-and-take negotiations. *See, e.g.*, *United States v. Terminal R.R. Ass'n*, 224 U.S. 383, 397 (1912).  Indeed, in a pre-1996 Act case, the Illinois Supreme Court found that cities would be authorized to impose "legalized extortion" if not limited in the ROW fees that they could assess. *AT&T v. Village of Arlington Heights*, 156 Ill.2d 399, 408-09, 620 N.E.2d 1040, 1044 (Ill. 1993).  It is undisputed in the parties' Pretrial Order that "McLeodUSA needs to use the City's ROW to compete in Champaign."  (Pretrial Order ¶ 37.)   If Champaign required unfair terms in negotiations, McLeodUSA's only recourse would be to abandon its effort to provide service in the City.  But the very point of Section 253 was to prevent local authorities from using their exclusive powers to "frustrate the 1996 Act's explicit goal of opening *all* markets to competition." *In re Petition of the State of Minnesota*, 14 F.C.C.R. 21,697 ¶ 9, 1999 WL 124406, at *21701 (F.C.C. 1999) (emphasis added).

Recognizing this problem of unequal bargaining power, federal courts have routinely invalidated municipal ROW schemes that leave the terms of ROW access to the discretion of local authorities. *E.g.*, *Santa Fe*, 380 F.3d at 1270 (voiding provision entrusting ROW access to "unfettered discretion" of local authorities); *XO Missouri v. City of Maryland Heights*, 256 F. Supp. 2d 987, 996 (E.D. Mo. 2003) (same). For the same reason, this Court should reject any claim that Champaign's discretionary decisions to negotiate ROW agreements or particular ROW access terms escape the purview of Section 253.

## Conclusion

For the reasons set out above, the Court hold that 47 U.S.C. § 253 applies to the ROW fees Champaign seeks to collect in this case.

                Respectfully submitted,
                McLeodUSA Incorporated and
                McLeod Telecommunications Services, Inc.

                By:    s/ Edward F. Malone
                          One of their attorneys

                      Edward F. Malone
                      Daniel J. Weiss
                      JENNER & BLOCK LLP
                      One IBM Plaza
                      Chicago, Illinois  60611
                      (312) 222-9350
                      (312) 840-7517 (fax)

October 18, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2004, I electronically filed the foregoing Pretrial Brief Concerning Applicability of 47 U.S.C. § 253 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Thomas W. Kelty
    tkelty@keltylaw.com

    s/ Daniel J. Weiss

    Edward F. Malone
    Daniel J. Weiss
    Attorneys for Defendants
    Jenner & Block LLP
    One IBM Plaza
    Chicago, Illinois  60611
    (312) 222-9350
    (312) 840-7517 (fax)
    emalone@jenner.com
    dweiss@jenner.com