E-FILED
Monday, 08 October, 2004 06:44:05 PM
Clerk, U.S. District Court, ILCD

## A LICENSE AGREEMENT

### TO USE REAL PROPERTY BETWEEN MC LEOD USA TELECOMMUNICATIONS SERVICES, INC. AND THE CITY OF CHAMPAIGN, ILLINOIS

McLeod USA Telecommunications Services, Inc. (hereinafter referred to as "Grantee"), is an Iowa corporation authorized to do business in the State of Illinois, and is authorized to do business in the State of Illinois, and the CITY OF CHAMPAIGN, ILLINOIS ("City"), is a municipal corporation organized under the laws of the State of Illinois.

*Section 1. Grant of License; Location.* For the good and valuable consideration specified herein, the Grantee is hereby given license upon the terms and subject to the conditions of this Agreement to install, maintain and use a conduit, buried or aerial, system ("System") above, within and under the public right-of-way hereinafter specified, for a total linear feet of twenty thousand nine hundred eighty-two (20,982), on the centerline of license. Width of license described in this Section shall be ten (10) feet as measured typically from the right-of-way line toward the street pavement. At street crossings, said license shall be projected in a straight line across or turn at an angle of ninety degrees (90°). Refer to Exhibit "A" for license routing and offset dimensions.

*Section 2. Term of Agreement.* Subject to the conditions herein stated, the above-described uses of the public way shall exist by authority herein granted for a period of twenty-five (25) years from and after the date of approval of this Agreement by the City.

*Section 3. Location; Compliance with Ordinances.* The specific location of said privileges shall be as shown on Exhibit "A" and the Plans and Specifications for the Champaign Buried Cable, Aerial Cable and Conduit as generally shown on the Plans approved October 9, 1997, and approved by the City Engineer (hereafter "Plans"), which by reference are made a part of this Agreement. Said System shall be installed, maintained and used in accordance with

the ordinances of the City of Champaign, and the directions from time to time given by the City Engineer of the City.

Section 4. Payments. The Grantee agrees to make annual payments to the City of Champaign as compensation for the privileges herein granted in the sum of One Dollar and Thirty-two and one-tenth cents ($1.321) per lineal foot, or Twenty-seven Thousand Seven Hundred Seventeen Dollars and twenty-two cents ($27,717.22) for each of the first five (5) years, and thereafter in amounts to be computed as hereinafter provided. Payments shall be made in advance on or before October 31, 1997, and on or before November 1st of each year thereafter during which this Agreement is in effect. Payment checks shall be drafted to the City of Champaign and shall be sent to the City Clerk, City of Champaign, 102 North Neil, Champaign, Illinois 61820, or such other location specified in writing by the City.

Section 5. Adjustment of Payment. The compensation specified in the preceding Section shall be adjusted at five (5) year intervals as of the following dates: January 1, 2002; January 1, 2007; January 1, 2012; and January 1, 2017. The adjustment shall be made by increasing the then existing compensation rate by the total change in the Consumer Price Index during the five (5) years immediately preceding the adjustment date. In no event shall the compensation be less than that established for the previous five (5) year term of this Agreement. The Consumer Price Index to be used shall be that published for the Chicago area by the United States Department of Labor (Avg. of 1982-1984 = 100, All Items for All Urban Consumers).

Section 6. Transference; Grantee Remains Liable. The privilege granted under this License Agreement may not be transferred to any other person or entity without the express written approval of the City; provided, however, that the Grantee may assign the

License Agreement to a legal entity which is a successor entity or a subsidiary or affiliate of McLeod USA Telecommunications Services, Inc., without consent, if prior written notice is given. Such approval shall not be unreasonably withheld. In the event the privilege herein granted is terminated or the Grantee transfers title to the System or vacates or ceases to use the System, the Grantee shall, nevertheless, remain liable to the City under the provisions hereof, until said System herein authorized is removed, and the public way is restored as herein required. Acceptance of payment from an entity or person other than the Grantee shall not constitute a waiver of this provision.

Section 7. Installation and Maintenance. The System hereafter installed shall be so placed and all work in connection with such installation shall be so performed as not to interfere with ordinary travel on the right-of-way of the City unless specifically authorized by the City Engineer, or with any water, gas or sewer pipes or other utility conduits or cable television conduits or wires then in place, or hereafter placed. Grantee, after doing any excavating, shall leave the surface of the ground in the same condition as existed prior to such excavation, except as provided in the Plans. All sidewalks, parkways or pavements, including driveway alley approaches, disturbed by said Grantee shall be restored by it, and the surface to be restored shall be with the same type of material as that existing prior to its being disturbed unless otherwise specified by the City Engineer. In the event that any such sidewalk, parkway or pavement shall become uneven, unsettled, or otherwise require repairing because of such disturbance by the Grantee or the Grantee's construction operations, then said Grantee, as soon as climatic conditions will permit, shall promptly upon receipt of notice from the City so do, cause such sidewalk, parkway or pavement to be repaired or restored at the Grantee's expense

Champaign
Doc. No.    1353

to the standards required by the City at the time the work is performed and to the satisfaction of the City Engineer.

If the Grantee fails, after reasonable notice, to maintain the System or the public way in which the System is installed as set forth in this Agreement, then the City may, but shall not be obligated to, correct or cause such sidewalk, parkway or pavement to be repaired or restored at the Grantee's expense to the standards required by the City at the time the work is performed and to the satisfaction of the City Engineer.

If the Grantee fails, after reasonable notice, to maintain the System or the public way in which the System is installed as set forth in this Agreement, then the City may, but shall not be obligated to, correct or cause the correction of the condition, and charge the entire cost thereof to the Grantee. The Grantee shall, within twenty-one (21) days after presentation of a bill for the cost thereof, pay to the City such costs.

This provision shall not be construed to negate or modify the provisions of Section 11 of this Agreement or act as an election of remedies.

<u>Section 8</u>.

(a) *Repeal.* The permission and authority herein granted may be revoked by the City if the Grantee fails or neglects to comply with the conditions of this License Agreement, but only after being given a reasonable amount of time to cure any defaults.

(b) *Relocation of System*. Upon the determination by the City Council for good cause shown that it is necessary to relocate said System or any part thereof, the Grantee shall relocate the System and shall bear the sole expense of relocation.

(c) *Removal Upon Termination*. Upon termination of the privileges herein granted, by lapse of time or otherwise, the Grantee without cost or expense to the City, shall remove the System herein authorized and restore the public way to as good a condition as existed prior to such installation and to the reasonable satisfaction of the City Engineer. In the event of the failure, neglect or refusal of said Grantee to remove the System, the City shall have the choice of either performing said work and charging the cost thereof to said Grantee or determining that said work shall be performed by a contractor, and billing the Grantee for the cost of said contract. The cost incurred by the City in such System removal shall be promptly paid by the Grantee within twenty-one (21) days after a bill for costs is deposited in the mail or presented to Grantee, or the City may proceed against the surety bond of the Grantee or pursue any other remedies provided by law.

*Section 9. Insurance*. The Grantee shall, at its own expense, provide and maintain liability insurance in the sum of at least One Million Dollars ($1,000,000.00). The aforementioned insurance coverage shall be maintained at all times by the Grantee until the System referred to in this Agreement is removed and the public way is properly restored as herein required. The indemnification required hereunder shall not be limited by the amount of the insurance to be maintained hereunder. Said insurance shall name the City as an additional insured.

*Section 10. Permit Insurance*. The permission and authority herein granted shall not be exercised and no work to the System shall be done until a permit authorizing such

work shall have been issued by the Director of Public Works. Such permit shall be subject to revocation for violation of any part of this Agreement or violation of any of the ordinances or regulations of the City. Grantee shall not be required to pay the City any fee for such permit; provided, however, if the Grantee performs work upon the System without first obtaining a permit, the Grantee shall pay double the existing permit fee for excavators.

Section 11. Bond. The Grantee agrees to furnish the City a surety bond in the amount of Ten Thousand Dollars ($10,000.00), written by a company authorized to do business in the State of Illinois. Said bond shall be in existence during the term of this Agreement and shall be conditioned upon the Grantee's performance of its obligations pursuant to this Agreement. In the event the Grantee, after reasonable notice, fails to perform pursuant to any term of this Agreement, then the City may in addition to other remedies recover on the surety bond. For the City to recover from the Grantee or surety company under this Section, and except as otherwise provided herein, it is not necessary that the City first make any expenditure or perform any work or have any work performed by private contractor(s). The Director of Public Works is hereby authorized to determine what cost would be involved to perform such work and he may present said claim to the Grantee and/or surety company, which claim shall be paid within twenty-one (21) days after presentation.

Section 12. Indemnification. The Grantee shall hold and save the City, its officers, agents and employees (collectively referred to within this Section as "City"), harmless from any and all liability and expense, including but not limited to judgments, costs and damages, and attorney's fees arising out of the existence, installation, removal, relocation, alteration, repair, maintenance, restoration and any other aspect of the System herein referred to; and also hold the City harmless from any and all damages to the System on account of the

location, construction, alteration, repair or maintenance of any public street, sidewalk, right-of-way, bridge, underpass, subway, tunnel, vault, sewer, water main, conduit, pipe, pole and all aspects of any other utility or public facility.

Except for gross negligence or willful or wanton conduct by the City, the Grantee shall indemnify and hold the City harmless from any and all damages and claims arising out of damage to the System caused in whole or in part by the City, its officers, employees and agents or by any other person(s), whether or not they have a permit from the City and whether or not they are associated with the City in any direct or indirect manner.

Grantee waives all claims, except for gross negligence or willful or wanton conduct by the City, its officers, employees and agents, against the City, whether arising directly, by subrogation, assignment or otherwise, for any and all damages, direct or indirect, resulting from damage to the System structures done, in whole or in part, by the City or by any other person(s) whether or not they have a permit from the City and whether or not they are associated with the City in any direct or indirect manner. As part of this provision, the Grantee shall, at its own expense, defend all suits and does agree to indemnify and save harmless, except for gross negligence or willful or wanton conduct by the City, its officers, employees and agents, the City from and against any and all claims and liabilities of whatever nature arising from the granting of authority herein to the Grantee or imposed upon or assumed by it, or by reason of or in connection with any damage to life, limb or property as a result of any of the installed System constructed under or by virtue of this Agreement, and shall save and keep harmless the City from any and all damages, judgments, costs and expenses of every kind, that may arise by reason thereof.

Notice in writing shall be promptly given to Grantee of any claim or suit against the City which, by the terms hereof, the Grantee shall be obligated to defend, or against which the Grantee has hereby agreed to save and keep harmless the City. The City shall furnish to the Grantee all information in its possession relating to said claim or suit, and cooperate with said Grantee in the defense of any said claim or suit. The Grantee agrees to provide notice in writing to the City Attorney of the City of any claim or suit against the Grantee and/or its officers or employees which may directly affect the System or directly or indirectly affect this Agreement or the property referred to herein, whether or not the City has been made a defendant or respondent to the legal action. The City may, if it so desires, assist in defending any such claim or suit. The Grantee further agrees that it will pay the costs incurred by the City for the necessary defense of any suit against the City resulting from this Agreement. The Grantee will not rely upon governmental immunity afforded to the City. The indemnification and waiver provided in this Section shall be enforceable solely by the City and shall not operate as an indemnification or waiver as to any third party.

Section 13. *No Automatic Renewal; Holdover Fees*. This twenty-five (25) year license is not automatically renewable and any request for authority for the continued maintenance and use of the public ways as herein described after this Agreement expires or is otherwise terminated in any manner must be specifically obtained from the City Council subject to the terms and conditions that may be agreed upon at that time. Provided, however, if for any reason, the Grantee continues to utilize the System beyond the expiration of the term, it shall pay to the City an amount which is double the previous year's payment (prorated to a daily charge) for each and every day the System remains upon the City's right-of-way. Renewal

authority shall be requested by the Grantee not less than ninety (90) days prior to the expiration of this Agreement.

Section 14. Termination. This Agreement may be terminated by the City, if after at least twenty-one (21) days written notice to the Grantee, the Grantee fails to remedy an alleged breach of the Agreement specified in such notice. If the alleged breach is incapable of being remedies within said twenty-one (21) days, this Agreement may be terminated unless the Grantee has taken substantial steps to remedy the alleged breach within said twenty-one (21) days and notified the City of such steps.

Section 15. Effective Date. This Agreement shall be in full force and effect upon execution by the parties hereto.

Section 16. Legal Considerations. The parties recognize, acknowledge and hereby preserve their respective rights pursuant to the Federal 1996 Telecommunications Act and the Illinois Municipal Telecommunications Infrastructure Maintenance Fee Act (P.A. 90-154), regulations or legal interpretations of the same, and execution of this Agreement is not a waiver of any rights or obligations thereunder. The parties additionally acknowledge that if and when the Grantee begins to furnish telecommunications services originating within Champaign County, that the Grantee will be subject to the 911 surcharge which is currently in effect or which may hereinafter be amended, which is generally applicable to other telecommunications service providers within this jurisdiction. The Grantee shall notify the City, in writing, at least w twenty-eight (28) days prior to providing any such telecommunications services.

CITY OF CHAMPAIGN, ILLINOIS
a municipal corporation

By: _Paul G. Bey_
~~Mayor~~ Assistant City Manager

ATTEST: _[signature]_
City Clerk

DATE: 10-15-97

APPROVED AS TO FORM FOR CITY:

_[signature]_
City Attorney

MC LEOD USA TELECOMMUNICATIONS SERVICES, INC.

By: _[signature]_
Its: Director

ATTEST: _[signature]_
Its: Assoc. Gen. Counsel

DATE: 9-19-97

APPROVED AS TO FORM:

_[signature]_
Its Attorney