E-FILED
Wednesday, 20 October, 2004  09:06:58 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CITY OF CHAMPAIGN, an Illinois )
municipal corporation, )
 )
                    Plaintiff, )        02-2252
 )
v. )
 )
MCLEODUSA, INC., a Delaware )
corporation, and MCLEODUSA )
TELECOMMUNICATION SERVICES, )
Inc., an Iowa corporation, )
 )
                    Defendants. )

## ORDER

In 1994, the City of Champaign entered into a 25-year right-of-way ("ROW") license with Consolidated Network, Inc. ("CNI"), granting CNI the right to install, maintain and use buried and/or aerial cable and conduit within the public ROW.  CNI was to compensate Champaign at the specified rate per lineal foot of wire, cable, etc. for each of the first five years, with scheduled rate increases every five years thereafter.

CNI later merged with or was acquired by Consolidated Communications Telecom Services, Inc. ("CCTSI"). In 1996, Champaign entered into a 10-year ROW license with CCTSI, which granted similar, though not identical, rights to CCTSI for the conduct of a general telephone business.  CCTSI was to compensate Champaign on an "access line" basis – a flat monthly fee for each telephone line connected to the system -- rather than a lineal-foot basis. Section 12 of the license agreement stated, "Whenever the word 'Company' or the words 'Consolidated Communications Telecom Services, Inc.' are used in this Agreement, they shall be construed to mean the Consolidated Network, Inc., its lessees, successors and assigns, and this Agreement shall be binding upon and inure to the benefit of the Company, its lessees, successors and assigns."

Then, in 1997, Champaign entered into a ROW agreement with McLeod for the construction of 20,982 feet of conduit.  The agreement specified that compensation was to be paid per lineal foot.  In 1998, CCTSI merged with McLeod, with McLeod as the surviving company.

In 1999, McLeod's counsel contacted Champaign and stated that as a result of the mergers and acquisitions, McLeod "now finds itself in the position of being a party to two

1

separate license agreements with . . . Champaign[.]" McLeod further stated it wished to cancel the McLeod license and proceed under the CCTSI agreement, and that if Champaign wished, the CCTSI agreement could be restated to "make it clear that [McLeod] is now the name of the grantee of the license (using a provision similar to that of Section 12 of the [CCTSI] License to trace the history from [CNI] to [CCTSI] to [McLeod]). Alternatively, if . . . Champaign would prefer to keep both agreements in effect, we could amend the [CCTSI] License to provide that any fees paid under the [McLeod] License would be credited against fees that would otherwise be due under the [CCTSI] License." Apparently, Champaign did not agree to either option; it insisted that McLeod was bound by all three agreements.

Champaign contends that McLeod is in breach of (1) the 1994 agreement with CNI; (2) the 1996 agreement with CCTSI; and (3) the 1997 McLeod agreement. Champaign states that it has not been compensated under any of the agreements since 1998, and McLeod now owes over $600,000 pursuant to the three agreements. It seeks a declaration that the mergers and/or acquisitions did not erase McLeod's obligations under the CNI and CCTSI agreements. It further asserts that Champaign has not gratuitously allowed McLeod to use its ROW, and McLeod's continued use of the ROW and its failure to pay under these agreements gives rise to a claim in quantum meruit.

The parties have filed a pretrial order outlining the contested issues of fact and law. Champaign asserts a number of factual issues, which McLeod characterizes as issues of law. The parties have further represented to the court that it seeks a pretrial ruling as to whether McLeod is bound by the 1994, 1996 and/or 1997 contracts, and whether Champaign's insistence upon enforcement of all three contracts violates the Telecommunications Act, 47 U.S.C. § 253.

## Which contracts are enforceable?

In Illinois, unambiguous contracts are governed by the "four corners rule." "Traditional contract interpretation principles in Illinois require that an agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (citation, internal quotation marks, and alterations omitted).

McLeod argues that the 1996 CCTSI Agreement superceded the 1994 CNI Agreement. There is no language in the 1996 Agreement to indicate that it was meant to supercede the 1994 Agreement. Therefore, looking only to the four corners of each document, the court must conclude as a matter of law that both documents are binding on McLeod.[1]

---

[1] Champaign asserts that there exists an issue of fact as to whether the rights under the various Agreements are "substantially" the same. The rights are not identical; while there may

2

The 1997 Agreement, however, presents a slightly different issue. McLeod argues that the 1997 Agreement pertains only to the 20,982 feet of conduit expressly described in that contract, and not to an additional 46,523 feet of conduit later constructed. While the 1994 and 1996 Agreements speak of the license in general terms,[2] the 1997 Agreement explicitly governs the right "to install, maintain and use a conduit, buried or aerial, system . . . above, within and under the public right-of-way . . . for a total linear feet of twenty thousand nine hundred eighty-two (20,982)[.]" Champaign argues that McLeod's further construction of an additional 46,523 feet of conduit in 1998 is governed by the 1997 Agreement. However, there is nothing within the four corners of that document to indicate that the parties intended the additional construction to be governed by the 1997 Agreement. Therefore, the additional construction beyond the 20,982 feet specified in the 1997 Agreement is governed by the terms and conditions of the 1996 Agreement, not the 1997 Agreement.

This court finds that (1) the 1996 Agreement did not supercede the 1994 Agreement;[3] and (2) the 1997 Agreement is enforceable only as to 20,982 feet of conduit constructed pursuant to that Agreement.

Can McLeod assert an affirmative defense pursuant to the Telecommunications Act of 1996?

McLeod argues that Champaign's insistence upon enforcement of all three contracts violates the Telecommunications Act, 47 U.S.C. § 253, which prohibits a government from managing its public rights-of-way such that its compensation is not "fair and reasonable," nor "competitively neutral and non-discriminatory." 47 U.S.C. § 253(c). McLeod cites authority from other jurisdictions to support its proposition that enforcement of all three contracts would violate the statute. Each of the cases cited by McLeod is factually distinguishable.

In *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258 (10th Cir. 2004), the

---

be some overlap, the rights granted in the 1996 Agreement are considerably more broad than those in the 1994 Agreement.

[2] The 1994 Agreement grants a license "to install, maintain, and use a conduit, buried or aerial system above, within and under the public right-of-way hereinafter specified on the centerline of license, or for the number of feet which may subsequently be added or deleted." The 1996 Agreement grants "the right to construct, erect, renew, maintain, and operate in, upon, along, across, under and over the streets, alleys, and public ways of the City of Champaign . . . lines of poles, anchors, wires, cables, conduits, vaults, laterals and fiber optics and other fixtures and equipment . . . and to use the same for the transmission of sounds and signals by means of electricity or light, and especially for the conduct of a general telephone business[.]"

[3] Consequently, the motion regarding the non-applicability of the 1994 CNI Agreement [#69] is denied.

3

telecommunications provider sought a declaration that a newly-adopted municipal ordinance[4] was preempted by state and federal law because it imposed prohibitive requirements upon companies seeking to provide telecommunications services. *See Qwest*, 380 F.3d at 1262, 1269. The Tenth Circuit noted that "[t]he FCC has read the 'competitively neutral' and 'nondiscriminatory' requirements to apply to both compensation *regulations* and to the management of rights-of-way." *Qwest*, 380 F.3d at 1272 (emphasis added) (*citing In re Classic Tel., Inc.*, 11 F.C.C.R. 13082, 13103 (1996).

In *TCG New York, Inc. v. City of White Plains*, 305 F.3d 67 (2d Cir. 2002), a telecommunications provider challenged a municipality's new franchising ordinance and proposed franchise agreements,[5] claiming they violated the Telecommunications Act because they did not impose the new requirements on the incumbent telecommunications provider. *See TCG*, 305 F.3d at 71, 79. The Second Circuit agreed that the ordinance effectively caused disparate treatment and was "plainly not 'competitively neutral and nondiscriminatory.'" However, the Second Circuit noted that "[t]he requirements of § 253 . . . [do] not require precise parity of treatment." *TCG*, 305 F.3d at 80.

In *TC Systems, Inc v. Town of Colonie*, 263 F. Supp. 2d 471 (N.D.N.Y. 2003), the telecommunications provider challenged a newly-enacted local law and draft franchise agreement.[6] *See TC*, 263 F. Supp. 2d at 476-77. The district court concluded that the local law was neutral on its face, but in application, the law discriminated against new providers because the incumbent provider had not yet complied with the local law nor entered into the new franchise agreement. *See TC*, 263 F. Supp. 2d at 489.

These cases are distinguishable from the instant case in several important respects. First, in these cases, each of the telecommunications providers sought to invalidate the provisions of an *ordinance* claimed to violate the Telecommunications Act. In contrast, McLeod seeks to block enforcement of contracts the terms of which were negotiated at arm's length and not dictated by ordinance.[7] Second, the providers sought to avoid *entering into* undesirable franchise agreements *after* the relevant portions of the Telecommunications Act were enacted in 1996. In contrast,

---

[4] The ordinance was enacted in March 1998. *See Qwest Corp. v. City of Santa Fe*, 224 F. Supp. 2d 1305, 1309 (D.N.M. 2002).

[5] The ordinance was passed in December 1997. *See TCG*, 305 F.3d at 71.

[6] The local law and draft franchise agreement were adopted in November 1999. *See TC Systems*, 263 F. Supp. 2d at 476.

[7] That the Champaign City Council may have passed an ordinance approving and authorizing the execution of contracts negotiated at arm's length does not change the analysis.

4

McLeod's 1994 contract was entered into several years *before* the relevant portions of the Telecommunications Act became law. McLeod does not cite to any case law supporting the proposition that the relevant portions of the Telecommunications Act invalidated contracts executed before its enactment. McLeod cannot succeed in its argument that enforcing the 1994 Agreement violates the provisions of a statute enacted several years later. The 1997 Agreement was also entered into at arm's length and not dictated by ordinance. Furthermore, the license provisions of the 1997 Agreement are not sufficiently analogous to the others such that enforcement of that contract could be considered discriminatory.

In sum, McLeod may not assert an affirmative defense pursuant to the Telecommunications Act. The contracts with the City of Champaign were negotiated at arm's length rather than pursuant to an unfair and discriminatory ordinance, and the court is presented with nothing from which to conclude that the Telecommunications Act was meant to invalidate contracts already existing on the date of its enactment.

## CONCLUSION

The defendants' motion regarding the non-applicability of the 1994 CNI Agreement [#69] is denied. The plaintiff's motion to strike the defendants' second affirmative defense [#72] is granted.

Entered this 20th day of October, 2004.


s/Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

5